UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 5:16-cr-94 |
| BRIAN FOLKS, | ) |
| Defendant. | ) |

# DEFENDANT'S POST-HEARING MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE (WINOOSKI CAR STOP)

Brian Folks, by and through counsel, Sheehey Furlong & Behm P.C., submits this post-hearing memorandum in support of his Motion to Suppress Evidence Re: Winooski Car Stop. This memorandum supplements the Motion by addressing evidence admitted at the March 20, 2018 hearing, and is not intended to address every issue raised in the Motion. As explained below, Folks has standing to challenge the seizure of the vehicle in which he was traveling, and the Court must suppress evidence obtained as a result of the traffic stop because, *inter alia*, police unlawfully seized the vehicle and its occupants based on the uncorroborated tip of an unreliable informant.

**1. Folks Has Standing to Challenge the Stop and Detention that Resulted in the Seizure of Evidence.**

In its Opposition the Government erroneously argues that Folks lacks standing to challenge the traffic stop of the vehicle in which Folks was traveling. The United States Supreme Court has repeatedly "held that a passenger is seized, just as the driver is, 'from the moment [a car stopped by the police comes] to a halt on the side of the road.' A passenger therefore has standing to challenge a stop's constitutionality." *Arizona v. Johnson*, 555 U.S. 323, 332, 129 S. Ct. 781, 787 (2009) (quoting *Brendlin v. California*, 551 U.S. 249, 263, 127 S. Ct.

2400, 2410 (2007)). "If either the stopping of the car, the length of the passenger's detention thereafter, the scope of investigation directed at the passenger, or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." 6 W. LaFave, Search and Seizure § 11.3(e) (5th ed. Oct. 2017 Update). Consequently, Folks has standing to challenge the stop of the vehicle and its continued detention, and the seizure of evidence flowing from both constitutional violations.

**2. Police Stopped the Vehicle Without Probable Cause of Criminal Activity.**

Notwithstanding the assertions of Officer Brouillette and the Government that the officer stopped and detained the vehicle for motor vehicle infractions, the driver was the officer's informant and agent, with whom he had arranged a stop of the vehicle and a fictional scenario[1] in order to detain the vehicle for a sufficient time for a narcotics canine to arrive and perform a search. Tr. at 80-81. As a result, the constitutionality of the stop and detention of the vehicle and its passengers, including Folks, turns not on the purported motor vehicle violations of the informant, a Government actor. Instead the Court must make its assessment based on the actual reason for the seizure of Folks—the informant's tip to the officer that Folks would be in possession of narcotics, which the officer admitted was the basis for the stop of the vehicle. Tr. at 41, 89.

"The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *United States v. Wagner*, 989 F.2d 69, 72 (2d

---

[1] As the officer admitted at hearing, the informant-driver and he were "playacting" according to the plan that the two had hatched for him to stop her vehicle. Tr. at 80-82, 84; Ex. 4 at 2:30 (informant whispering to officer that the passengers "found that very odd"); *id.* at 5:15 (informant asking officer whether he "want[s her] to pull attitude"). The officer explained further that he did not issue a ticket for the informant's failure to use her turn signal, and that prior to the stop he was aware that her plates were not registered to the vehicle but he nevertheless permitted her to resume operation of the vehicle after the stop and did not impound the vehicle. Tr. at 84.

2

Cir. 1993). "In evaluating an informant's reliability, a court must consider the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge, and "whether the information an informant provides is corroborated by independent police investigation[.]" *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) (citation omitted); *see also Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317 (1983) (holding "an informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report[, and] should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is probable cause") (internal quotation marks omitted).

In the instant case, a totality of the circumstances assessment of the information provided by the informant fails to establish the probable cause required to stop and detain Folks. The officer had almost no information about the informant's reliability or veracity. At hearing he could not quantify the number of times he had worked with her prior to the stop at issue, settling on an answer of "[a]t least once." Tr. at 79. He testified that the informant provided him the information by telephone call or text message, Tr. at 80, 85, thereby depriving him of important non-verbal information critical to an assessment of the speaker's veracity.

The officer purportedly did a background check on the informant when he began working with her. Tr. at 91. He claimed to have run her criminal record check, but could not recall the results other than remembering that she had convictions. Tr. at 93, 97. The officer did not follow up with other states to inquire about the existence of criminal history available from those states, as noted on the informant's NCIC criminal history report. Tr. at 98. He learned from the informant that she claimed to be a "former" drug user, yet the officer did nothing to investigate whether she was still using drugs other than inquire of her and accept her responses at face value

3

despite her continued association with drug users and dealers. Tr. at 91, 130, 131. He conducted no surveillance of her to determine whether she was visiting known drug houses. Tr. at 91. He did no surveillance of her residence to investigate whether drugs were being sold from her home. Tr. at 91. He did not have her undergo a urinalysis to test for drug use. Tr. at 92.

