# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 5:16-CR-94 |
| | ) | |
| BRIAN FOLKS aka "Moet" aka "Moet Hart," | ) | |
| Defendant. | ) | |

## GOVERNMENT'S REQUEST FOR JURY INSTRUCTIONS

The United States of America requests that, in addition to the proposed instructions contained herein, the Court give the following standard instructions to the jury:

1. Arguments of counsel;

2. Credibility of witnesses;

3. Government as a party;

4. Role of Court and Jury;

5. Admissions;

6. Role of the indictment;

7. Testimony of law enforcement witnesses;

8. Expert witnesses;

9. Stipulation of facts;

10. Demonstrative evidence;

11. Race, Religion, National Origin, Sex, Or Age, Not To Be Considered; and

12. Defendant Not Testifying.

REQUEST NO. 1

## <u>INTRODUCTION TO OFFENSES</u>

The Fourth Superseding Indictment charges fourteen separate crimes, called "counts," against the Defendant. Each count has a number. You will be given a copy of the Fourth Superseding Indictment to refer to during your deliberations.

Count 1 charges that the Defendant knowingly and willfully conspired with others between in or about May 2015 and March 2016 to distribute 100 grams or more of heroin and 28 grams or more of cocaine base, which are controlled substances. Counts 3, 5, 8, and 9 charge that the Defendant, on various dates in January 2016 and February 2016, knowingly and intentionally distributed heroin. Count 7 charges that on January 20, 2016, the Defendant, knowingly and intentionally possessed heroin or cocaine base with the intent to distribute it.

Count 2 charges that the Defendant, who was previously convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm, namely a Beretta Model 92FS 9mm pistol, in and affecting commerce.

Counts 10, 11, 12, 13, and 14 charge that the Defendant knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided, obtained, and maintained by any means the person identified in each count, knowing that force, threats of force, fraud, and coercion would be used to cause that person to engage in commercial sex acts. Count 10 charges that the Defendant did so with respect to Victim A. Counts 11 and 12 charge that the Defendant did so with respect to Victim B during two different time periods. Count 13 charges that the Defendant did so with respect to Victim C. Count 14 charges that the Defendant

did so with respect to Victim D.

Count 15 charges that the Defendant knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided, obtained, and maintained by any means Minor Victim E, knowing and in reckless disregard of the fact, and having had a reasonable opportunity to observe Minor Victim E, that Minor Victim E had not attained the age of 18 years and would be caused to engage in a commercial sex act.

Count 16 charges that the Defendant knowingly used, and caused to be used, one or more facilities in interstate commerce, namely the internet and cellular telephones, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the laws of Vermont, and thereafter performed, and caused to be performed, acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity.

You should draw no inference from and attach no meaning to the absence of Counts 4 and 6 from the Fourth Superseding Indictment.

REQUEST NO. 2

## **COUNT 1**

Count 1 of the Fourth Superseding Indictment charges Brian Folks with engaging in a conspiracy with others to knowingly and willfully distribute heroin and cocaine base. Count 1 also charges that Brian Folks' conduct as a member of the conspiracy, including the reasonably foreseeable conduct of other members of the conspiracy, involved 28 grams or more of a mixture or substance containing a detectable amount of cocaine base; or 100 grams or more of a mixture or substance containing a detectable amount of heroin.

The Count reads as follows:

[The Court is requested to read Count 1 to the jury.]

REQUEST NO. 3

## **ELEMENTS OF OFFENSE OF CONSPIRACY, 21 U.S.C. § 846**

Count 1 of the Fourth Superseding Indictment charges that the defendant, Brian Folks, engaged in a conspiracy with others to distribute heroin and cocaine base. Title 21 of the United States Code, Section 846, as charged in Count 1 of the Fourth Superseding Indictment, makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of Section 841(a)(1). Section 841(a)(1) makes it a crime for anyone to knowingly or intentionally distribute a controlled substance. I instruct you that heroin is a Schedule I controlled substance, and cocaine base is a Schedule II controlled substance.

Under the law, a "conspiracy" is an agreement or a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of each other member.

To establish a conspiracy offense, it is sufficient to show that the conspirators tacitly came to a mutual understanding to accomplish an unlawful act by means of a joint plan or common design. Also, because the essence of a conspiracy offense is the making of the scheme itself, it is not necessary for the government to prove that the conspirators actually succeeded in accomplishing their unlawful plan, though, in this case, evidence has been introduced from which you may find that actual distribution of cocaine base and heroin occurred.

Finally, although the government alleged that the conspiracy involved both cocaine base and heroin, you need only find that the conspiracy involved one of these controlled substances to find the defendant guilty. Please bear in mind that your decision on this issue as on all others

must be unanimous.  In other words, you must find unanimously that the purpose of the conspiracy was the distribution of heroin or cocaine base or both.  If some of you believe that the purpose of the conspiracy was solely the distribution of heroin, and others of you believe the purpose was solely the distribution of cocaine base, then you must find the Defendant not guilty of Count 1.

In order to return a verdict of guilty as to this count, the government must prove each of the following elements beyond a reasonable doubt:

First:  That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in Count 1 of the Fourth Superseding Indictment; and

Second:  That the defendant knowingly became a member of such conspiracy.

REQUEST NO. 4

## **FIRST ELEMENT-  EXISTENCE OF AGREEMENT**

The first element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in Count 1 of the Fourth Superseding Indictment.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.  You may therefore consider the actions and statements of all of those you find to be participants as proof that a common design existed for acting together to accomplish an unlawful purpose.  Acts that may seem innocent when taken individually may indicate guilt when viewed collectively and in light of the circumstances.  Co-conspirators need not be charged with the crime of conspiracy in order for you to find that the defendant had an agreement with other individuals to commit the illegal act charged in the indictment.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

REQUEST NO. 5

## <u>SECOND ELEMENT-  MEMBERSHIP IN THE CONSPIRACY</u>

The second element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that the defendant knowingly became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the Fourth Superseding Indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether the defendant was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome.  You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that a defendant had such an interest, that is a factor which you may properly consider in determining whether or not that defendant was a member of the conspiracy charged in the Fourth Superseding Indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

The defendant's knowledge is a matter of inference from the facts proved. In that

connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all the other members' activities. Moreover, the defendant need not have been fully informed as to all of the details or the scope of the conspiracy in order to justify an inference of knowledge on his part.

The extent of the defendant's participation has no bearing on the issue of the defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.

A conspiracy may continue for a long period of time and may include the performance of many transactions. It is not necessary that all members of the conspiracy join it at the same time or leave it at the same time. A member of the conspiracy may stop participating in the conspiracy before the conspiracy ends and one may join a conspiracy after it has already begun. Moreover, one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

I want to caution you, however, that a defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member. A person may know, or be friendly with a criminal, without being a

criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make that defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intent of aiding in the accomplishment of those unlawful ends.

