UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

_____

UNITED STATES OF AMERICA          )

                VS                )   CASE NO:  5:16-cr-94-1

BRIAN FOLKS                       )

_____)    MOTION HEARING


BEFORE:   HONORABLE GEOFFREY W. CRAWFORD
          CHIEF JUDGE



APPEARANCES:  ABIGAIL E. AVERBACH, ESQUIRE
                  Assistant U.S. Attorney
                  P.O. Box 570
                  Burlington, Vermont   05402
                  Representing The Government



              EMILY M. SAVNER, ESQUIRE
              JARED FISHMAN, ESQUIRE
                  United States Department of Justice
                  Patrick Henry Building, Room 5018
                  601 D Street N.W.
                  Washington, DC   20004
                  Representing The Government

                  (Appearances Continued)


DATE:        April 27, 2018


          TRANSCRIBED BY:  Anne Marie Henry, RPR
                      Official Court Reporter
                      P.O. Box 1932
                      Brattleboro, Vermont   05302

APPEARANCES CONTINUED:

CRAIG S. NOLAN, ESQUIRE
        Sheehey, Furlong & Behm, P.C.
        P.O. Box 66
        Burlington, Vermont    05402
        Representing the Defendant


DAVID J. WILLIAMS, ESQUIRE
        Jarvis, McArthur & Williams, LLC
        P.O. Box 902
        Burlington, Vermont    05402
        Representing the Defendant

1                   (The Court opened at 10:15 a.m.)

2           THE CLERK:  Your Honor, the matter before the

3    Court is criminal number 16-94-1, United States of America

4    versus Brian Folks.  Present on behalf of the government are

5    Abigail Averbach, Emily Savner and Jared Fishman.  Present

6    on behalf and with the defendant are Craig Nolan and David

7    Williams.  And we are here for a motion hearing.

8           THE COURT:  All right.  Morning.  Good to see

9    everybody again.

10          MS. AVERBACH:  Good morning.

11          MR. NOLAN:  Good morning, Your Honor.

12          THE COURT:  At the end of the day yesterday I got

13   a call from counsel from both sides who were together.  They

14   brought to my attention a conflict of interest involving

15   defense counsel, which defense counsel hadn't been aware of

16   previously.

17          We talked about it for some time without a record,

18   just in a conference setting.  And I said we'd take the

19   matter up this morning.  And everybody would both give some

20   thought to it.  And Mr. Nolan had given some consideration

21   to filing a motion to withdraw.  I haven't seen that, but I

22   know there's not been much time either.

23          So why don't we start with the defense, Mr. Nolan

24   and Mr. Williams, where do we stand now?

25          MR. WILLIAMS:  Your Honor, after I received word

1  on Tuesday night that one of my former clients was an

2  extremely important witness in this case, I notified the

3  prosecution and Mr. Nolan.  And I told them I would have

4  nothing further do with that particular witness.

5         THE COURT:  All right.  So you represented the

6  C.I.?

7         MR. WILLIAMS:  Yes.

8         THE COURT:  Okay.  And what's your intention on

9  going forward?

10         MR. WILLIAMS:  I'm in the same boat as Mr. Nolan.

11  I would be unable to cross-examine her.  Even if she were to

12  waive that conflict Mr. Folks isn't willing to waive that

13  conflict on his end.

14         THE COURT:  Right.

15         MR. WILLIAMS:  We spoke last night.

16         THE COURT:  Okay.

17         MR. NOLAN:  And I guess I should put on the record

18  I also have a conflict.  It's one I believe that could not

19  be waived because of the professional relationship I have

20  with the C.I., whose name we got late on Tuesday.  And I

21  realized yesterday, because we got one of the names and not

22  one of the other names, I put together two and two and

23  figured out ah, I know this woman, I have a professional

24  relationship with her.

25         We informed Mr. Folks, both of us, that we've had

1  professional relationships and I have a professional

2  relationship with the C.I..

3           THE COURT:  Just so we have a complete factual

4  record, which is that you --

5           MR. NOLAN:  Your Honor, my only concern about the

6  details is that -- see this is -- here's my problem.  I'm

7  completely conflicted because, one, the government doesn't

8  want her identity known.

9           THE COURT:  Right.

10          MR. NOLAN:  Mr. Folks wants to know her identity,

11 of course, because he wants to confront his accusers.

12          THE COURT:  Right.

13          MR. NOLAN:  Because of my professional

14 relationship with her I can't advocate for the disclosure.

15 And I can't -- if we disclose the details I disclosed to you

16 that would make her readily identifiable.

17          THE COURT:  I don't need to know the details, and

18 I'm just going to call her the C.I. today, but I just want a

19 record clear for another court in the future so they

20 understand the nature of your conflict, which I don't think

21 you represented her, but someone else, right?

22          MR. NOLAN:  I represent someone else, yes.  I am

23 reluctant to go beyond that because that will make her

24 readily identifiable.

