UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No. 2:16-CR-94-1 |
| BRIAN FOLKS,<br>Defendant | |

## GOVERNMENT'S MEMORANDUM ON ELECTRONIC EVIDENCE EXTRACTED FROM THE DEFENDANT'S HARD DRIVE

The United States of America, by and through its counsel, hereby files this pleading in response to the defense brief contesting the admissibility of the Defendant's hard drive.   The basis of the Defendant's objection to the admissibility of the Defendant's hard drive is that it appears that some files on the hard drive were "modified" on February 2, 2017, the day before the hard drive data was extracted by forensic examiner Frank Thornton.   As government trial witnesses will explain, this is explainable by DEA Intelligence Analyst (IA) Marilyn Epp's handling of the computer on that date in an attempt to execute a valid search warrant.   IA Epp's handling of the computer did not materially affect the data extracted therefrom and did not affect *at all* the limited set of material from the computer that the government seeks to introduce.

## I.    RELEVANT FACTS

Burlington Police Department Detective Sergeant Dan Merchand testified as to the July 19, 2016 execution of a federal search warrant at the Burlington apartment where the Defendant was staying.   Law enforcement seized a multitude of drug paraphernalia and items belonging to the Defendant, including a Hewlett Packard, Pavilion model computer tower.   Det. Merchand noted the make, model, and serial number of the computer at the time of the seizure.   The

1

computer has been introduced into evidence through Det. Merchand.   That computer has remained in the custody of federal officials (the DEA and the FBI) since the seizure. Specifically, on July 21, 2016, SA Chetwynd transferred control of the computer tower to FBI SA Chris Destito.[1]   DEA agents secured a search warrant for the computer on January 27, 2017. On January 30, 2017, SA Destito transferred custody of the computer to DEA via IA Epp.

IA Epp thereafter turned on the computer in an attempt to begin the execution of the search warrant.   IA Epp reviewed information from one of the computer's user profiles, which was the "Guest" user profile, but was unable to access other user profiles because they were password protected.   At that time, IA Epp shut down the computer and sought the assistance of Mr. Thornton.   IA Epp transferred custody of the computer tower to Mr. Thornton on February 3, 2017.

Mr. Thornton accessed all of the user profiles and extracted data from the hard drive contained in the computer tower, including a plethora of files depicting the Defendant himself (images of him, his family, etc.) as well as files related to government trial witnesses and other young women.   The government seeks to admit a relatively small number of the image, video, and audio files preserved by the Defendant on his computer because they corroborate the testimony of the government's trial witnesses and are highly probative of the Defendant's involvement in the charged conduct.   The defense challenged the credibility of each of the young women who testified.   The Defendant's collection of digital images and other files memorializes many of the events described in the women's testimony and provides evidence of the Defendant's criminal conduct in his own words.

---

[1] Defense counsel has informed the government that they will not require the testimony of FBI personnel in order for the government to establish chain of custody on the computer.

The majority of incriminating electronic evidence from the hard drive is contained within two user profiles:   "Pam Scott" or "Cassandra."   IA Epp did not access either of these user profiles.   The defendant's computer forensic expert, Mr. Anthony Martino, determined in his April 3, 2019 report that modifications to user files within the "Pam Scott" profile occurred between May 30, 2012 and July 18, 2016.   Law enforcement took the defendant into custody the next day, on July 19, 2016.   Mr. Martino identified no files in the "Pam Scott" user profile that were modified after July 18, 2016.

Mr. Martino determined that modifications to files present in the "Cassandra" profile occurred between May 31, 2013 and February 2, 2017 (consistent with the date of IA Epp's powering on of the computer).   Within this profile, Mr. Martino identified only one file modified after law enforcement seized the computer.   Specifically, he found that on February 2, 2017, a system-created file named "ntuser.dat.Log1" was modified.

Mr. Martino ultimately concluded that the computer was powered on February 2, 2017. Mr. Martino further concluded that 820 files were created and 1,458 files were modified on February 2, 2017 within the "Partition" area of the computer.   Specifically, Mr. Martino noted that the "setupapi.dev" log file indicated that a keyboard, display, and mouse were attached to the computer when it was powered on.   Mr. Martino also indicated that several files within the "Windows" operating system were modified on February 2, 2017, such as the following files: "Temp," "Prefetch," "System32," and "inf."   Within the "Temp" file folder, Mr. Martino indicated that the following folders were modified on February 2, 2017:   "_avast_," "avast_ash2," "pdk-SYSTEM-2252," and "hsperfdata_PAMSCOTT+HP$."

