*Brian [signature]*

*page one*

Brian Folks post trial Reply Brief

To briefly summarize what I want the court to consider; I am alledging that 98% of the points brought up by the government in their opposition to our aquittal motion was based on "Newly aquired" information that the defense was not given. None of the statements referenced was ever known to the defense and additionally was contrary to the statements given by these government witnesses and presented to the defense in the form of Brady material.

Youngblood v. West Virginia, 547. U.S. 867, 809-870. The suppression by the prosecution of evidence favorable to an accussed upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgement of the jury. To prevail on his brady claim defendant need not show that he more likely than not would have been aquitted had the new evidence been admitted. He must show only that the new evidence is sufficient to undermine confidence in the verdict.

In defendant's situation, Had the witness' new statements been known to the defense before trial, the defense would have had time to prepare rebuttals, motion in limine, ~~and~~ meta data, video and audio evidence that would undoubtedly prove these statements to be impossible. So in essence, defendant was convicted based on actions he knew absolutely nothing about because these actions

(statements) were hidden from him throughout his entire three year incarceration where he waited for the case to be investigated and prepped for trial. This unconstitutional tactic performed by the government prevented the defense from aquiring and using evidence material to defendant's innocence during trial for there was no way to know this material was needed to add to an already overwelming abundance of material in the case, over 80% of which was never even mentioned in the trial. It was merely given to defense to placate defendant's desire to research his case in order to prove his innocence. This is evidenced by the fact that the actual statements used at trial was 190° in opposition to the statements given to the defense.

Furthermore, The government's own witnesses (Keisha W., Katelynn C. and Chrissy Tatro) all testified that the meta data presented on some of the pictures was wrong; as well as some of the statements taken by the D.E.A agents as being wrong and or misquoted.

To further confirm defendant's allegations, a number of the government's witnesses (Mary Provost, Katelynn C, Danielle M., and Keisha W.) all testified that the new information the defense was hearing for the first time, was infact relayed to the government's investigators throughout the investigation.

In Regards to this newly discovered evidence, there is photo and video material that exist within the computer confiscated by the D.E.A.; as well as Facebook

messages, Backpage material, and the government's own investigative statements that prove not only the defendant's innocence of the alledged charges but also proves the statements relied upon for defendant's conviction were false.

Therefore, facts exist which require that the conviction be vacated by the court because: the facts relied upon were not known by petitioner or petitioner's counsel at the time of trial, or in time to file a post-trial motion pursuant to V. Cr. P. 33, or in time to be included in any previous collateral proceeding, and could not have been discovered in time through the exercise of reasonable dilligence; and the facts are not merely cumulative to other facts that were known; and the facts do not merely amount to impeachment evidence; and if the facts had been known at the time of trial, the result would probably have been different; and the facts establish that the defendant is innocent of the crime for which he was convicted.

I turned in the notes from the first 29 pages of the 56 page response from the government. For the most part it began speaking about the drug part of the case, which I glossed over breifly along the lines of a buyers-sellers agreement between myself and McFarlan. The key parts of those pages were in regards to Katelynn and Jasmine. I was charged with prostituting Katelynn in early 2012 and she said I was with Jasmine. When me and Jasmine met and started dealing with each other was in 12-2012 and its on Facebook.

on page 30, first paragraph, the government states that "Folks seems to contend that the law requires a direct cause-and-effect relationship between a sexual assault and Keisha immediately going out and engaging in a comercial sex act..." **There is however, absolutely no evidence supporting a sexual assault took place! Why is this even an issue? It serves as a distraction from the actual merits of the case.**

The Vermont state court has consistently acknowledged the need to be vigilant in reviewing the admission of evidence of uncharged misconduct, because once jurors learn of uncharged misconduct, they tend to use an entirely different calculus of probabbilities in deciding whether to convict.

Same page second paragraph, the Government states that it not need to show a link between any specific commercial sex act performed by the person and any particular threat made, or any particular action or act of fraud or coercion taken against her. Rather, <u>it is sufficient if the defendant's actions gave rise to circumstances that would compel a reasonable person in the person's situation to comply with defendant's demands, in light of the totality of the defendant's conduct, the surrounding circumstances, and any vulnerablities of the person.</u>

Even if this being the law, the defendant's actions should be proven beyond mere accusation. There should be some tangible or at the least, some corroborated proof of these actions. A single (never before heard) statement shouldn't be allowed to undermind the structure of the law.

Furthermore, Keisha said in her statement to the Government, that she was in fact never pressured into having sex, and also that she was always paid to have sex with the defendant, (bates 002162. Statement taken on 3-9-17)

The defendant's fourteenth amendment right to due process was violated because of witnesses false testimony at trial. There is actual proof that the witnesses committed perjury.

