UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:16-CR-94 |
| BRIAN FOLKS | |

OPPOSITION OF THE UNITED STATES
TO PRO SE MOTION TO RECONSIDER

The United States opposes the "Defendant's Pro Se Motion for Reconsideration" (Doc # 528), filed December 18, 2019. The government opposes pro se filings from this extraordinarily well represented defendant for the reasons set forth in Doc # 517. In addition, the pro se motion is filed out of time. However, assuming that the Court will consider the filing, the government submits this response.

On May 9, 2019, a jury found Folks guilty of human trafficking and drug trafficking offenses. On July 29, 2019, he filed a post-trial motion for acquittal (Doc # 485), opposed by the government in Doc # 500. On October 7, 2019, Folks filed a pro se brief supplementing the arguments raised by counsel (Docs ## 516, 516.1 and 516.2), opposed by the government in Doc # 517.

On November 4, 2019, the Court denied the post-trial motion in a 54-page opinion and order. Doc # 520 (the "Opinion and Order"). The Opinion and Order carefully reviews trial evidence and the law. Rejecting challenges to five of the six human trafficking convictions, the Court found "ample" and "plentiful testimonial evidence" as to Katelynn (Count 10, pp. 36-39); "significant evidence" of "coercive behavior" as to Keisha (Count 12, p. 40); "plentiful testimonial evidence supporting" guilt as to Danielle (Count 13, p. 42); "considerable support for

1

the jury's finding" as to Ayla (Count 14, p. 43); and "ample evidence" as to Hannah (Count 15, pp. 44-49).

As to each of the adult human trafficking victims, the Court cited multiple instances of coercive conduct by Folks, including physical assaults and threats (Katelynn); "a variety of sexually abusive behavior" (Keisha); sexual assaults and "clear threats of violence [and] use of force" (Danielle); and physical assaults along with "sexual abuse tactics" as to Ayla. In response to post-trial attacks by Folks on the credibility of witnesses, the Court repeatedly pointed out that credibility was determined by the jury, not the Court. Opinion and Order, p. 39 (as to Katelynn: "A Rule 29 motion does not allow the Court latitude to question credibility or assign weight to the evidence by substituting its judgment for that of the jury"); pp. 42-43 (as to Danielle: same); p. 44 (as to Ayla: "it is up to the jury, not the Court, to determine whether or not a witness is credible"); and pp. 50-51 (responding generally to credibility protestations: "the Jury has sole discretion over determinations of witness credibility"). The Court also observed that counsel "cross-examined all witnesses" and that Folks "had a fair opportunity to rebut new adversarial testimony." P. 53.

A motion to reconsider should advance an "intervening change of controlling law, [the] availability of new evidence, or . . . [a] need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) (Friendly, J.) (also citing "the desire to save judicial time").

The instant pro se motion persists in arguing witness credibility and weight of the evidence issues. Folks cites no change in the law, new evidence, or manifest injustice warranting reconsideration of the Court's Opinion and Order.

Folks urges (again) that Katelynn and Danielle testified falsely; that there was no evidence of coercion as to Keisha and Ayla; that "there was no way possible for him to determine Hannah's age" (Motion at 22); that some witnesses gave perjured testimony; and that the government failed to disclose witness statements. These issues were addressed during trial and in the Opinion and Order; they present no basis for reconsideration. Folks also contends that evidence in his personal computer, "which has been in the Government's possession throughout the duration of this case," would prove that his human trafficking victims testified falsely. Motion at 29. Yet Folks, through counsel and defense digital forensics expert Anthony Martino, had access to and examined the contents of the computer, and Mr. Martino testified about it at trial. Folks also characterizes testimony about his assaults on human trafficking victims as prejudicial "uncharged crimes." Yet the Court determined that the assaults (contemporaneous with the charged trafficking) contributed to the "coercion" element of adult trafficking. In any event, Folks's contention could have been raised during trial or in the post-trial motion – it is not a basis for reconsideration of the Opinion and Order.

Folks forthrightly denies criminality in his treatment of the young women prostituting for him. He did nothing wrong: the women accepted payment from him in heroin, and thus "agreed to" his conduct. Keisha "was paid to perform"; nothing was "forced upon her" because she "agreed to" everything. Motion at 6-7. Keisha's receipt of heroin thus justified the "variety of sexually abusive behavior" Folks visited upon her. As to Ayla, Folks simply gave her "options to make money in order to support her growing habit." *Id*. at 16. Folks

incredulously asks how his treatment of Ayla could be "considered coercive or forceful." *Id*. As with Keisha, Ayla entered into an agreement with him "of her own free will," not unlike a "standard landlord/tenant agreement." *Id.* at 17.  As a surprising example of this free, arms-length exchange, Folks advances the "Walnut Challenge": "everyone who participated was paid to do so.  There was no coercion whatsoever." *Id.*  Similarly, requiring Ayla, sick from heroin withdrawal, to service him sexually in exchange for a fix, was "a clear indication of a bartering situation between" them. *Id*. at 18.  Like Keisha, Ayla was "free to go off and do whatever she wanted to do on her own." *Id*. at 19 (adding, "the fact that she was homeless was not of the Defendant's doing, so [he] shouldn't be left to bear that burden").

Folks's remarkable inability to grasp the Jury's verdict, the Court's opinion and order, and the evidence, reflects only his self-centered refusal to accept responsibility.  He advances no basis for reconsideration of the Opinion and Order.

Dated at Burlington, in the District of Vermont, December 27, 2019.

Respectfully submitted,

UNITED STATES OF AMERICA

CHRISTINA E. NOLAN
United States Attorney

By:   /s/ William Darrow
WILLIAM B. DARROW
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Bill.Darrow@usdoj.gov

4