UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 2:16-CR-94 |
| | : | |
| BRIAN FOLKS | : | |

### DEFENDANT'S MOTION TO LIFT OR MODIFY THE AMENDED PROTECTIVE ORDER

Defendant Brian Folks moves to lift or modify the current Amended Protective Order (Doc. 294). Presently, Mr. Folks is located at a geographically distant facility which requires at least a half day of travel alone. He is unable to access his discovery unless a member of his defense team meets with him personally and sits with him while he reviews it. As such, the order is onerous and impractical. Moreover, the governmental concerns that may have justified this broad order in the first instance no longer apply. Accordingly, Mr. Folks seeks to lift or modify the Amended Protective Order to allow him to retain his discovery materials so that he can adequately assist in preparing his sentencing and later, post-sentencing challenges to his conviction and sentence.

**I.   BACKGROUND**

On June 11, 2018, Folks moved to modify the original protective order (Doc. 165) ("Previous Order") to allow him to retain and review a large portion of the voluminous discovery protected under that order so that he could prepare for trial.[1] The Previous Order prevented Mr.

---

[1] For the sake of brevity, counsel incorporates by reference the background of this case contained in the defendant's previous motion to amend the protective order (Doc. No. 255, *Defendant's Motion to Amend the Protective Order*) and the government's response to that motion (Doc. No. 256, *Government's Response to Defendant's Motion to Amend the Protective Order*).

Folks from retaining, even temporarily, any discovery and thus, severely limited his ability to assist in his own defense.

On October 29, 2018, the Court held a hearing on that motion. On November 26, 2018, the Court then issued the current Amended Protective Order (Doc. 294) ("Current Order"). The Current Order embodies some of the same provisions as the Previous Order. For example, the Current Order provides that: (1) victim and witness names cannot be disseminated to anyone outside defense counsels' firms and any investigators and contractors retained by defense counsel, including but not limited to the press; (2) any such investigators and contractors are bound by the same restrictions as Mr. Folks; (3) defense counsel may share summaries and excerpts with anyone but such summaries and excerpts must be redacted as to witness names; (4) defense counsel must refrain from using the full or actual name of any witness identified as a victim by the government in any public-facing document or filing, as well as from making reference to a victim's full or actual name in any public hearing; and (5) counsel should adhere to the naming conventions in the governing indictment or, upon further agreement, in any other manner acceptable to the government.

One of the chief differences between the Current Order and the Previous Order is that it provides for a system in which Mr. Folks could review his voluminous discovery without requiring in-person review with his defense team. The current order allows Northwest Regional Correctional Facility ("NWSCF") to establish a system in which Mr. Folks could privately access his discovery materials. The Court's order allows Mr. Folks to access and review his discovery materials by using a laptop computer, provided to him by his counsel and stored securely at the facility. The Current Order permits Mr. Folks to use that laptop computer in a private location

within NWSCF to access and review discovery materials, except for any media containing sexually explicit material (audio, video, or still images), in accordance with the Guidelines for Material that Features Nudity or Sexually Explicit Pictures and the Guidelines for Audio/Video Media.[2] The order also provides that the laptop cannot be attached to any external devices.

After the Current Order was issued, Mr. Folks was able to review discovery material at NWSCF. Due to inadvertent error, however, Mr. Folks accessed his discovery through an external hard drive which was attached to the laptop provided to NWSCF. After using this system for several months, on May 23, 2019, Mr. Folks notified NWSCF that the external hard drive was missing from the case in which his laptop was kept. The U.S. Marshal service then conducted an investigation into the missing hard drive. After reviewing logs and interviewing witnesses, including Mr. Folks' family members, the U.S. Marshal's service closed their investigation determining that the hard drive was lost or otherwise, unaccounted for.

After the conclusion of Mr. Folks' jury trial, Mr. Folks was transferred from NWCSF to Southern State Correctional Facility ("SSCF"). SSCF is located in Springfield, Vermont approximately two hours from the Burlington, Vermont area. Compounding the problem, Mr. Folks is housed in the infirmary unit at SSCF due to ongoing medical problems and mobility issues. In the facility's infirmary, he has limited access to the facility's law library and materials, such as paper.

Due to changed circumstances, Mr. Folks requests that the Court lift or modify the Current Order. First, there is no longer sufficient justification to support the Current Order, which is broad

---

[2] The Order provided that such guidelines are provided at:
http://www. doc.state.vt.us/about/policies/rpd/correctional- services-301-550/401-500-programs-security-and-supervision/409-05-inmate-mail-publicationsand- audio-video-regulations.