The officer testified that he conferred with other officers about the informant, but did not inquire about whether they knew her to be using drugs. Tr. at 92. He was unaware that the informant had worked previously as a CI for his police department. Tr. at 101. He did not know that she had a history of providing tips for compensation. Tr. at 102. He did not inquire of his colleagues whether the informant had escaped criminal prosecution in exchange for providing information to the police. Tr. at 102.

Despite the "background check" and despite knowing about DEA's investigation into Folks and conferring with DEA prior to the January 2016 seizure of Folks, the officer apparently did not inquire of DEA about its knowledge of his informant. According to a post-hearing (March 23, 2018) disclosure by the Government, the informant worked as a DEA informant during June 8, 2015 to November 10, 2015. In signing up with DEA, the informant falsely reported that she had not worked for any other law enforcement agency. For her work for DEA, she was paid $4,500. In November 2015—just two months prior to her tip about Folks—the DEA deactivated the informant because she had violated her agreement with DEA, and continued to do so after being counseled by handling agents. Her violations of the agreement included drug dealing ("middl[ing] deals" in the words of the Government), violating laws while not under the control and direction of investigators, failing to contact controlling agents as required, providing rides and other favors to individuals known to her to be drug traffickers without notifying controlling agents, providing drug information to various other law

4

enforcement agencies without informing DEA controlling agents of the disclosures, and acquiring cocaine from a target in exchange for "massage services" and then distributing a portion of that cocaine to other individuals to avoid suspicion. In conversations with agents during her work for DEA, the informant admitted to crack cocaine addiction in the past. She claimed that as of 2015 she had not used regularly in the previous eight years, and yet she stated to DEA in 2015 that she had recently used crack on occasion "but only when pressured by others." She also admitted to DEA that she had occasionally used crack while in recreational settings with drug dealers and drug users.

In addition to his failure to establish the informant's reliability and veracity, the investigating officer did not obtain the basis of the informant's purported knowledge for the tip. Tr. at 111-112. In effect, all that the informant told the officer was that she would be driving Folks from a location on North Avenue to a location "in the area of Loomis or North Union Street" and that he would be in possession of narcotics. Tr. at 99. She did not provide addresses. Tr. at 99. The officer merely assumed that the informant obtained the information from Folks or someone who knew Folks. Tr. at 112. He testified unequivocally that he did not know who had provided the informant with the information about Folks. Tr. at 128. At hearing the officer could not recall if he even asked the informant for the basis of her knowledge of the information he intended to act upon. Tr. at 112.[2]

Finally, the investigating officer and his colleagues did nothing to corroborate the unsourced information provided by the informant. Instead, they merely followed her vehicle as

---

[2] Furthermore, despite knowing that DEA was investigating Folks, the officer failed to preserve the text messages he exchanged with the informant and he destroyed the informant file without providing copies of either to DEA or the United States Attorney's Office for eventual disclosure to Folks. Tr. at 85-88. Similarly, despite omitting from his report the actual basis for his seizure of the vehicle and Folks, the officer destroyed his notes relating to the informant's tip without memorializing the information, and failed to provide the notes to DEA or the United States Attorney's Office. Tr. at 112-113, 129.

5

she drove a route on which the officer and she had earlier agreed. Tr. at 47, 99. Prior to seizing the vehicle, police did nothing to confirm the informant's tip that Folks would be in her vehicle. Tr. at 100. In fact, prior to stopping the vehicle and approaching it on foot, the officer could not identify Folks as a passenger or even whether a male was present in the vehicle. Tr. at 100.

Wherefore, for the foregoing reasons and those articulated in the Motion, the Court must suppress the evidence obtained as a result of the investigating officer's unconstitutional seizure and detention of Folks.

Dated at Burlington, Vermont this 7th day of April, 2018.

**BRIAN FOLKS**

By: *Craig S. Nolan*
Craig S. Nolan, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
cnolan@sheeheyvt.com

**CERTIFICATE OF SERVICE**

I, Craig S. Nolan, counsel for Brian Folks, do hereby certify that on April 7, 2018, I electronically filed with the Clerk of Court the following document:

**DEFENDANT'S POST-HEARING MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE (WINOOSKI CAR STOP)**

using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

David J. Williams, Esq.
Jarvis, McArthur & Williams
95 St. Paul Street, Ste 2E
P.O. Box 902
Burlington, VT 05402
dwilliams@jarvismcarthur.com

Abigail E Averbach, AUSA
United States Attorney's Office
District of Vermont
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Abigail.E.Averbach@usdoj.gov

Emily M. Savner, AUSA
United States Department of Justice
Civil Rights Division, Special Litigation Division
Patrick Henry Building, Room 5018
601 D Street N.W.
Washington, DC 20004
(202) 353-4081
emily.savner@usdoj.gov

Jared Fishman, Esq.
United States Department of Justice
Civil Rights Division, Special Litigation Division
Patrick Henry Building, Room 5018
601 D Street N.W.
Washington, DC 20004
(202) 598-1877
jared.fishman2@usdoj.gov

Dated at Burlington, Vermont, this 7th day of April, 2018.

By: *Craig S. Nolan*
Craig S. Nolan, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
cnolan@sheeheyvt.com