In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement— that is to say, a conspirator.

Adapted, Sand, Siffert, Laughlin & Reiss, 1 *Modern Federal Jury Instructions*, ¶ 19.01; Manual of the Model Jury Instructions for the Ninth Circuit, Instruction No. 8.05A (1989); *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Sanzo*, 673 F.2d 64 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 128 (1982); *United States v. Barlin*, 686 F.2d 81 (2d Cir. 1982); *United States v. Lanese*, 890 F.2d 1284 (2d Cir. 1989); *United States v. Garcia*, 992 F.2d 409, 416 (2d Cir. 1993); *United States v. Papadakis*, 510 F.2d 287, 297 (2d Cir. 1975) ("Where a conspiracy has multiple objectives, a conviction will be upheld so long as evidence is sufficient to show that an appellant agreed to accomplish at least one of the criminal objectives."); *United States v. Joell Joyce*, No. 5:15-cr-156-gwc, [D.E. 83] (D. Vt. Dec. 23, 2016).

REQUEST NO. 6

## **"KNOWINGLY" AND "WILLFULLY" DEFINED**

You have been instructed that to sustain its burden of proof on Count 1, the government must prove that the defendant acted knowingly and willfully. A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. You may consider evidence of the defendant's words, acts, or omissions, along with all other evidence, in deciding whether the defendant acted knowingly.

Willfully means to act with knowledge that one's conduct is unlawful and with the intent to do something that the law forbids, that is to say with the bad purpose to disobey or to disregard the law. The defendant's conduct was not willful if it was due to negligence, inadvertence, or mistake.

Adapted, Sand et al., 1 *Federal Jury Instructions*, § 3A.01 (Instruction Nos. 3A-1 & 3A-3).

REQUEST NO. 7

## <u>"ON OR ABOUT" AND "IN OR ABOUT" EXPLAINED</u>

Each of the counts of the Fourth Superseding Indictment charges that the offenses were committed "in or about" or "on or about" certain dates.

Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on dates reasonably near the dates alleged in the Fourth Superseding Indictment, it is not necessary for the government to prove that the offense was committed precisely on the dates charged.

As to Count 1, it is not necessary that all members of the conspiracy join it at the same time or leave it at the same time. A member of the conspiracy may stop participating in the conspiracy before the conspiracy ends and one may join a conspiracy after it has already begun. Therefore, to find the defendant, Brian Folks, guilty of Count 1, you need not find that his participation in the conspiracy spanned the entire period alleged in the Fourth Superseding Indictment.

Adapted from Devitt & Blackmar, *Federal Jury Practice and Instructions*, § 13.05.

REQUEST NO. 8

## **AMOUNT OF DRUGS**

If you find that the government has not proven beyond a reasonable doubt the elements that I have just described to you, you will indicate that you find the defendant not guilty of Count 1 on the special verdict form I will provide you. You will then answer no further questions as to Count 1.

If you find that the government has proven beyond a reasonable doubt the two elements that I have described, then there is another issue you must decide with regard to Count 1. The special verdict form will set forth the questions you must answer.

Count 1 charges the defendant with conspiring to distribute 28 grams or more of a mixture or substance containing a detectable amount of cocaine base or 100 grams or more of a mixture or substance containing a detectable amount of heroin.

You should assess the amount of cocaine base and heroin involved in the conspiracy with regard to the defendant. The government does not have to prove that the defendant directly handled or distributed the particular quantities alleged, although you may consider that evidence along with other evidence to assess the quantity element.

The government can prove the defendant is responsible for the quantity involved in a conspiracy in three ways. First, the government can offer evidence that proves beyond a reasonable doubt that the defendant personally and directly participated in the possession or distribution of the drugs in question. With regard to this type of proof, the government need not prove that the defendant knew the type or amount of drugs in question as long as the government

proves beyond a reasonable doubt that the defendant knew the drugs in question were a controlled substance. Second, the government can offer evidence that proves beyond a reasonable doubt that the defendant knew that the conspiracy involved a particular quantity of a controlled substance or controlled substances during the time period that defendant participated in the conspiracy. Third, the government can offer evidence that proves beyond a reasonable doubt that the conspiracy involved a particular quantity of a controlled substance or substances during the time period that defendant participated in the conspiracy and that, based on all of the circumstances, it was reasonably foreseeable to the defendant that the conspiracy involved the particular quantity. With regard to each of these types of proof, the government must prove beyond a reasonable doubt that the conspiracy at issue is the one described in Count 1.

Remember, you should address this issue and complete the form only if you find the essential elements of the conspiracy alleged in Count 1 have been established.

If you decide that the government has proven beyond a reasonable doubt that the charged conspiracy involves 28 grams or more of cocaine base or 100 grams or more of heroin, then you are to indicate that finding on the special verdict form.

*See United States v. Caraballo*, Case No. 5:12-cr-105 (D. Vt) (Jury Charge Doc. # 166, Oct. 2, 2013); United *States v. Pacheco*, No. 1:10-cr-139 (Jury Charge, Doc # 77, Sept. 2, 2011); *United States v. Lugo,* No. 1:09-cr-64-CR (Jury Charge, Doc # 794, May 16, 2011); Sand, Siffert, Laughlin & Reiss, 3 *Modern Federal Jury Instructions*, Instruction 56-12.

REQUEST NO. 9

## **COUNT 2**

The Fourth Superseding Indictment charges the defendant with being a person previously convicted of a felony who possessed a weapon shipped in interstate commerce. The Count reads as follows:

[The Court is requested to read Count 2 to the jury.]

Adapted from Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, *Modern Federal Jury Instructions*, (Volume 2) § 35.07, Instruction 35-45.

REQUEST NO. 10

## **ELEMENTS OF OFFENSE OF UNLAWFUL POSSESSION OF A FIREARM, 18 U.S.C. § 922(g)(1)**

In order to return a verdict of guilty as to this count, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant was convicted, in any court, of a crime punishable by imprisonment for a term exceeding one year;

Second, that the defendant knowingly possessed the firearm; and

Third, that the possession charged was in or affecting interstate commerce.

Adapted from Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, *Modern Federal Jury Instructions*, (Volume 2), Instruction 35-47.

REQUEST NO. 11

## <u>FIRST ELEMENT – DEFENDANT'S PRIOR CONVICTION</u>

The first element the government must prove beyond a reasonable doubt is that before the date the defendant is charged with possessing the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

The government contends [the parties stipulate and agree] that the defendant was convicted of Manslaughter in the Second Degree in New York State Court.  I charge you that as a matter of law, Manslaughter in the Second Degree under New York law is a crime punishable by imprisonment for a term exceeding one year.  [However, it is for you to determine beyond a reasonable doubt if the defendant was convicted of this crime.]