25          THE COURT:  You represented a relative?

1          MR. NOLAN:  I represent a relative, yes.

2          THE COURT:  Okay.  All right.  Fair enough.

3          MR. NOLAN:  I just put on the record too that the

4    government and I called that person yesterday after we got

5    off with you, talked with her about some of these issues.  I

6    believe the government was going to arrange to get her

7    counsel because, of course, the government was inclined to

8    have her waive the conflict, but they can't advise her to.

9    I can't advise her to or not to.

10          THE COURT:  Right.

11          MR. NOLAN:  And she expressed real concern about

12    identity being disclosed.  So here I'm in a terribly

13    conflicted situation.  My position is that we can't go

14    forward, neither Mr. Williams nor I can cross her, can

15    impugned the evidence that she's involved with, because of

16    at least my relationship with her, and that Mr. Folks

17    doesn't have confidence in us to attack that evidence, to

18    attack her directly or indirectly.

19          And that is part and parcel of the government's,

20    the government's drug case.  And it's all, as they've

21    described, inexorably intertwined.  So I do move to

22    withdraw.  I cannot move forward as it's just untenable for

23    me.

24          THE COURT:  No, I appreciate that.  And does

25    Mr. Folks know the identity of the C.I. now or not?

1          MR. NOLAN:  He does not.  He does not.  First of

2     all, the government hasn't -- we have an agreement with the

3     government not to identify that C.I. until, until you rule.

4     In fact, I filed an opposition to the motion in limine by

5     the government, one of which had -- one argument of which

6     had to do with the government's desire that she not be

7     publicly identified, that she testify with her alias name.

8          THE COURT:  Right.

9          MR. NOLAN:  I was all set to respond to that as

10    part of my response filed yesterday.  I had to excise that

11    from my response, we dropped a footnote simply saying that

12    will have to be addressed at a later date.  Why did I do

13    that?  Because the duty's owed in her direction and not

14    being able to take a position on that.

15         THE COURT:  All right.

16         MR. WILLIAMS:  Your Honor, this was moving so fast

17    yesterday that when that motion was being prepared my name

18    was on it, the memo responding --

19         THE COURT:  Right.

20         MR. WILLIAMS:  -- that Mr. Nolan had prepared for

21    us on Wednesday that I asked his office not to put my name

22    on it because the draft did address that issue regarding the

23    C.I..  And it wasn't until probably about noon that I got a

24    call from Mr. Nolan asking me a question.  And that's when

25    we put two and two together.  This is all happening less

than 24 hours ago.

THE COURT: Okay.

MR. WILLIAMS: And I would move to withdraw as well. I don't see how the government can try the drug conspiracy without any reference -- it has to be no reference at all to the C.I. because we are prohibited from attacking any underlying motive, opportunity, anything that may have happened with regard to the informant.

And the government got joinder on the conspiracy and drug counts because, under the rule, it's so intertwined that they would be tried together. And I think any attempt to say we can, we can move to sever those and maybe try them later would be improper because my client has a right to a fair and speedy trial. And to sever those counts from the conspiracy would deny him that right on those four counts.

THE COURT: All right. Thank you. I appreciate your perspective, both of you.

Miss Averbach, from the government's side?

MS. AVERBACH: Thank you, Your Honor. Good morning.

THE COURT: Good morning.

MS. AVERBACH: I think we can make accommodations to avoid the conflict or the appearance of a conflict in its entirety. And the government is prepared to make those accommodations if we are going forward on Monday as the

government would like to.  Our witnesses are poised to

testify.  The government is ready to proceed on Monday.

The accommodation the government suggests is that

we sever the four distribution counts.  We not call this

person as a witness.  We use evidence related to those

controlled buys only inasmuch as we have recordings of a

cooperating co-defendant who will take the stand who could

authenticate a video or an audio recording, say that's me,

that's me selling drugs, that's me selling the defendant's

drugs, and limit it to that.

The confidential source's credibility is not in

question.  Whether or not she did or did not deliver drugs

to DEA after that transaction is totally irrelevant.

I think it avoids the conflict in its entirety.

And I think it's a reasonable solution under the

circumstances given the timing of this.

The government is prepared to do that if Your

Honor is inclined to move forward on Monday or, you know,

within a very reasonably short time thereafter.

If Your Honor is inclined to continue the case for

a substantial amount of time we would elect not to do that.

Mr. Nolan should be relieved, somebody else should be

appointed in his stead and we'll proceed then.

THE COURT:  So let me ask you to repeat what

you're saying.  The confidential informant was the

1  controlled purchaser for all four distribution counts,

2  right?

3           MS. AVERBACH:  That's correct.  The ones this

4  defendant is charged with.

5           THE COURT:  And then there's a fifth possession

6  with intent to distribute, and is she involved in that or

7  not?

8           MS. AVERBACH:  Not at all.  And then there is a

9  conspiracy count which relies on her not at all.  The

10  witnesses who will testify about the conspiracy, most of

11  them have never met her, don't know her.