The government's computer expert, Mr. Thornton, agrees.   As Mr. Thornton will testify,

various temporary files and software update files were created when IA Epp powered on the computer.   File system logs, temporary files, boot statistics, software updates, and backup files were modified when IA Epp powered on the computer.   As Mr. Thornton will testify (and as Mr. Martino's report supports), no user-created files were created or modified since the seizure of the computer on July 19, 2016.

The government intends to introduce several relevant image, audio, and video files found on the defendant's computer.   The vast majority of these image and video files are relevant because of their content (i.e., the persons depicted in them – the Defendant and various trial witnesses and others associated with the Defendant's charged activities) and not merely because of the metadata associated with the files.   Regardless, these photographs and videos all have MAC (modified, accessed, and created) time data that preceded February 2, 2017.   MAC time data includes dates a file was modified, dates a file was accessed, and dates a file was created. Since none of the MAC time data for the files the government intends on introducing includes February 2, 2017 or later, powering on the computer on February 2, 2017 did not alter or even affect the files the government seeks to introduce.

The defense expert prepared a report with his findings on April 3, 2019 and he is on the defense's witness list, presumably ready and able to testify as to any irregularities identified with the data that can be attributed to the time when the computer was in law enforcement's custody. Instead of having their expert testify as to his findings and cross examine the government's witnesses on the same, however, the defense seeks the exclusion of all data from the hard drive – an extraordinary remedy given that no bad faith or tampering has been identified and given that there is no evidence that any files that the government intends to introduce from the hard drive

were at all affected by IA Epp's powering on of the computer before its delivery to Mr.

Thornton.

## II.    ARGUMENT

### A.  Governing Law

The bar for authentication of evidence under Fed. R. Evid. 901(a) is minimal and "not

particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).   It is met

where "sufficient proof has been introduced so that a reasonable juror could find in favor of

authenticity or identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004)

(internal quotation marks omitted).   The government need only establish a rational basis from

which to conclude that an item of evidence did, in fact, belong to the defendant. *United States

v. Natale*, 526 F.2d 1160, 1173 (2d Cir. 1975).   There is also a presumption of regularity, as the

Court may presume the "integrity of evidence routinely handled by government officials" unless

there is some showing of tampering. *United States v. Mejia*, 597 F.3d 1329, 1337 (D.C. Cir.

2010); *see also United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir. 1993) (acknowledging the

presumption of regularity when evidence remains within official custody absent evidence of

tampering or other interference); *United States v. Miller*, 994 F.2d 441, 443-44 (8th Cir. 1993)

(same).

Alleged breaks in the chain of custody typically "do not bear upon the admissibility of

evidence, only the weight of the evidence." *United States v. Jackson*, 345 F.3d 59, 65 (2d Cir.

2003) (internal quotation marks omitted).   The government is not required to "rule out all

possibilities inconsistent with authenticity." *Gagliardi*, 506 F.3d at 151 (internal quotation

marks omitted).   The government is also not required "to prove beyond any doubt that the

evidence is what is purports to be." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)

(internal citation and quotation marks omitted).   "Once [Fed. R. Evid.] 901's requirements are

satisfied, the evidence's persuasive force is left to the jury." *Tin Yat Chin*, 371 F.3d at 38

(citation and internal quotation marks omitted).   "[T]he other party then remains free to

challenge the reliability of the evidence, to minimize its importance, or to argue alternative

interpretations of its meaning, but these and similar other challenges go to the *weight* of the

evidence—not to its *admissibility*."   *Id*. (emphasis in original).

### B. IA Epp Did Not Tamper with Any of the Computer's Files and No Files the Government Intends to Introduce were Affected at All by IA Epp's Accessing the Computer on February 2, 2017

The basis for the defense's objection to the authenticity of the data contained within the

Defendant's hard drive is that it was tampered with on February 2, 2017.   However, IA Epp will

testify at trial that it was she who attempted to access the computer's content on or about that

date.   She will testify to the extent of her examination of the computer's contents and the fact

that she did not make any changes to the files contained within (except to the extent that the mere

powering on of the computer affected the system files described above).   IA Epp did not tamper

with the computer; she turned on the computer and attempted to access its content within the

scope of her work as a DEA Intelligence Analyst and pursuant to the authority of the search

warrant.   She will be subject to cross examination on the same.