The commonwealth knew or should have known that the testimony was false, the testimony was not corrected, and there was a reasonable likelihood that the perjured testimony could have affected the judgement of the Jury. The fact that all of the Government's witnesses used testimony that wasn't given to the defense and was contrary to the testimony that the defense did get made it impossible for the defense to mount an effective defense.

The petitioner met the standard set by Giglio V. United States and Napue V. Illinois; [2]- It was not necessary that the petitioner also prove that the perjured testimony caused him actual prejudice under the standard of Brecht V. Abrahamson.

*[signature]*

Page ~~Three~~ Four

Brief to page six

(Haskell v. superintendent, Greene SCI, 866 F3d 139) Haskell filed a Habeas petition challenging his conviction as tainted by perjured testimony in violation of his 14th. Amendment right to Due process.

(Napue v. illinois, 360 U.S. 264) The principle that a state may not knowingly use false evidence, Including false testimony, to obtain a tainted conviction, implicit in any concept or ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The Jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that the defendant's life or liberty may depend. It is of no consequence that the falsehood may bear upon a witness' credibility rather than directly upon a defendant's guilt. A lie is a lie, no matter what it's subject, and, if it is in any way relevant the prosecutor has the responsibility and duty to correct what he knows to be false and elicit the truth.

"The government never gave us all the Brady material." Brady suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor. [98% of The Testimony we heard from the government's witnesses was 180° different from what they said in the statements

the government gave us in Brady material. These witnesses also said that they did in fact tell investigators these new statements.]

On page 30 paragraph Three, the government again alledges that the defendant Raped Keisha and they further argues that "Foiks contends that this did not cause Keisha to prostitute," Insinuating that defendant in some way confessed to Raping Keisha This is not the case in any way, shape, or fashion according to defendant.

The last paragraph on page 30 spoke about Keisha's alledged "Fear of reputational Harm stemmed from the fact that she saw Foiks use demeaning photographs to expose and retaliate against Hannah." They went on to say "Keisha knew that Foiks had plenty of Demeaning pictures and video recordings of her, such as videos of Foiks urinating on her and shoving acorns in her anus."

  (1) There is NO ACORN Nor wallnut video of Keisha and no one corroborated that. She wasn't in either of the videos.
  (2) The urination video took place after the Hannah video was placed on faceBook so How exactly did seeing that video place the thought in the BACK of her mind like she testified to?

The first paragraph on page 31 stated, "the inference that can be drawn from this testimony is that these thoughts and Fears occurred while Keisha was prostituting for Foiks

since she knew he had multiple photos and recordings of her." Defendant was charged with prostituting Keisha in February of 2016. The video of Hannah was made in March of 2016. So how then could it influence her to prostitute for Defendant. Keisha admitted that back when she did prostitute with defendant, she took most of her own pictures to post on Backpage.

There was absolutely no proof at all that defendant sent Keisha any pictures at all. The pictures shown to the jury was from the defendant's private collection on his personal P.C. The picture of Hannah in an apron (shown to the jury) was not the same picture featured in the video of Hannah posted by defendant. The one showed to the jury showed more of her body than the one featured in the video.

Although the court must view the evidence in a light more favorable to the government for this motion, that does not include an outright lie, or a factually impossible situation.

As for Keisha's reputational harm, her reputation in public was that of a backpage escort already as evidenced by her statement to the D.E.A. on 9-16-14 where she stated that she was "one of the top girls in the world of prostitution."

This paragraph further stated that the defendant used heroin to incentivize Keisha to prostitute for him. Again the government misrepresented the facts to the court because in Keisha's statement to the D.E.A. she stated that the defendant didn't sell drugs when they met (Bates 00174 and 002147). Also at no time at trial

* = can be found in trial transcripts.

page nine

did Keisha say defendant incentivized her with heroin to prostitute with him. She in fact said that she would call the defendant when she needed his help (*).

On page 31 the final paragraph, the government spoke of testimony relevant to Danielle M. To begin with, they spoke about Danielle cutting herself on her arms to cope with her abusive and chaotic childhood. However, none of the nude pictures in evidence that was taken while Danielle was with the defendant show these marks. yet the government showed these marks to the jury and claim that Danielle showed them to the defendant.

On page 32 paragraph two spoke about defendant and Danielle M. having a conversation about her selling drugs for him. There is no factual basis to this at all. (Please note I never saw a statement at all from Danielle M. She was obviously interviewed before giving testimony at trial

The standard of review applicable to perjured testimony claims is strict This is so not just because those claims involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process. Accordingly, in order to establish his claim, A petitioner must show that (1) The witness committed perjury, (2) The commonwealth knew or should have known that the testimony was false, (3) The false testimony was not corrected, and (4) there is reasonable likelihood that the perjured testimony could have affected the judgement of the Jury.

Dated at Swanton Vt. Oct. 6, 2019.

Page Five

*[signature: Brian ___]*