3

and amounts to a "blanket" protective order. "Blanket" orders, like the one issued here, are disfavored and subject to challenge as overinclusive. Second, Mr. Folks, is no longer housed at NWSCF. Since the Current Order specifically names NWSCF, at a minimum, it should be modified to allow for a similar discovery review system to be established at SSCF. As it stands now, the Current Order no longer permits Mr. Folks access to a discovery-loaded laptop. When Mr. Folks wishes to review discovery, a member of the defense team must travel to his geographically distant facility and spend hours with him while he reviews discovery that he wishes to examine. This method of reviewing discovery with Mr. Folks is extremely onerous, impractical, and ultimately, runs afoul of the Mr. Folks' Fifth and Sixth Amendment rights to due process, effective assistance of counsel, and the ability to prepare one's own defense

## II. THE PROTECTIVE ORDER SHOULD BE LIFTED OR MODIFIED.

### A. The Law: Good cause and changed circumstances

Federal Rule of Criminal Procedure 16(d)(1) authorizes entry of protective orders and provides: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." When a party requests a modification or rescission of a protective order, courts consider whether good cause exists for the modification or rescission and whether the other party has relied upon the protective order. *See United States v. Morales*, 807 F.3d 717, 723 (5th Cir. 2015) (borrowing from the civil context and considering the nature of the protective order, the foreseeability of the modification, the parties' reliance on the order, and whether good cause exists for modification); *United States v. Calderon*, 2017 WL 6453344, at *5 (D. Conn. 2017) (considering whether there was "a compelling reason to modify" a protective order); *United States v. Bulger*, 283 F.R.D. 46, 54 (D. Mass. 2012) (requiring the defendant seeking modification to show "a changed circumstance or a new situation warranting such relief); *United*

*States v. Walker*, 2019 WL 4412909, at *11-12 (E.D.N.C. Sept. 13, 2019) (voluminous discovery and excessive travel amounts to good cause that justifies modifying a protective order).

In evaluating a challenge to a protective order, "a court 'must weigh [one] party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides' goals.'" *Bulger*, 283 F.R.D. at 55 (quoting *Murata Mfg. Co., Ltd. V. Bel Fuse, Inc.*, 234 F.R.D. 175, 180 (N.D. Ill. 2006)). It is important to ensure that a protective order "is no broader than is necessary" to serve the intended purposes. *United States v. Smith*, 985 F.Supp.2d 506, 545 (S.D.N.Y. 2013) (quoting *United States v. Lindh*, 198 F.Supp.2d 739, 742 (E.D. Va. 2002)).

### B.     The Law:  Blanket protective orders.

When a protective order is challenged, the nature of the showing of particularity depends upon the nature or type of protective order at issue." *Bulger*, 283 F.R.D. at 52 (citing *Manual for Complex Litigation (Fourth)* § 11.432 (2012)). Protective orders vary in range and type "from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993). "A blanket protective order 'extend[s] broad protection to all documents produced by [a party], without a showing of good cause for confidentiality as to any individual documents.'" *Bulger*, 283 F.R.D. at 52-53 (quoting *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988)). "[B]lanket protective orders may be useful in expediting the flow of pretrial discovery materials, [but] they are by nature overinclusive and are, therefore, peculiarly subject to later modification." *Public Citizen*, 858 F.2d at 790. These types of protective orders "are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with

respect to any individual document." *San Jose Mercury News, Inc. v. U.S. Dist. Court, Northern District (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (citations omitted). "'Parties operating under a blanket protective order,' such as the government, 'cannot rely on an unreasonable expectation that such an order will never be altered.'" *Bulger*, 283 F.R.D. at 54 (quoting *United States ex rel. Franklin v. Parke-Davis*, 210 F.R.D. 257, 261 (D. Mass. 2002)).

Blanket protective orders are more likely subject to modification than protective orders based upon a document by document review with a concomitant showing of good cause as to each document. *Public Citizen,* 858 F.2d at 790 (although "blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification"); *accord San Jose Mercury News, Inc.* 187 F.3d at 1103 (blanket protective "orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document"). "Parties operating under a blanket protective order," such as the government, "cannot rely on an unreasonable expectation that such an order will never be altered." *United States ex rel. Franklin*, 210 F.R.D. at 261.