To satisfy this first element, you need only find beyond a reasonable doubt that the defendant was, in fact, convicted of at least one of the above crimes and that the conviction was prior to the possession of the weapon as charged in the Fourth Superseding Indictment.  It is not necessary that the government prove that the defendant knew that the crime was punishable by imprisonment for more than one year, nor is it necessary for the defendant to have been sentenced to imprisonment for more than one year.  A plea of guilty has the same consequences as a conviction after trial.

I instruct you, in this connection, that the prior conviction that is an element of the charge here is only to be considered by you for the fact that it exists, and for nothing else.  You are not to consider it for any other purpose.  You may not consider prior convictions in deciding whether the defendant was in knowing possession of the gun that is charged, which is the disputed element of the offense.

Adapted from Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, *Modern Federal Jury Instructions*, (Volume 2), Instruction 35-48.

REQUEST NO. 12

## <u>SECOND ELEMENT- POSSESSION OF FIREARM</u>

The second element which the government must prove beyond a reasonable doubt is that on or about the date set forth in the indictment the defendant knowingly possessed a firearm.

A "firearm" is any weapon which will, or is designed to, or may be readily converted to, expel a projectile by the action of an explosive.

As I have instructed you, the government must prove beyond a reasonable doubt that the defendant "possessed" the firearm. The legal concept of possession may differ from the everyday usage of the term, so I will explain it in some detail.

Actual possession is what most of us think of as possession; that is having physical custody or control of an object. For example, if you find that the defendant had the firearm on his person, you may find that he had possession of the firearm. However, a person need not have actual physical custody of an object in order to be in legal possession of it; this is called constructive possession. If an individual has the ability and intent to exercise substantial control over an object that he does not have in his physical custody, then he is in constructive possession of that item. An example of this from everyday experience would be a person's possession of items he keeps in the safe deposit box of his bank. Although the person does not have physical custody of those items, he exercises substantial control over them and so has legal possession of them. If you find that the defendant had such control over the firearm but did not actually have physical custody of the firearm, then he possessed the firearm under this element just as if he had the firearm in his physical custody.

The law also recognizes that possession may be sole or joint. If one person alone possesses something, that is sole possession. However, it is possible that more than one person may have the power and intention to exercise control over the drugs. This is called joint possession. If you find that the defendant had such power and intention, then he possessed the firearm under this element even if he possessed the firearm jointly with another.

Possession of a firearm cannot be found solely on the ground that the defendant was near or close to the firearm. Nor can it be found simply because the defendant was present at a scene where the firearm was involved, or solely because the defendant associated with a person who did control the firearm where it was found. However, these factors may be considered by you, in connection with all other evidence, in making your decision whether the defendant possessed the firearm.

To satisfy this element, you must also find that the defendant knowingly possessed the firearm. This means that he possessed the firearm purposely and voluntarily, and not by accident or mistake. It also means that he knew that the weapon was a firearm, as we commonly use the word. However, the government is not required to prove that the defendant knew that he was breaking the law.

Sand, Siffert, Laughlin & Reiss, 3 *Modern Federal Jury Instructions*, Instruction 56-4; Adapted from Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, *Modern Federal Jury Instructions*, (Volume 2), Instruction 35-49.

REQUEST NO. 13

## **THIRD ELEMENT - FIREARM IN OR AFFECTING COMMERCE**

The third element that the government must prove beyond a reasonable doubt is that the firearm the defendant is charged with possessing was in or affecting interstate commerce.

[The parties agree and stipulate that the firearm was manufactured outside of the State of Vermont and so, by its presence within the State of Vermont, it traveled in interstate commerce.] This means that the government must prove that at some time prior to the defendant's possession, the firearm had traveled in interstate commerce. It is sufficient for the government to satisfy this element by proving that at any time prior to the date charged in the Fourth Superseding Indictment, the firearm crossed a state line. It is not necessary that the government prove that the defendant himself carried it across a state line, nor must the government prove who carried it across or how it was transported. It is also not necessary for the government to prove that the defendant knew that the firearm had previously traveled in interstate commerce.

In this regard, there has been evidence that the firearm in question was manufactured in a different state than the state where the defendant is charged with possessing it. You are permitted to infer from this fact that the firearm traveled in interstate commerce; however, you are not required to do so.

Adapted from Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, *Modern Federal Jury Instructions*, (Volume 2), Instruction 35-50.

REQUEST NO. 14

## **COUNTS 3, 5, 8, AND 9**

Counts 3, 5, 8, and 9 of the Fourth Superseding Indictment charge the defendant with knowingly and intentionally distributing a controlled substance.  Title 21, Section 841(a) makes it a federal crime for any person to knowingly or intentionally distribute controlled substances. The counts read as follows:

[The Court is requested to read Counts 3, 5, 8, and 9 to the jury.]

REQUEST NO. 15

## ELEMENTS OF OFFENSE OF
## DISTRIBUTION OF A CONTROLLED SUBSTANCE, 21 U.S.C. § 841(a)(1)

To sustain its burden of proof for the crime of distribution of a controlled substance, the government must prove the following two elements beyond a reasonable doubt:

One:      The defendant knowingly and intentionally distributed a controlled substance, as charged in the Fourth Superseding Indictment; and

Two:      At the time of the distribution, the defendant knew that the substance distributed was a controlled substance.

I instruct you again that heroin, as charged in the distribution counts of the Fourth Superseding Indictment, is a Schedule I controlled substance.

REQUEST NO. 16

## **DEFINITION OF DISTRIBUTION**

The word "distribute" means to deliver a controlled substance. "Deliver" is defined as the actual, constructive or attempted transfer of a controlled substance. Simply stated, the words distribute and deliver mean to pass on, or to hand over to another, or to cause to be passed on or handed over to another, or to try to pass on or hand over to another, a controlled substance. For example, if A tells or orders B to hand over the drugs to C, then A has caused the drugs to be handed over, and therefore has distributed them.

Distribution does not require a sale. Activities in furtherance of the ultimate sale, such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drugs may constitute distribution. In short, distribution requires a concrete involvement in the transfer of the drugs.

Sand, Siffert, Laughlin & Reiss, 3 *Modern Federal Jury Instructions*, Instruction 56-10.

REQUEST NO. 17

## **"KNOWINGLY" AND "INTENTIONALLY" DEFINED**

With respect to Counts 3, 5, 8, and 9, you have been instructed that in order to sustain its burden of proof, the government must prove that the defendant acted knowingly and intentionally. A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. You may consider evidence of the defendant's words, acts, or omissions, along with all other evidence, in deciding whether the defendant acted knowingly. A person acts intentionally if he acts deliberately and purposefully, and not because of mistake or accident.

Adapted, Sand, 1 *Federal Jury Instructions*, Instructions 3A-1 & 3A-4; Ninth Circuit, *Federal Pattern Jury Instructions*, § 5.6.