12           THE COURT:  Right.

13           MS. AVERBACH:  We weren't going to elicit

14  testimony from that witness about the conspiracy outside of

15  the four controlled buys.

16           So the government is fully confident in it's

17  ability to prove drug conspiracy, possession with intent to

18  distribute and the other, you know, the firearms count and

19  the human trafficking.  And they are inextricably interwoven

20  and we don't want to proceed on, you know, the sex related

21  counts without the drug related counts because of reasons

22  we've previously articulated.

23           THE COURT:  So those four transactions in which

24  the C.I. was involved would simply not come into evidence?

25           MS. AVERBACH:  Only inasmuch as the cooperating

1   co-defendant would authenticate video and audio taken during

2   the time of those buys and say that is me, that is me

3   selling drugs and those drugs were the defendant's drugs.

4           THE COURT:  Oh, the cooperating co-defendant is

5   the person on the other side of the hand-to-hand exchange

6   for the C.I.?

7           MS. AVERBACH:  That is correct.

8           THE COURT:  He or she's the person that met the

9   C.I. to sell the drugs?

10          MS. AVERBACH:  That is correct.

11          THE COURT:  How does that change your position?

12          MR. WILLIAMS:  Your Honor, it doesn't.  I mean,

13  how can we cross-examine this person about a video or audio

14  without talking about the person that she allegedly met?

15  Maybe those two people had a, had a relationship beforehand

16  and this has nothing to do with the conspiracy.

17          I mean, think, just think about it.  I mean, I'm

18  just talking off the top of my head because this is the

19  first I've heard about this crazy plan.  You can imagine and

20  spin off the kind of cross-examination you could do of, I

21  think I know who it is M.L., you had a prior relationship

22  with the informant, you set this up, blaw, blaw, you know,

23  --

24          THE COURT:  Well, let me ask Miss Averbach this,

25  you are planning to sever the four distribution counts,

1  that's your proposal?

2          MR. WILLIAMS:  That's their proposal.

3          THE COURT:  Yeah.  Yeah.  Let me work with her for

4  a second.

5          MS. AVERBACH:  That's my proposal, yes.

6          THE COURT:  And so why are we even hearing about

7  those four transactions in this case since they'll be

8  subject to later trial with different counsel?

9          MS. AVERBACH:  Well, because there are no double

10 jeopardy considerations at play and they are proof of the

11 drug conspiracy.

12         THE COURT:  Yeah, but isn't the cost, isn't the

13 price of solving the conflict problem that we don't hear

14 anything at all about these four counts until, until there

15 is new counsel and a new trial in a separate proceeding?

16         MS. AVERBACH:  I think we can resolve the conflict

17 with a reasonable accommodation that doesn't involve any

18 reliance on this person whose causing the conflict, the

19 relationships involving her.

20         Whether or not the person whose going to admit to

21 selling drugs sold drugs to somebody she knew previously or

22 didn't know previously I, frankly, think is irrelevant.  And

23 they can cross-examine her on whether or not she's a

24 credible person whose testifying truthfully as to whether or

25 not she's selling drugs and those drugs belonged to the

1    defendant's drug trafficking organization.

2         That doesn't have anything to do with whether or

3    not the confidential informant is a credible person worthy

4    of belief in this proceeding or any other proceeding at

5    which I think is the concern.  It's completely out of the

6    picture.  It's just proof that this defendant was working

7    with other people, i.e., M.L., to distribute controlled

8    substances.  And we have that on video.  And that would be

9    the sole purpose of its introduction.

10        MR. WILLIAMS:  The question is, how did you meet,

11   how did you set up the deal.  There's phonecalls between

12   these two people.  I mean, it's no accommodation at all.

13        THE COURT:  Either it's severed or it's not.

14   We're not going to -- in other words, they would be in the

15   same position of trying to ask hard questions about their

16   client, their former client or their, the current relative

17   of an existing client.  And they are, I mean, I appreciate

18   the effort, and I think if you sever the entire thing and we

19   try the distribution counts on another day, I think that

20   solves the problem, right?

21        MR. WILLIAMS:  If we sever the entire drug --

22        THE COURT:  No, we sever the four counts and the

23   government agrees not to put in evidence about the, about

24   those four purchases until a trial could be scheduled, a

25   separate trial not involving you two on those four charges.

1          MR. NOLAN:  All the evidence, all the references,

2     anything connecting M.L. to the informant, they can't use

3     the drugs, they can't use the videos, they can't have anyone

4     talking about those, that relationship.  It taints,

5     frankly -- we still have to be able to cross M.L. and part

6     of M.L. --

7          THE COURT:  Is M.L., I'm sorry, is M.L. the C.I.?

8          MR. NOLAN:  No, I'm sorry.  M.L. is the alleged

9     co-conspirator with --

10         MR. WILLIAMS:  How can we cross-examine M.L. and

11    leave out the alleged sales?  This is crazy.