The defense argues that the mere powering on of the computer corrupted its entire

contents; however, if every time a computer was turned on all of its contents were corrupted,

then computers would have little value.   Additionally, any argument that IA Epp inserted

incriminating files into the defendant's computer or otherwise modified existing files to make

6

them (more) incriminating is entirely speculative.   If IA Epp inserted incriminating files onto the

defendant's computer or modified existing incriminating files, the MAC time associated with

these files would reflect that such files had been modified, accessed, or created on February 2,

2017.   That is not the case here.   The system files modified on February 2, 2017 and identified

by Mr. Martino do not have any evidentiary value.   Additionally, the set of hard drive content

that the government seeks to admit at trial is limited and specified by bates range on the

government's exhibit list.   There is no indication in Mr. Martino's report or elsewhere that this

limited set of files – consisting of image, audio, and video files with relevance independent of

their MAC time data – were affected at all by IA Epp's powering on of the computer.

As a result, any update to files on February 2, 2017 due to IA Epp's accessing of the

computer has no bearing on the integrity of the evidence that the government will seek to

introduce.   More importantly, merely raising the possibility of tampering is insufficient to render

such evidence inadmissible.   *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir. 1994); *see also*

*United States v. Brown*, 136 F.3d 1176, 1182 (7th Cir. 1998) (observing that "merely raising the

possibility (however hypothetical) of tampering is not sufficient to render evidence

inadmissible").

In sum, the powering on of the computer on February 2, 2017 is irrelevant since it did not

affect or impact the integrity of the electronic evidence the government seeks to introduce from

the Defendant's computer.

### C.  The Hard Drive Content Should be Admitted and the Relevant Government Witnesses (Epp and Thornton) Will be Subject to Cross-Examination

There is no indication that any there was any unauthorized access to the computer or any

bad faith handling of the computer.   The only law-enforcement-caused modification to the

contents of the computer is limited to system files that have no probative value.   As such, the relevant files identified by the government on its exhibit list and not hereto specifically objected to by the defense should be deemed admissible.   The computer was in the control and custody of IA Epp at the time of modifications to system files identified by the defense expert and IA Epp can explain her actions with respect to the computer prior to delivering it to Mr. Thornton, subject to cross examination.   The government and defense experts – Mr. Thornton and Mr. Martino – will presumably testify as to their apparently differing views of the effect of IA Epp's powering on of the computer and the jury can thereafter appropriately determine the weight to give any computer evidence admitted.

**III.    CONCLUSION**

Since IA Epp's actions in turning on the computer did not affect the integrity of the files that the government intends on offering into evidence, and as the defense is prepared and able to cross-examine Ms. Epp and Mr. Thornton on any irregularities, the unaffected files the government will seek to introduce should be admitted.


Respectfully submitted, this 5th day of May, 2019.


UNITED STATES OF AMERICA

Christina E. Nolan
United States Attorney

By:    /s/ *Bill Darrow*
       Bill Darrow
       Assistant U.S. Attorney
       P.O. Box 570
       Burlington, VT 05402-0570
       (802) 651-8232

8

BDarrow@usdoj.gov

ERIC DREIBAND
Assistant Attorney General
Civil Rights Division

By:    /s/ *Matthew T. Grady*
MATTHEW T. GRADY
Special Litigation Counsel
EMILY SAVNER
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
601 D Street, NW, 5th Floor
Washington, DC 20530
(202) 514-3204
Matthew.Grady@usdoj.gov
Emily.Savner@usdoj.gov

9

<u>Certificate of Service</u>

By emailing the above document this day to the Court's clerk and copying the defendant's attorneys on the email, I certify that a copy has been served on Mark Kaplan and Natasha Sen, Counsels for the defendant.

Dated:        May 5, 2019
              Burlington, VT

                                     By:      <u>/s/ *Emily Savner*</u>
                                              EMILY SAVNER
                                              Trial Attorney
                                              Civil Rights Division, Criminal Section
                                              U.S. Department of Justice