> **C.    The Current Order is a blanket protective order and should be lifted or modified because circumstances have changed.**

In the case at bar, the parties entered into a blanket protective order. As noted above, a blanket protective order "extend[s] broad protection to all documents produced by [a party], without a showing of good cause for confidentiality as to any individual documents." *Public Citizen*, 858 F.2d at 790; *accord Kyles v. J.K. Guardian Sec. Services,* 2006 WL 2349238, at *4 (N.D.Ill. Aug. 15, 2006) ("[b]lanket protective orders extend protection to all documents without a showing of cause for confidentiality as to any particular document").

6

Here, the government's initial showing was not particularized or specific—it was not based on a document by document review with a concomitant showing of good cause as to each document. The parties simply agreed to the blanket protective order as a compromise in this case to expedite the flow of pretrial discovery materials when trial was imminent and the government did not wish to further delay the trial. Such a blanket order, however, is no longer justified. Mr. Folks has been tried and awaits sentencing. As such, the order must now be supported by a particularized showing because it is overinclusive. *See Manual for Complex Litigation (Fourth)* § 11.432 (2012) (umbrella protective "orders typically made without a particularized showing to support the claim for protection, but such showing must be made wherever a claim under an order is challenged").

Hundreds of thousands of documents were produced in the government's discovery process. Those documents are no longer sensitive or confidential as the government's investigation and the trial are over and all of the witnesses have testified in open court. Witness safety concerns such as tampering, perjury, or witness intimidation that may have provided the initial justification for the blanket protective order no longer exist. Such changed circumstances warrant relief from the Current Order. *See Bulger*, 283 F.R.D. at 54-55 (modifying an existing protective order after finding that the volume of the production and organizational difficulties it imposed on defense counsel amounted to "changed circumstances [that] provide an adequate basis to modify or lift the protective order").

Mr. Folks finds further support for his position in *United States v. Walker*, 2019 WL 4412909, (E.D.N.C. Sept. 13, 2019). In *Walker*, the defendant was charged with various offenses related to an armed Hobbs Act robbery. *Id.* at *1. Before trial, a protective order was entered limiting the defendant's discovery review to in-person consultation with his attorney only—the

defendant was not permitted to retain any of his case-related discovery. *Id*. at *11. The protective order was initially justified, and defense counsel consented to it, apparently based on the government's concerns regarding witness confidentiality and safety and to protect the government's ongoing investigation. *Id*. Specifically, the government received information through a co-defendant that Mr. Walker intended to harm and had threatened a witness who he believed was cooperating against him in his pending case. *Id*. at *2. Further investigation indicated that Mr. Walker claimed to have sent "hitters" to this witness' house. *Id*. Law enforcement warned the witness of the threat but "hitters," apparently, had not actually been sent to the witness' home. *Id*. The government was also concerned because it had learned that a friend of Mr. Walker, Ms. Tamika Lloyd, posted some government witnesses' names on Facebook, referring to those witnesses as "rats," which law enforcement understood to be an assertion that those witnesses were cooperating with law enforcement. *Id*. Thereafter, law enforcement listened to numerous jail phone conversations between Mr. Walker and Ms. Lloyd and believed they were using coded language to talk about murdering a cooperating witness and trying to figure out how to get a hold of a gun. *Id*. Mr. Walker also mailed his discovery to other people and used other people's jail accounts to communicate with others regarding the witnesses in his case. *Id*. at *4.

With this factual backdrop in mind, Walker challenged the protective order in his case contending that the order was too onerous for his attorney and impacted his attorney's ability to render effective assistance of counsel. *Id*. at *11. Circumstances had changed, Walker argued, because the government had disclosed thousands of additional pages of discovery. *Id*. Per the protective order, defense counsel had to drive two hours (presumably four hours round-trip) to see the defendant and spend hours with the defendant while he read through discovery. *Id*. Defense counsel argued that the defendant ought to be able to read through the discovery on his own to

assist in his own defense. The court agreed, over government objection, holding that:

> …Defendant has shown good cause to modify the protective order. It is burdensome and time-consuming for defense counsel to review thousands of pages of discovery with Defendant. Defense counsel stated at the first hearing that he reviewed 2,500 pages with Defendant in two hours, and 11,500 pages remain. It would take Defense counsel just over nine hours to review the remaining discovery with Defendant at that rate, plus hours for travel and discussion. Defendant has shown that good cause exists for modifying the protective order. Accordingly, the protective order is amended to allow Defendant to have possession of his discovery material, but still prohibit Defendant from mailing the discovery material to others or communicating its contents to others outside the detention facility.