REQUEST NO. 18

## **KNOWLEDGE OF THE CONTROLLED SUBSTANCE**

Although the government must prove that the defendant knew that he possessed a controlled substance, the government does not have to prove the defendant knew the exact nature of the drugs he possessed.  It is enough that the government proves that the defendant knew that he possessed some kind of controlled substance.

Your decision whether the defendant knew the materials he distributed were a controlled substance involves a decision about the defendant's state of mind.  It is obviously impossible to prove directly the operation of the defendant's mind.  But a wise and intelligent consideration of all the facts and circumstances shown by the evidence and the exhibits in this case may enable you to infer what the defendant's state of mind was.  In our everyday affairs, we are continuously called upon to decide from the actions of others what their state of mind is.  Experience has taught us that, frequently, actions speak louder and more clearly than spoken or written words.  Therefore, you may rely on circumstantial evidence in determining the defendant's state of mind.

Adapted, Sand, 3 *Modern Federal Jury Instructions*, Instruction 56-7.

REQUEST NO. 19

## **<u>COUNT 7</u>**

Count 7 of the Fourth Superseding Indictment charges Brian Folks with knowingly and intentionally possessing heroin and cocaine base with intent to distribute such heroin and cocaine base. Title 21, Section 841(a) makes it a federal crime for any person to possess with the intent to distribute, controlled substances.

The Count reads as follows:

[The Court is requested to read Count 7 to the jury.]

REQUEST NO. 20

## <u>ELEMENTS OF POSSESSION WITH INTENT TO DISTRIBUTE<br>A CONTROLLED SUBSTANCE, 21 U.S.C. § 841(a)</u>

In order to prove this charge against the defendant, the government must establish the following three elements of the crime:

First, that the defendant possessed a controlled substance, here, heroin or cocaine base;

Second, that the defendant knew that he possessed a controlled substance; and,

Third, that the defendant possessed the controlled substance with the intent to distribute it.

I instruct you again that heroin is a Schedule I controlled substance, and cocaine base is a Schedule II controlled substance.

Sand, Siffert, Laughlin & Reiss, 3 *Modern Federal Jury Instructions*, Instruction 56-2.

REQUEST NO. 21

## **DEFINITION OF POSSESSION**

I have already instructed you as to the meaning of the word "possession" when I instructed you on the law regarding the possession of a firearm.  The term has the same meaning here.

REQUEST NO. 22

## <u>**KNOWLEDGE THAT THE DRUGS WERE CONTROLLED SUBSTANCES**</u>

The second element the government must prove beyond a reasonable doubt is that the defendant knew that he possessed a controlled substance.

To establish this element, the government must prove that the defendant knew that he possessed a controlled substance, and that his possession was not due to carelessness, negligence, or mistake. If you find that the defendant did not know that he had controlled substances in his possession, or that he did not know that what he possessed was, in fact, controlled substances, then you must find the defendant not guilty.

Although the government must prove that the defendant knew that he possessed controlled substances, the government does not have to prove that the defendant knew the exact nature of the drugs in his possession. It is enough that the government proves that the defendant knew that he possessed some kind of controlled substance.

REQUEST NO. 23

## <u>METHOD OF PROVING KNOWLEDGE</u>

Your decision whether the defendant knew the materials he possessed were controlled substances involves a decision about the defendant's state of mind. It is obviously impossible to prove directly the operation of the defendant's mind. But a wise and intelligent consideration of all the facts and circumstances shown by the evidence and the exhibits in the case may enable you to infer what the defendant's state of mind was.

In our everyday affairs, we are continuously called upon to decide from the actions of others what their state of mind is. Experience has taught us that, frequently, actions speak louder and more clearly than spoken or written words. Therefore, you may well rely in part on circumstantial evidence in determining the defendant's state of mind.

For example, if the defendant was the sole occupant of a residence or a vehicle, it is reasonable to conclude that the defendant knew about items in the residence or vehicle. The defendant's behavior may also indicate knowledge. Nervousness in the presence of the drugs or flight from the site at which authorities have identified drugs may indicate that the defendant knew that the materials in question were controlled substances. Also, the possession of a large quantity of drugs may indicate that the defendant knew what he had in his possession. These examples are neither exhaustive nor conclusive. It is up to you, based on all the evidence, to determine whether the defendant knew that he possessed controlled substances.

Sand, Siffert, Laughlin & Reiss, 3 *Modern Federal Jury Instructions*, Instruction 56-7

REQUEST NO. 24

## **INTENT TO DISTRIBUTE**

To satisfy the third element the government may prove that the defendant possessed controlled substances with the intent to distribute them. To prove the third element in this way, the government must prove beyond a reasonable doubt that the defendant had control over the drugs with the state of mind or purpose to transfer them to another person.

The same considerations that apply to your determination of whether the defendant knew he possessed controlled substances apply to your decision concerning the defendant's intention to distribute them. Since you cannot read the defendant's mind, you must make inferences from his behavior. However, you may not convict the defendant unless these inferences convince you beyond a reasonable doubt that the defendant intended to distribute the controlled substances.

When I say that you must find that the defendant intended to distribute the controlled substance, this does not mean that you must find that the defendant intended personally to distribute or deliver the drugs. It is sufficient if you find that the defendant intended to cause or assist the distribution of the controlled substance.

Basically, what you are determining is whether the drugs in the defendant's possession were for his personal use or for the purpose of distribution. Often it is possible to make this determination from the quantity of drugs found in the defendant's possession. (For example, it would be highly unlikely that a person with 50,000 doses of amphetamine possessed them all for personal consumption.)

The possession of a large quantity of controlled substances does not necessarily mean that the defendant intended to distribute them. On the other hand, a defendant may have intended to distribute controlled substances even if he did not possess large amounts of them. Other

physical evidence, such as paraphernalia for the packaging or processing of drugs, can show such an intent. There might also be evidence of a plan to distribute. You should make your decision whether the defendant intended to distribute the controlled substances in his possession from all of the evidence presented.

Sand, Siffert, Laughlin & Reiss, 3 *Modern Federal Jury Instructions*, Instruction 56-11

REQUEST NO. 25

## **<u>DEFINITION OF DISTRIBUTION</u>**

I have already instructed you as to the meaning of the word "distribution" when I instructed you on the law regarding the distribution of a controlled substances. The term has the same meaning here.

REQUEST NO. 26

## **COUNTS 10 - 14**

Counts 10 through 14 of the Fourth Superseding Indictment charge Brian Folks with sex trafficking by force, fraud, or coercion.

The Counts read as follows:

[The Court is requested to read Counts 10-14 to the jury.]

REQUEST NO. 27

## **ELEMENTS OF OFFENSE OF SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION, 18 U.S.C. § 1591**

Title 18 of the United States Code, Section 1591, as charged in Counts 10 through 14 of the Fourth Superseding Indictment, makes it a federal crime or offense for anyone to knowingly, in or affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means, would be used to cause the person to engage in a commercial sex act.