12         MR. NOLAN:  M.L. sold, allegedly sold the drugs,

13    was allegedly working with Mr. Folks to sell the drugs to,

14    we'll call her Nikki, rather than using M.'s, Nikki the

15    C.I..

16         THE COURT:  Right.

17         MR. NOLAN:  And so our entire ability -- they

18    have -- they had a relationship.  And so any -- we would be

19    crossing M.L., whether she's talking about those same

20    transactions or not, with regard to her relationship with

21    M.N.  It's all --

22         THE COURT:  Who is M.N.?

23         MR. NOLAN:  Nikki.

24         THE COURT:  Just call her the C.I..

25         MR. NOLAN:  The C.I..  So what the government --

1    the government is seeking to slice this too thin.  And,

2    frankly, it's slicing it too thin on a case that already has

3    a difficult track record that's addressed in the other

4    motions.

5           As I said yesterday in chambers or over a

6    phonecall in chambers, if the government -- the government

7    should sever the entire drug case from this if they, if they

8    want us to be able to perform as we should and for Mr. Folks

9    to have confidence in us that we will attack the drug case,

10   attack M.L. the seller appropriately, based on her

11   relationship with the C.I..

12          I mean, it's just untenable to do that.  Not to

13   mention, as Mr. Williams mentioned, frankly, you know,

14   Mr. Folks does have speedy trial rights.  He doesn't have to

15   agree to a Speedy Trial Act exclusion with regard to

16   severance of the drug case.

17          So it's a mess.  What I would think the

18   resolution, they ought to dismiss the entire drug case, go

19   forward on human trafficking, which is much more serious

20   charges anyway.

21          THE COURT:  There's a piece that I want to make

22   sure I understand.  There's a variety of evidence on the

23   drug conspiracy side.

24          MS. AVERBACH:  That's correct.

25          THE COURT:  And I'm hearing from the government

1    that these four distribution events aren't going to be part

2    of that, are not necessary to that evidence?

3            MS. AVERBACH:  That's correct, Your Honor.  Let me

4    slice it a little less thinly, if you will.

5            THE COURT:  You can prove your conspiracy without

6    these four distribution events?

7            MS. AVERBACH:  And we'd be happy to do that if you

8    let us go forward.

9            THE COURT:  So if they do that then why would,

10   when the co-defendant who is cooperating gets up to testify,

11   why would you -- you would be the only people then who would

12   be introducing the CI's involvement with him because we'll

13   hear nothing in the government's case in chief about the

14   C.I., we'll hear nothing about the four distribution events,

15   and then you feel you would be duty bound to introduce that

16   evidence on cross-examination?

17           MR. NOLAN:  So two-fold, Your Honor.  One, unless

18   the government has just pivoted what they actually said is

19   we don't want to, we're not going to try him on the four

20   drug distribution counts, but we're going to put in half of

21   the evidence on those four distribution counts.

22           THE COURT:  No.  We're, they had -- with a little

23   bit of prodding and encouragement I think they have evolved.

24   And I don't hear them saying that they are going to put in

25   the tapes, that they are going to try and put in half the

1   evidence.  They are going to leave those four distribution

2   buys out of their case, right?

3           MS. AVERBACH:  That's correct, Your Honor.

4           THE COURT:  So if those four are left out of the

5   case they are going to put in no evidence about the C.I. and

6   at that point why do you?

7           MR. NOLAN:  Because defense counsel must attack

8   M.L..  M.L. is going to come in and she's going to testify

9   about the drug, the drug conspiracy.

10          THE COURT:  Yes.

11          MR. NOLAN:  Including her involvement, to some

12  extent, on the drug conspiracy.

13          THE COURT:  Right.

14          MR. NOLAN:  And she's going to do it generally.

15  She's not going to be able to talk about those four buys.

16  We have to be able to attack her based on her relationship

17  with a drug buyer who is their C.I..  We are duty bound to

18  attack M.L.'s testimony on the drug conspiracy as a whole.

19          These are all, these are all acts done in

20  furtherance.  And even though we wouldn't be sort of talking

21  about these acts, it doesn't matter.  It's the relationship

22  between M.L. and the C.I..

23          Now, if the government wants to not put on any

24  evidence by M.L. regarding drug conspiracy then that --

25          THE COURT:  No, that's not the offer.  The offer

1     is that they won't put on any evidence involving the

2     purchase by the C.I..  That will become, for purposes of

3     this case, sort of uncharged conduct involving prior bad

4     acts by M.L.  That she sold to the C.I. on, on other

5     occasions.  And you think you have to get into that in and

6     that you're entitled to?

7              MR. NOLAN:  Not only are we entitled to, we are

8     duty bound to attack M.L. with regard to her testimony as to

9     the drug conspiracy.  And part of that will be attacking her

10    relationship with, with the C.I..

11             And, again, let me just state on this record, had

12    I been notified at the time I was assigned that M.N. was

13    this particular person, I would never have accepted the

14    assignment.