*Id*. at *12.

Mr. Folks is unable to access and review a much larger volume of discovery materials than Walker in the absence of his defense team. Even more so than Walker, Mr. Folks is unable to adequately assist his defense team in preparing sentencing and any post-conviction relief he may wish to pursue. Mr. Folks asks the Court to re-consider the breadth of the order and allow Mr. Folks to retain his discovery materials. The government lacks justification for such a broad order and its lack of justification should be balanced against the difficulties presented to his defense team if the order is not lifted or modified.

To the extent that the government contends that discovery materials must remain confidential, the government must identify each document and provide justification for why each document must remain protected. As noted above, all of the co-defendants and witnesses in this case have already testified in open court and there is no further investigation regarding the underlying convictions. It seems that the government's initial justification is no longer applicable.

By contrast, Mr. Folks' need to review his discovery is paramount. And given the volume of materials, retaining his discovery is important. It is difficult, if not impossible, to recall the contents of every document, and, upon review of additional documents, the ability to compare and

contrast evidence is a key part of reviewing the discovery and preparing for sentencing and later, post-conviction relief. Without this ability, Mr. Folks is unable to meaningfully review his discovery as he prepares for sentencing and beyond. In the absence of a particularized, specific showing as to each particular document that should remain subject to the Current Order, it should be lifted.

At a minimum, the Current Order should be modified. Mr. Folks is no longer housed at NWSCF which is specifically named in the Current Order. As mentioned above, he is now located in the infirmary at SSCF in Springfield, Vermont. The undersigned has consulted with two assistant superintendents at SSCF. Both superintendents indicated that Mr. Folks could be permitted secure access to his discovery in one of two ways. First, the facility indicated it could allow Mr. Folks access to a pre-loaded laptop in a manner similar to the system set up at NWSCF. Second, the discovery could be loaded onto a computer kiosk in the law library. There, Mr. Folks could access it using an assigned pin number. The defense suggests that either of these two methods would act to ameliorate some of the more onerous aspects of the Current Order. Given Mr. Folks' access to the law library is more limited from the infirmary at SSCF, it appears that a pre-loaded laptop would be the better method of providing him access. The Court may also be assured that defense counsel would preload a laptop only and not provide any external device to Mr. Folks.

In any event, without lifting or modifying the Current Order, Mr. Folks' constitutional rights to due process, effective assistance, and, of course, to prepare for his sentencing and appeal are impacted. Balanced against the government's lack of sufficient justification for the Current Order, it should be lifted. For these reasons, Mr. Folks respectfully asks the Court to lift or modify the Current Order to allow him to retain his discovery materials.

WHEREFORE, it is respectfully requested that this Court issue lift or modify the current protective order.

Dated at Burlington and Brandon, Vermont this 9th day of March, 2020.

By: __/s/ Mark Kaplan__  
    Mark A. Kaplan, Esq.  
    KAPLAN & KAPLAN  
    95 St. Paul Street, Suite 405  
    Burlington, Vermont 05402  
    (802) 651-0013  
    Counsel for Brian Folks

By: __/s/ Natasha Sen__  
    Natasha Sen  
    Attorney  
    P.O. Box 193  
    Brandon, Vermont 05733  
    (802) 825-6385  
    Counsel for Brian Folks

By: __/s/ Michelle Anderson Barth__  
    Law Office of Michelle Anderson Barth  
    P.O. Box 4240  
    Burlington, Vermont 05406  
    Supplemental Counsel for Brian Folks

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 2:16-CR-94 |
| | : | |
| BRIAN FOLKS | : | |

## CERTIFICATE OF SERVICE

I certify that on the 9th day of March, 2020, I electronically filed **DEFENDANT'S MOTION TO LIFT OR MODIFY THE AMENDED PROTECTIVE ORDER** using the CM/ECF system, which will provide notice to Assistant U.S. Attorney William Darrow via Bill.Darrow@usdoj.gov and Special Litigation Counsel Matthew Grady via Matthew.Grady@usdoj.gov.

By:  S/Michelle Anderson Barth<br>
Supplemental Counsel for Defendant