In order to return a verdict of guilty as to this count, the government must prove the following elements beyond a reasonable doubt:

First:  The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means the person identified in each count;

Second:  That the defendant did so knowing or in reckless disregard of the fact that force, threats of force, fraud, or coercion, or any combination of those means, would be used to cause that person to engage in a commercial sex act; and

Third:  That the defendant's conduct was in or affected interstate commerce.

REQUEST NO. 28

## **FIRST ELEMENT – RECRUITING, ENTICING, HARBORING, TRANSPORTING, PROVIDING, OBTAINING, OR MAINTAINING A PERSON**

The first element that the government must prove beyond a reasonable doubt to establish the offense of sex trafficking by force, fraud, or coercion is that the defendant recruited, enticed, harbored, transported, provided, obtained, or maintained the person identified in each count.  In considering whether the defendant did any of these things, I instruct you to use the ordinary, everyday definitions of these terms.

REQUEST NO. 29

## SECOND ELEMENT- KNOWLEDGE AND RECKLESS DISREGARD THAT FORCE, FRAUD OR COERCION WOULD BE USED

The second element the government must prove beyond a reasonable doubt to establish the offense of sex trafficking by force, fraud, or coercion is that the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion, or any combination of those means, would be used to cause the person identified in each count to engage in a commercial sex act.

The term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person." The thing of value may be money, or it may be any other tangible or intangible thing that has some value.

"Force" means any form of power, violence, or physical pressure exercised upon another person.[1] "Fraud" means any act of deception, trickery, or misrepresentation.[2] "Coercion" means "threats of serious harm to or physical restraint against any person" or "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person."[3]

The term "serious harm," which I just mentioned in the definition of coercion, means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a

---

[1] *United States v. Chacon*, 533 F.3d 250, 257 (4th Cir. 2008) ("[T]he use of force involves a degree of compulsion, it can be effected through 'power' or 'pressure' which do not necessarily have physical components.") (citing *United States v. Romero-Hernandez*, 505 F.3d 1082, 1088 (10th Cir. 2007)).

[2] *United States v. Paris*, No. 03:06-CR-64, 2007 WL 3124724, at *14 (D. Conn. Oct. 24, 2007).

[3] 18 U.S.C. § 1591(e)(2)

reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm."[4]

The government does not have to prove that a commercial sex act occurred, only that the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause a person to engage in a commercial sex act.[5]

"Reckless disregard" of a fact means deliberate indifference to the fact which, if considered in a reasonable manner, indicates that there was a high probability of the fact at issue.

In considering whether the defendant's actions would cause a person to engage in a commercial sex act, you may consider the cumulative effect of the defendant's conduct on that person. In this regard, you may consider, for example, any aspect of the person's age, background, station in life, physical or mental condition, experience, education, socioeconomic status, or any inequalities between the person and the defendant. In other words, you may ask whether the person was vulnerable in some way such that the defendant's actions would have been enough to cause a reasonable person of the same background and in the same circumstances to engage in a commercial sex act.[6]

The government does not need to show a link between any specific commercial sex act performed by the victim and any particular threat made, or any particular action or act of fraud or coercion taken against her. Rather, it is sufficient if the defendant's actions gave rise to a climate

---

[4] 18 U.S.C. § 1591(e)(4)

[5] *United States v. Corley*, 679 Fed. App'x 1, 6 (2d Cir. 2017); *United States v. Alvarez*, 601 Fed. App'x 16, 18 (2d Cir. 2015) ("The sex trafficking statute criminalizes certain means when they are 'used to cause' an act, and thus is concerned with the means and not with the result.").

[6] *United States v. Kozminski*, 487 U.S. 931, 948, 952 (1988) ("The vulnerabilities of the victim are relevant in determining whether the . . . coercion or threats . . . could plausibly have compelled the victim to serve.").

of fear that would compel a reasonable person in the victim's situation to comply with the defendant's demands, in light of the totality of the defendant's conduct, the surrounding circumstances, and any vulnerabilities of the victim. A climate of fear that compelled the victim may arise not only from the defendant's threats and other acts directed at the victim herself, but also from conduct toward others of which the victim was aware.[7]

The government does not need to prove physical restraint – such as the use of chains, barbed wire, or locked doors – in order for you to find the defendant guilty of sex trafficking by force, fraud, or coercion. The fact that a person may have had an opportunity to leave is irrelevant if the defendant placed her in such fear or circumstances that she did not reasonably believe she could leave. A person who has been placed in such fear or circumstances is under no affirmative duty to try to escape.[8]

In considering whether a person's commercial sex acts were caused by force, fraud, or coercion, the fact that the person may have initially consented or acquiesced, or previously engaged in commercial sex acts, does not mean that the person was not compelled to engage in a commercial sex act. The question is whether the defendant used force, fraud, or coercion, or any combination of those means, to cause the person to perform or to continue to perform commercial sex acts.[9]

---

[7] *United States v. Alzanki*, 54 F.3d 994, 999 (1st Cir. 1995);*United States v. King*, 840 F.2d 1276, 1281 (6th Cir. 1988);; *United States v. Warren*, 772 F.2d 827, 833-34 (11th Cir. 1985); *United States v. Harris*, 701 F.2d 1095, 1100 (4th Cir. 1983); *United States v. Booker*, 655 F.2d 562, 566 (4th Cir. 1981).

[8] *United States v. Djoumessi*, 538 F.3d 547, 553 (6th Cir. 2008); *Bradley*, 390 F.3d at 153;*Alzanki*, 54 F.3d at 1000; *Warren*, 772 F.2d at 834.

[9] Eleventh Circuit Pattern Jury Instructions, Criminal Cases, No. 62 (2016) ("It makes no difference that the person initially voluntarily agreed to perform the work or service. And it doesn't matter whether the person did the work willingly at all times. If a person begins work willingly and later wants to stop but is forced to continue because another person uses or threatens to use

Finally, whether the person was given money, benefits, or gifts, or was able to keep any earnings, is not determinative of whether that person had been compelled to engage in a commercial sex act.[10]

---

some kind of coercion or restraint or cause[s] physical injury, the service becomes involuntary.”);

[10] *See* Eleventh Circuit Pattern Jury Instructions, Criminal Cases, No. 62 (2010) (“So even if a person is paid, the service is involuntary if the person is forced to work against the person’s will by use of threats or coercion.”).

REQUEST NO. 30

## **THIRD ELEMENT- IN OR AFFECTING INTERSTATE COMMERCE**

The third and final element the government must prove beyond a reasonable doubt to establish the offense of sex trafficking by force, fraud, or coercion is that the defendant's conduct was "in" interstate commerce or "affected" interstate commerce.  The government does not have to prove both.

"Interstate commerce" simply means the movement of goods, services, money and individuals between any two or more states, territories, and possessions of the United States, including the District of Columbia.