15             THE COURT:  No, I get that part.

16             MR. NOLAN:  And so they are asking -- they are

17    asking us to defend Mr. Folks with one arm strapped behind

18    our backs.  It's, we're already in a difficult position and

19    as we've laid out.  And it's untenable, Your Honor, that we

20    should have any limitations on our ability to attack their

21    witnesses.

22             I think they could get rid of the drug case.  They

23    don't have to today, but they, but they could.  If they

24    wanted to solve the problem and move forward on human

25    trafficking the only way to do it is to, is to get rid of

1    the drug case for purposes of my representation and Mr.

2    Williams.  And I'll defer to him at this point because we

3    have different conflicts here.

4          MR. WILLIAMS:  Well, I was thinking just now M.L.,

5    the co-defendant who is cooperating, is going to come in and

6    testify, I suppose, I was involved in this charged drug

7    conspiracy because I was bagging, weighing, oh, and I was

8    selling drugs.

9          THE COURT:  Right.

10          MR. WILLIAMS:  Oh, and now we can't cross-examine

11    that person about the sales?  I mean, it's crazy.  Our, if

12    she was -- she's going to say I was selling drugs for Brian

13    Folks.  Oh, okay.  We won't ask you any questions about

14    that.  We can't do that.  How could we possibly defend and

15    cross-examine this witness about the sales?

16          MR. NOLAN:  Whether she mentions she was selling

17    for him or not, we have to attack her for being a drug

18    dealer.  They put us in an impossible situation.

19          MS. AVERBACH:  Your Honor?

20          THE COURT:  So your line of inquiry would be that

21    regardless of whatever Mr. Folks has done the bad drug

22    dealer is the cooperating co-defendant and here's an example

23    of four sales that she made all by herself, like that?  Is

24    that what you're saying?

25          MR. NOLAN:  That is, that is what, that is

1 potentially what the next other counsel could do.

2      THE COURT:  Right.

3      MR. NOLAN:  That is an example of that.

4      THE COURT:  Yeah, okay.

5      MR. NOLAN:  I mean, it's, she -- and then, you

6 know, she's going to give other testimony too.  And we would

7 attack her, even if she's not talking about drug dealing, if

8 she's talking about human trafficking and other

9 observations, whatever they may be outside, we're going to

10 attack her for her bad character, her, you know, all sorts

11 of things.  But it's, it's -- including drug sales that

12 related to the C.I..  So it's impossible.

13      MR. WILLIAMS:  And, I mean, just walking on

14 eggshells.  She's not my witness, but I can't even imagine

15 what it would be like cross-examining somebody and

16 potentially opening the door and then suddenly you're in

17 violation of professional conduct rules, you are subject to

18 2255.  The government now says you opened the door and we're

19 going to talk to this witness about all the sales you did

20 do.  It would be, believe me Judge, impossible.

21      And I've been doing this a long time.  And I've

22 never had those kind of constraints put on me

23 cross-examining a C.I., government cooperating witness,

24 whatever.  It just can't be done.

25      MS. AVERBACH:  May I, Your Honor?

1          THE COURT:  Of course.

2          MS. AVERBACH:  I think if you accept this theory

3    that they have to cross on the underlying relationship

4    between the drug seller and the drug purchaser they have --

5    what they are saying is that that relationship matters to

6    whether or not those sales actually occurred and, therefore,

7    they are going to cross-examine on the relationship between

8    those, this drug seller and every other single drug

9    purchaser.  And that, frankly, never happens.  It's not

10   required.  It has nothing to do with the conspiracy.

11         The conspiracy itself is concerned with whether or

12   not there was an agreement between the drug seller and

13   whoever else she or he is working with.  And the

14   relationship with the buyer is irrelevant to whether or not

15   there were parties who agreed to distribute controlled

16   substances which is what conspiracy is about.

17         In this case there is actually no relationship

18   between the confidential source and the cooperating

19   co-conspirator.  That's clear.

20         THE COURT:  Let me catch up with you.  Between the

21   C.I., there was no -- I thought the C.I. purchased drugs

22   from the, from M.L..

23         MS. AVERBACH:  Yes.  Because --

24         THE COURT:  There's a relationship.

25         MS. AVERBACH:  Well, you can tell they don't know

1  each other because they introduce themselves to each other.

2  Right.  They don't know each other.  There's no pre-existing

3  relationship that they are saying they want to probe.

4  There's been no proffer of a pre-existing relationship.  And

5  I don't believe one exists.

6       Over time, as they had subsequent transactions,

7  they recognized each other.  They are not friends.  There's

8  no relationship at all --

9       THE COURT:  I know, but they are not limited by

10  your theory of the case.

11       MS. AVERBACH:  No, of course.  But I'm just saying

12  there's been no proffer from them as to any sort of

13  relationship that would have an impact on that person's

14  credibility.  So I think it's a red herring.

15       You know, these are very skilled attorneys who,

16  like the government, always have to tread carefully where

17  there are motions in limine prohibiting prejudicial

18  information.  We are always worried about opening the door

19  to different things as are the defense.