The government is not required to show that the defendant's activities actually crossed state lines to prove that his actions "affected" interstate commerce.  Rather, if the defendant's conduct involved the use of goods that moved across state lines, or involved telephones, the internet, or other such facilities of interstate commerce, such as hotels that house out-of-state travelers or are part of a national or international chain, you may find that the acts "affected" interstate commerce.[11]

To satisfy this element, the government must prove that the defendant's conduct was in or affected interstate commerce in any way, no matter how minimal.  You do not have to find that a defendant's conduct actually affected interstate commerce if you find that the defendant's conduct would have affected interstate commerce if the defendant had successfully and fully completed his actions.  Finally, the government is not required to prove that the defendant knew that he was affecting interstate commerce.

---

[11] *United States v. Holston*, 343 F.3d 83, 91 (2d Cir. 2003);*United States v. King*, 276 F.3d 109 (2d Cir. 2002); *United States v. Batson*, 818 F.3d 651, 664-65 (11th Cir. 2016).

To show that the defendant's conduct "affected" interstate commerce, it is not necessary for the Government to prove that the defendant specifically knew or intended that his conduct would "affect" interstate commerce. It is only necessary that the natural consequences of such conduct would be to "affect" interstate commerce in some way, even if minor.[12]

---

[12] *United States v. Phea*, 755 F.3d 255, 264-65 (5th Cir. 2014).

REQUEST NO. 31

## **<u>COUNT 15</u>**

Count 15 of the Fourth Superseding Indictment charges Brian Folks with sex trafficking of a minor.

The Counts read as follows:

[The Court is requested to read Count 15 to the jury.]

REQUEST NO. 32

## **ELEMENTS OF OFFENSE OF SEX TRAFFICKING OF A MINOR, 18 U.S.C. § 1591**

Title 18 of the United States Code, Section 1591, as charged in Count 15 of the Fourth Superseding Indictment, makes it a federal crime or offense for anyone to knowingly, in or affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, knowing, or in reckless disregard of the fact, that the person is under the age of 18 and would be caused to engage in a commercial sex act, or having had a reasonable opportunity to observe the person.

In order to return a verdict of guilty as to this count, the government must prove the following elements beyond a reasonable doubt:

First:  The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means Victim E;

Second:  The defendant either (1) knew that Victim E was under the age of 18; or (2) recklessly disregarded the fact that Victim E was under the age of 18; or (3) had a reasonable opportunity to observe Victim E;

Third:  The defendant knew or recklessly disregard the fact that Victim E would be caused to engage in a commercial sex act; and

Fourth:  The defendant's conduct was in or affecting interstate commerce.

REQUEST NO. 33

## **FIRST ELEMENT- RECRUITING, ENTICING, HARBORING, TRANSPORTING, PROVIDING, OBTAINNG, OR MAINTAINING A PERSON**

The first element the government must prove beyond a reasonable doubt to establish the offense of sex trafficking of a minor is that the defendant recruited, enticed, harbored, transported, provided, obtained, or maintained the minor. As with Counts 10-14, you should use the ordinary, everyday definitions of these terms.

REQUEST NO. 34

### SECOND ELEMENT- KNOWLEDGE OR RECKLESS DISREGARD OF AGE OR REASONABLE OPPORTUNITY TO OBSERVE

The second element the government must prove beyond a reasonable doubt to establish the offense of sex trafficking of a minor is that either (1) the defendant knew that Victim E was under the age of 18, or (2) recklessly disregarded the fact that Victim E was under the age of 18, or (3) had a reasonable opportunity to observe Victim E.

To act with "reckless disregard" that a person is under the age of 18 means to act with deliberate indifference to the facts which, if considered in a reasonable manner, indicate that there was a high probability that the victim was not yet 18 years old.[13]

If you find that the defendant had a reasonable opportunity to observe Victim E, the government does not need to prove that the defendant knew or recklessly disregarded the fact that she was under the age of 18.[14]

---

[13] *United States v. Robinson*, 702 F.3d 22, 32 & n.9 (2d Cir. 2012).

[14] *United States v. Robinson*, 702 F.3d 22, 32 (2d Cir. 2012).

REQUEST NO. 35

## <u>THIRD ELEMENT- COMMERCIAL SEX ACT</u>

The third element the government must prove beyond a reasonable doubt to establish the offense of sex trafficking of a minor is that the defendant knew or recklessly disregarded the fact that Victim E would be caused to engage in a commercial sex act.

I previously defined the term "commercial sex act" with respect to Counts 10 through 14. You are to apply this definition as you consider the evidence as to Count 15. It is not required that Victim E actually performed a commercial sex act as long as the government has proved that the defendant recruited, enticed, harbored, provided, obtained, or maintained her knowing or in reckless disregard of the fact that she would be caused to engage in a commercial sex act.

Unlike with respect to Counts 10 through 14, you do not need to find that force, threats, of force, fraud, or coercion were used or would be used to cause the victim in Count 15 to engage in a commercial sex act. Consent is not a defense to Count 15 because a minor cannot legally consent.

REQUEST NO. 36

### **FOURTH ELEMENT- IN OR AFFECTING INTERSTATE COMMERCE**

The fourth and final element the government must prove beyond a reasonable doubt to establish the offense of sex trafficking of a minor is that the defendant's conduct was either "in" interstate commerce or "affected" interstate commerce.  I have previously defined the terms "in interstate commerce" and "affecting interstate commerce" with respect to Counts 10-14.  You are to apply those definitions as you consider the evidence as to Count 15.

REQUEST NO. 37

## **COUNT 16**

Count 16 of the Fourth Superseding Indictment charges Brian Folks with using a facility in interstate commerce in aid of racketeering.

The Counts read as follows:

[The Court is requested to read Count 16 to the jury.]

REQUEST NO. 38

## **ELEMENTS OF USING A FACILITY OF INTERSTATE COMMERCE IN AID OF RACKETEERING, 18 U.S.C. § 1952**

Title 18 of the United States Code, Section 1952, as charged in Count 16 of the Fourth Superseding Indictment, makes it a federal crime or offense for anyone to use any facility in interstate commerce with the intent to knowingly promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any business enterprise involving prostitution offenses in violation of the laws of Vermont, and thereafter perform or attempt to perform an act in furtherance of that unlawful activity.

In order to return a verdict of guilty as to this count, the government must prove the following elements beyond a reasonable doubt:

First:  The defendant used or caused to be used any facility in interstate commerce;

Second:  The defendant's use of the facility in interstate commerce was done with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity; and

Third:   After the use of the facility in interstate commerce, the defendant performed or caused to be performed an act in furtherance of this unlawful

activity.[15]

---

[15] 18 U.S.C. § 1952; *United States v. Salameh*, 152 F.3d 88, 152 (2d Cir. 1998) (citing *United States v. Jenkins*, 943 F.2d 167, 172 (2d Cir. 1991)).