20       And I do believe that these two highly competent

21  defense attorneys can navigate this with ease.  They are

22  very adept in the courtroom.  I don't think there will be

23  any problem if we agree reasonably to pursue the case only

24  on the conspiracy without eliciting any testimony about any

25  of the buys that involve this person.

We are going to ask the co-conspirator who is
cooperating what her role was in the drug organization, who
she worked with, how the drug organization worked, and what
she did. Among the things she did was she distributed
heroin primarily, sometimes crack cocaine, to all sorts of
drug purchasers, one of whom happens to be this person.

We will not bring that out. We will instruct our
witness not to offer it. It's irrelevant to whether or not
there was an agreement between the defendant and the person
whose on the stand and anyone else who is charged or
uncharged to distribute narcotics in this area.

THE COURT: Here's the part that's hard for me to
get into focus. On this you're in agreement, the government
says that M.L. sold to lots of people, you want to establish
that M.L. sold to lots of people.

Do you have a different view as to what her role
is? The government says she's just one conspirator among
several. One theory of your case may be that she's the
mastermind behind all this. I don't know. But you would
assign larger responsibility, but why is it that since both
sides agree that she's involved in hand-to-hand sales, why
do you have to choose these four to inquire about? You
could almost stipulate that M.L. was an active hand-to-hand
dealer. It doesn't seem to me a stone that necessarily your
representation has to fall on.

1          MR. NOLAN:  Your Honor, M.L. is a cooperating

2     co-defendant.

3          THE COURT:  Right.

4          MR. NOLAN:  She is a very damaging witness to our

5     client.

6          THE COURT:  Right.

7          MR. NOLAN:  Our client faces life imprisonment or

8     decades in prison --

9          THE COURT:  Right.

10         MR. NOLAN:  -- based on the mandatory minimums.

11         THE COURT:  Right.

12         MR. NOLAN:  The government is here, first of all,

13    now we're asking -- we're being essentially requested to

14    disclose our theories of defense which, of course, makes it

15    more difficult to defend.  And there's no obligation on us

16    to do that, unlike the government's obligation to disclose

17    evidence.

18         We have to be able to attack M.L. each and every

19    way that we think is appropriate.  And part of that involves

20    the C.I..  And I can't lay out every different scenario

21    here.  M.L. would take the stand, it's a moving target

22    during trial, and there is no comparison between the

23    government's risk of opening the door and our ethical duty

24    to represent Mr. Folks who faces decades or life in prison.

25         We have very different jobs.  We also have a

1    concern with regard to the Code of Professional

2    Responsibility in a way that just doesn't impact the

3    government.  So the prosecutors don't have any risk here

4    other than they open the door and there's a mistrial and

5    resources have been wasted.  Our risk is far greater for

6    Mr. Folks and for ourselves.

7            Again, I think it's untenable.  I can't cross

8    M.L., I can't cross the C.I. and neither can Mr. Williams.

9            THE COURT:  In other words, you can't cross M.L.

10   without bringing in the C.I.?

11           MR. NOLAN:  Yes.

12           THE COURT:  And why is that exactly?  I'm not

13   asking you in a confrontational way.  I'm asking because I

14   don't understand it.

15           MR. NOLAN:  We have to be able to attack the

16   conduct that involved -- attack her vis-a-vis the conduct

17   that involves the C.I..  And that is just not something that

18   we can do.

19           After all, it's some of the best evidence, right,

20   that we have about M.L.'s bad conduct.  The government's

21   turned it all over to us.

22           THE COURT:  Right.

23           MR. NOLAN:  And, again, --

24           THE COURT:  Oh, because you have the tapes and

25   things like that?

1          MR. NOLAN:  Yeah, we have the tapes and all that.

2     So, you know, we know about those.  That's a good source of

3     cross-examination.  And I would expect that if there were

4     different counsel sitting at this table they would have

5     different options on how to defend Mr. Folks.

6          They are slicing this too thin.  It's untenable.

7     And we're only here because the government disclosed the

8     witness on Tuesday.

9          THE COURT:  All right.  You have no interest in

10    severing the sex and trafficking in gun charges from the

11    drug conspiracy?

12         MS. AVERBACH:  No, Your Honor, we don't.

13         THE COURT:  Okay.

14         MS. AVERBACH:  They are inextricably interwoven

15    and we do plan to try those two things together.

16         I just want the record to be clear that the

17    witness list has always included initials for this

18    particular witness from the beginning of time.  And there

19    was always an invitation made explicit in the letter of

20    April 5th to defense counsel that we would be happy to share

21    the name of that witness with counsel so they could

22    investigate and for any other purpose.  That request never

23    came.

24         So ultimately we -- once we were having our

25    chambers conference the other week I said we'd be -- again,

1  we would be happy to share the name of this person for

2  counsel's eyes only.  And they said, Craig said, yes, we'd

3  like that.  And so I e-mailed it to them, admittedly a

4  couple days later, because it slipped my mind given all the

5  other things that were going on in this case.