REQUEST NO. 39

## FIRST ELEMENT – FACILITY IN INTERSTATE COMMERCE

The first element the government must prove beyond a reasonable doubt to establish the offense of using a facility in interstate commerce in aid of racketeering is that the defendant used or caused to be used a facility in interstate commerce.

A "facility in interstate commerce" means any method of communication between one state and another, for example, the internet or a telephone.[16]

The government need not prove that the defendant knew that he was using a facility in interstate commerce. Nor need the government prove that the defendant intended to use a facility in interstate commerce. All the government must prove with respect to the first element is that the defendant did, in fact, use a facility in interstate commerce.

---

[16] *United States v. Halloran*, 821 F.3d 321, 342-43 (2d Cir. 2016).

REQUEST NO. 40

### SECOND ELEMENT – INTENTION TO PROMOTE, MANAGE, ESTABLISH, OR CARRY ON AN UNLAWFUL ACTIVITY

The second element the government must prove beyond a reasonable doubt to establish the offense of using a facility in interstate commerce in aid of racketeering is that the defendant used the facility in interstate commerce with the intent to promote, manage, establish, or carry on or facilitate the promotion, management, establishment, or carrying on of an unlawful activity.

To satisfy this element the government must prove beyond a reasonable doubt that the defendant used the facility in interstate commerce for the purpose of facilitating the unlawful activity.

The "unlawful activity" the defendant is charged with here is a business enterprise involving prostitution offenses in violation of the laws of Vermont.[17]

I will now instruct you on those laws that are considered prostitution offenses in violation of the laws of Vermont:

Section 13-2632 of the Vermont Statutes provides that it is unlawful for a person to do the following:

(1) occupy a place, structure, building, or conveyance for the purpose of prostitution, lewdness or assignation;

(2) knowingly permit a place, structure, building, or conveyance owned by the person or under the person's control to be used for the purpose of prostitution, lewdness, or assignation;

---

[17] 18 U.S.C. § 1952(b)(1).

(3) receive or offer, or agree to receive, a person into a place, structure, building, or conveyance for the purpose of prostitution, lewdness, or assignation;

(4) permit a person to remain in a place, structure, building, or conveyance for the purpose of prostitution, lewdness, or assignation;

(5) direct, take or transport or offer or agree to take or transport a person to a place, structure, building, or conveyance or to any other person knowingly, or with reasonable cause to know that the purpose of such directing, taking, or transporting is prostitution, lewdness, or assignation;

(6) procure or solicit or offer to procure or solicit a person for the purpose of prostitution, lewdness, or assignation;

(7) reside in, enter or remain in a place, structure, or building or enter or remain in a conveyance for the purpose of prostitution, lewdness, or assignation;

(8) engage in prostitution, lewdness, or assignation; or

(9) aid or abet prostitution, lewdness, or assignation, by any means whatsoever.

Section 13-2635 of the Vermont Statutes provides that it is unlawful for a person to do the following:

(1) Induce, entice or procure a person to come into the state or to go from the state for the purpose of prostitution or for any immoral purpose or to enter a house of prostitution in the state;

(2) Wilfully or knowingly aid such person in obtaining transportation to or within the state for such purposes;

(3) Place a person in the charge or custody of another person for immoral purposes or in a house of prostitution;

(4) Induce, entice, procure or compel such person to reside in a house of prostitution; or

(5) Induce, entice, procure or compel such person to live a life of prostitution.

Under Vermont law, the term "prostitution" includes both the offering or receiving of the body for sexual intercourse for hire and the offering or receiving of the body for indiscriminate sexual intercourse without hire. The term "lewdness" means open and gross lewdness or lewdness that is neither disguised nor concealed. The openness component to lewdness means that there must be a public element to the crime that is offensive to community morality, such as prostitution or solicitation, but unlike sexual assault, whether committed alone or with assistance. The term "assignation" means an appointment or engagement for prostitution or lewdness.

In order to prove the second element of Count 16, the government does not have to prove that the furtherance of the unlawful activity was the defendant's sole purpose in using an interstate facility. It is sufficient if the government proves that one of the defendant's reasons for using an interstate facility was to further the unlawful activity, meaning to make the unlawful activity easier or to facilitate it.[18]

You are thus being asked to look into the defendant's mind to determine the defendant's purpose in using an interstate facility. You may determine the defendant's intent from all the evidence that has been placed before you, including the statements of the defendant and his conduct before and after use of the interstate facility.

The government must also prove that the unlawful activity was a business enterprise. A "business enterprise" is a continuous course of conduct or series of transactions to make a profit,

---

[18] *United States v. Jenkins*, 943 F.2d 167, 173 (2d Cir. 1991).

not a casual, sporadic, or isolated activity.[19]  The government does not have to show that the

defendant engaged in the unlawful activity for a particular length of time.  Nor must the

government prove that the unlawful activity was defendant's primary pursuit or occupation, or

that it actually turned a profit.

---

[19] Eleventh Circuit Pattern Jury Instructions, Criminal Cases, No. 71 (2016); *United States v. Gallo*, 782 F.2d 1191, 1194-95 (4th Cir. 1986); *United States v. Kendall*, 766 F.2d 1426, 1434 (10th Cir. 1985) (citing cases).

REQUEST NO. 41

## **THIRD ELEMENT – ACT IN FURTHERANCE OF THE UNLAWFUL ACTIVITY**

The third element the government must prove beyond a reasonable doubt to establish the offense of using a facility in interstate commerce in aid of racketeering is that the defendant knowingly performed or caused to be performed an act to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of the unlawful activity. The act in furtherance of the unlawful activity need not itself be illegal.[20] However, you must find unanimously that this act came after the use of an interstate facility.

---

[20] *United States v. Zolicoffer*, 869 F.2d 771, 775 (3d Cir. 1989).

REQUEST NO. 42

## **AIDING AND ABETTING – COUNTS 3, 5, 7, 8, AND 9**

Counts 3, 5, 7, 8, and 9 of the Fourth Superseding Indictment charge the defendant both with committing the crime as a principal and with aiding and abetting the offense.

The aiding and abetting statute, section 2(a) of Title 18 of the United States Code, provides that:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

I have already instructed you on the law regarding the crimes as a principal. Now I will instruct you what it means to aid and abet the same crimes.

*See* Sand, 1 *Modern Federal Jury Instructions*, Instruction 11-1.

REQUEST NO. 43

## AIDING AND ABETTING EXPLAINED
## COUNTS 3, 5, 7, 8, AND 9

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crimes with which he is charged in order for the government to sustain its burden of proof. A person who aids and abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find the defendant guilty of the offense charged if you find beyond a reasonable doubt that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

To establish that defendant knowingly associated himself with the crime, the government must establish that as to Counts 3, 5, 7, and 9, the defendant knew that another person knowingly and intentionally distributed heroin.

To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about the crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense.

If, on the other hand, your answer to anyone of these questions is "no" then the defendant is not an aider and abettor, and you must find him not guilty.