6         But, you know, they've had, they've had an ample

7  opportunity to ask.  And so the suggestion that somehow the

8  government is at fault here by making a late disclosure I

9  think is not accurate.

10        MR. WILLIAMS:  We would have been doing this three

11  weeks ago then.  I mean, we, if they gave us the name I

12  would have recognized it immediately.  Mr. Nolan may not

13  have recognized it until noon yesterday.  And we couldn't

14  have talked to our client about it.

15        THE COURT:  You mean because of a married name

16  change?

17        MR. NOLAN:  Because I know her by the married

18  name.  We are not saying that the government did anything

19  unethical, but the government does have the duty to disclose

20  witnesses.  It's an affirmative duty under -- in this

21  district.  And, you know, they could have disclosed it on

22  April 5th to us.  They decided to withhold it.  But as Mr.

23  Williams said, so we would have been here on April 6th or

24  whenever I --

25        THE COURT:  I don't understand why April 5 is an

1  issue.  This is information that's been known for two years,
2  right?  This is nothing new.
3          MR. NOLAN:  To the government.
4          THE COURT:  To the government, yeah.
5          MR. NOLAN:  Well, yeah, she's their C.I..
6          THE COURT:  Right.
7          MS. AVERBACH:  This is not new information to us.
8  We gave our witness list over recently in anticipation of
9  trial.  I'm not sure when her initials first appeared on the
10 witness list.  I think it was well in advance of April 5th,
11 but on April 5th in a letter we again told the defense
12 counsel in writing we are happy to share the identity of
13 this person.  It's not as if we sprung this on them last,
14 you know, two days ago, which I think is the picture being
15 painted here.
16          MR. NOLAN:  It would have made no difference.  We
17 would have been here on April 6th.  As soon as we figured
18 out who she was we would have brought to the government and
19 the Court's attention, like we did yesterday, and you could
20 not have appointed new counsel at that point and have them
21 try the case starting Monday obviously.
22          So we're in no different position than we would
23 have been on April 6th.
24          THE COURT:  All right.  I don't think I have any
25 alternative except to grant the motions to withdraw and find

1    new counsel and reschedule the trial.

2         I will say this, I think it was an instance of

3    poor judgment on the part of the prosecution to withhold the

4    name of the critical witness on the four distribution

5    counts.  The consequence is that defense counsel and the

6    Court did not learn of a conflict of interest for months.

7         The prosecution placed the interest of the

8    investigating agency in concealing its C.I. ahead of the

9    interest of the Court in ensuring a fair trial.  But that

10   should never happen again in this Court.

11        The integrity of the legal process has to be a

12   shared priority, as important to the prosecution as it is to

13   the Judge.  And in this instance, as I understand what

14   happened, the prosecution chose the short-term advantage of

15   trying to save the confidential informant for another day

16   over the constitutional requirement of a legal defense free

17   of a conflict of interest.

18        This should not have been kept a secret for all

19   these years.  And I thought I was going to deal with it

20   today in the context of the jury selection.  I was going to

21   come out in exactly the same way that in an American

22   courtroom people come in, they say their name, they testify

23   and make certain that jurors don't live next to them.

24        I had, frankly, not appreciated the possibility

25   that both attorneys might have unrelated professional

1   involvement with the C.I., but it's the same, it's the same

2   consequence.

3         So we've lost three weeks of trial time.  Over a

4   hundred potential jurors gave up next Monday to come in to

5   court next week.  I've held a prosecution witness in jail

6   for two nights for no purpose.

7         Frankly, your colleagues on both sides, including

8   other prosecutors and other defendants in this Court, are

9   disadvantaged because cases scheduled for the fall will have

10   to be pushed off.  The Court will essentially go dark for

11   three weeks.

12         And I really think this is an occasion that all

13   three of you at the prosecution table have to think hard

14   about in reflecting about your priorities in making

15   decisions and making judgments in cases like this.  I don't

16   have more to say on that.

17         My usual practice is to keep out of the lawyers'

18   way while they prepare their case.  That's the way I liked

19   to practice.  I liked to see the judge when I had a motion.

20   I didn't want him or her in my business while I was

21   preparing.  That's not been working well in this case.

22   Every time we get closer to a trial date, and I've set

23   several, there's been a problem.  And that's not only on the

24   prosecution, both sides, not these lawyers, but both parties

25   have created trouble that's required rescheduling.

So what I'm going to do going forward, I'll get a new attorney, pair of attorneys for Mr. Folks, give them the time they need to get up to speed. We're going to set up a process with a monthly status conference with both sets of lawyers to make sure that discovery is provided and that Mr. Folks is getting access to his materials.

I'll speak with the marshals about setting up a process where he can review the voluminous material in this building under supervision. Just leaving it to the two sides to develop an agreement has not been effective. But we'll talk about that in the future once we have new counsel.