*See* Sand, 1 *Modern Federal Jury Instructions*, Instruction 11-2; *United States v. Donald Conn*, 2:02-CR-21-03 (Nov. 25, 2002).

REQUEST NO. 44

## <u>DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>

There are two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.

Devitt & Blackmar, *Federal Jury Practice*, § 12.04.

REQUEST NO. 45

## **<u>INFLUENCING WITNESSES</u>**

You have heard evidence that the defendant attempted to influence a witness whom he believed might be called to testify against him at trial. If you find that the defendant did attempt to influence a witness, you may, but are not required to, infer that the defendant believed he was guilty of the crime for which he is charged.

Whether or not evidence of the defendant's attempts to influence a witness shows that he believed that he was guilty of the crime for which he is charged and the significance, if any, to be given to such evidence, is for you, the jury, to decide.

Based on Sand, *Modern Federal Jury Instructions,* Instruction 6-16; Model Jury Instructions (8th Circuit) § 4.09; *United States v. Rucker*, 586 F.2d 899, 904 (2d Cir. 1978).

REQUEST NO. 46

## **FAILURE TO NAME A DEFENDANT**

You may not draw any inference, favorable or unfavorable, towards the government or the defendant on trial, from the fact that certain persons were not named as defendants in the Fourth Superseding Indictment. The fact that these persons are not on trial must play no part in your deliberations.

Sand, 1 *Modern Federal Jury Instructions*, § 3.01 (Instruction No. 3-4).

REQUEST NO. 47

## <u>ACCOMPLICES CALLED BY THE GOVERNMENT</u>

You have heard witnesses who testified that they were actually involved in planning and carrying out the crimes charged in the Fourth Superseding Indictment. There has been a great deal said about these so-called accomplice witnesses in the summations of counsel and whether or not you should believe them.

The government argues, as it is permitted to do, that you must take the witnesses as you find them. It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.

For those very reasons, the law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of accomplices.

You should ask yourselves whether these so-called accomplices would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interest would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause

him to lie, or was it one which would cause him to tell the truth? Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the accomplice witnesses.

Sand, 1 *Modern Federal Jury Instructions*, § 7.01 (Instruction No. 7-5).

REQUEST NO. 48

## <u>WITNESSES' PLEA AGREEMENTS</u>

In this case, there has been testimony from government witnesses who pled guilty after entering into agreements with the government to testify. There is evidence that the government has promised to bring the witnesses' cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than an ordinary witness. A witness who realizes that he or she may be able to obtain his or her own freedom, or receive a lighter sentence by giving testimony favorable to the government, has a motive to testify falsely.  Conversely, a witness who realizes that he or she may benefit by providing truthful testimony has a motive to be honest. Therefore, you must examine his or her testimony with caution and weigh it with great care. If, after scrutinizing his or her testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

*United States v. William Greer, et al.*, Docket No. 2:95-CR-72.

REQUEST NO. 49

## **<u>DRUG USERS: CREDIBILITY OF WITNESSES</u>**

There has been testimony by at least one witness who was using drugs when the events they observed took place. There is nothing improper about calling such a witness to testify; however, testimony from such a witness should be examined with greater care than the testimony of witnesses who were not using drugs when the events they observed took place, because of the effect the drugs may have had on that person's ability to perceive or describe the events in question.

*United States v. William Greer, et al.*, Docket No. 2:95-CR-72.

REQUEST NO. 50

## **<u>RECORDINGS</u>**

The government has offered evidence in the form of audio recordings. This information may have been gathered without the knowledge of all the participants. The use of these procedures to gather evidence is perfectly lawful and the government is entitled to use the evidence in this case. You should not consider the method of gathering this evidence in your deliberations.

REQUEST NO. 51

## <u>STATUTORY IMMUNITY OF GOVERNMENT WITNESS</u>

You have heard the testimony of witnesses who have testified under a grant of immunity from this Court. What this means is that the testimony of these witnesses may not be used against them in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this court.

You are instructed that the government is entitled to call, as a witness, a person who has been granted immunity by order of this court and that you may convict a defendant on the basis of such a witness's testimony alone, if you find that the testimony proves the defendant guilty beyond a reasonable doubt.

However, the testimony of a witness who has been granted immunity should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests; for, such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony.

Such testimony should be scrutinized by you with great care and you should act upon it with caution. If you believe it to be true, and determine to accept the testimony, you may give it such weight, if any, as you believe it deserves.

Sand, 1 *Modern Federal Jury Instructions*, § 7.01 (Instruction No. 7-8).

REQUEST NO. 52

## <u>**ADMISSIONS BY DEFENDANT**</u>

There has been evidence that defendant made certain statements in which the government claims the defendant admitted certain facts.

In deciding what weight to give the defendant's statements, you should first examine with great care whether each statement was made and whether, in fact, it was voluntarily and understandingly made. I instruct you that you are to give the statements such weight as you feel they deserve in light of all the evidence.

Jury Charge (Doc.77), *United States v. Orlando Pacheco*, No. 1:10-cr-139 (Sept. 2, 2011); *see* Jury Charge (Doc. 794), *United States v. Lugo and Delarosa*, No. 1:09-cr-64-CR (May 16, 2011); Sand, Siffert, Laughlin & Reiss, 1 *Modern Federal Jury Instructions*, & 5.07; *United States v. Aguiar*, No. 2:09-cr-90-WKS.

Dated at Burlington, in the District of Vermont, this 14th day of April, 2018.


                                CHRISTINA E. NOLAN
                                United States Attorney


                        By:     */s/ Abigail E. Averbach*
                                Abigail E. Averbach
                                Assistant U.S. Attorney
                                P.O. Box 570
                                Burlington, VT 05402-0570
                                (802) 951-6725
                                abigail.e.averbach@usdoj.gov

                                JOHN M. GORE
                                Acting Assistant Attorney General
                                Civil Rights Division

                        By:     */s/ Jared Fishman*
                                JARED FISHMAN
                                Special Litigation Counsel
                                EMILY SAVNER
                                Trial Attorney
                                Civil Rights Division, Criminal
                                Section
                                U.S. Department of Justice
                                601 D Street, NW, 5th Floor
                                Washington, DC 20530
                                Telephone: (202) 598-1877
                                Jared.Fishman2@usdoj.gov

<u>Certificate of Service</u>

By filing the above document this day via the Court's electronic filing system, I certify that

a copy will be served on Craig Nolan and David Williams, Counsels for Defendant, via ECF.


Dated:        April 14, 2018
              Burlington, Vermont


                                   By:     <u>/s/ *Abigail E. Averbach*</u>
                                           Abigail E. Averbach
                                           Assistant U.S. Attorney
                                           P.O. Box 570
                                           Burlington, VT 05402-0570
                                           (802) 951-6725
                                           abigail.e.averbach@usdoj.gov