I'll thank Mr. Nolan and Mr. Williams for their service in this case. Mr. Nolan, in particular, dropped his other projects what, eight weeks ago, whenever it was, when the Court called for his help. They represented Mr. Folks with a lot of skill and energy. I'll miss their participation. Do my best, Mr. Folks, to match their level of accomplishment. And I have some candidates in mind.

But I think that's as much as we can say. So we'll have to cancel the trial, reset it late summer, early fall. And I'm disappointed in the outcome. Okay.

MR. WILLIAMS: Your Honor, I was thinking about this last night in anticipation of something like this happening. We, Mr. Nolan and I have done nothing, at least

1    I haven't done anything for the last month but prepare for

2    the trial.

3              THE COURT:  Yeah, I understand.

4              MR. WILLIAMS:  And I just want to be able, --

5              THE COURT:  I'm not quite there, but I'm not too

6    far behind you.

7              MR. WILLIAMS:  -- with the Court's permission, to

8    work with successor counsel to share what I've learned.

9              THE COURT:  Yeah, of course.

10             MR. WILLIAMS:  If that's okay with you.

11             THE COURT:  That's fine.  And that will be

12   reflected in the vouchering system.

13             MR. WILLIAMS:  Because I expect to spend days

14   going over thousands and thousands of pages with --

15             THE COURT:  Yeah.

16             MR. WILLIAMS:  It would save everyone a lot of

17   time in the long run, if that's okay with you.

18             THE COURT:  No, I'll anticipate that.

19             MR. WILLIAMS:  And Mr. Folks, I'll talk to him

20   about that as well.

21             THE COURT:  Yeah.  All right.  Anything else we

22   can take up?

23             MS. AVERBACH:  Your Honor, I think there is the

24   matter of the material witness and the --

25             THE COURT:  I'm just going to release her.  What

1     else can I do?  I can't keep her for the summer.

2          MS. AVERBACH:  Well, we will depose her with Your

3     Honor's permission, of course.

4          THE COURT:  I'll have to let her lawyer know where

5     matters stand.  And that's -- he's made the motion for her

6     deposition.

7          MS. AVERBACH:  Correct.

8          THE COURT:  And that's his call.  That was, that

9     was the consequence of her detention.  There isn't a basis

10    for her detention today.  If he wants to go forward with a

11    deposition, as he moved, that's his call, but I'm not going

12    to tell him that I don't have a trial date, but I still want

13    you to do the deposition.  It's his choice to come forward

14    on that under the rule.

15         MS. AVERBACH:  I understand what you're saying,

16    Your Honor.  I think, you know, I think her unavailability

17    for trial, whenever that date shall be, hasn't changed.

18         THE COURT:  Right.

19         MR. NOLAN:  Your Honor, just a practical

20    consideration, the government is seeking to depose her now

21    to use that at trial as I understand.  Mr. Folks and his now

22    counsel would have to be present for that.

23         THE COURT:  Yeah, yeah, I get it.  I don't think

24    the deposition is going to happen.  It wasn't the government

25    that wanted to depose her.

1          MR. NOLAN:  Right.  It was her counsel that wanted
2   to depose her.
3          THE COURT:  It was her counsel wanted to depose
4   her in lieu of her waiting in prison for a week until she
5   could testify.  The latter issue is off the table.  And the
6   parties can always stipulate to a deposition I suppose if
7   they like, but I can't say that she's unavailable for a date
8   that I don't even know what it is.
9          So I, I will let Mr. McLaughlin, right, know about
10  this circumstance.  And then he can be in touch with
11  Miss Averbach with him and talk about it further.  But he
12  doesn't have the pressure on his client that he did an hour
13  ago.
14         All right.  Mr. Folks, we kind of left you out of
15  the conversation.  There's absolutely no obligation for you
16  to say anything, but if you had a view I'd be glad to hear
17  it.
18         MR. FOLKS:  Can I confer with my attorneys first?
19         (Defendant conferring with his attorneys off the
20  record)
21         MR. NOLAN:  You wanted Mr. Folks' perspective on
22  your --
23         THE COURT:  I just wanted to give him that
24  opportunity since the question of legal representation is on
25  the table.  And I didn't want to foreclose him.  There's no,

1   I'm not asking for him to say anything at all.  I think he

2   understands what's happened and I'll leave it there.

3              MR. NOLAN:  He does want to say something very

4   short.

5              THE COURT:  Of course.

6              MR. FOLKS:  Yeah, I understand.  I don't have any

7   objection to what you are proposing.

8              THE COURT:  Okay.  Fair enough.  Thanks.  Okay.

9   We'll get on to the next case.  Thank you.

10             (The Court recessed at 11:00 a.m.)

```
1                    C E R T I F I C A T E

2

3          I, Anne Marie Henry, Official Court Reporter for

4    the United States District Court, for the District of

5    Vermont, do hereby certify that the foregoing pages are a

6    true and accurate transcription of my shorthand notes taken

7    in the aforementioned matter to the best of my skill and

8    ability.

9

10   _____

11                    Anne Marie Henry, RPR
                      Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```