UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA

v.                                                          No. 2:16-CR-94-1

BRIAN FOLKS

OPPOSITION OF THE UNITED STATES
TO DEFENDANT'S MOTION TO LIFT PROTECTIVE ORDER (#552)

The United States of America, by and through undersigned counsel, opposes the

"Defendant's Motion to Lift or Modify the Amended Protective Order," filed on March 9, 2020

(Doc #552).

Defendant Folks asks the Court to let him receive all discovery materials.  As the Court is

aware from the trial, during Folks' years of trafficking young women, he created a multitude of

photographs and videos depicting the exploited women in compromising and degrading scenes.

Folks used these depictions both to traffic the women, and to intimidate and retaliate against

them for violating his rules.  A selection of these images was introduced at trial.

Hundreds of additional photographs and videotapes of young women were recovered

from Folks' digital devices, in addition to the trial evidence, many depicting women who did not

testify at trial.  His tower computer contained digital files on over 100 women, with a multitude

of images depicting them in sexual positions, and in some instances engaged in sexual activity

with Folks.  In addition to these many images, discovery materials include Grand Jury transcripts

and investigative reports, concerning both women who testified at trial and women who did not.

The subject of the bulk of this discovery is sexual exploitation by Folks.  Nearly all of the

women whom the government interviewed are afraid of Folks, who exploited, degraded,

assaulted, threatened, and intimidated them.

The proposition that Folks should be provided these materials is preposterous.  For years prior to trial he had the opportunity to review the materials with counsel.  Trial was continued to give him more time to review materials.  After trial (nearly a year ago), the post-trial motions deadline was continued, and after that the sentencing date was continued.  All at Folks' request to allow him more time to review materials and prepare.  Folks has had years to review and prepare.  Particularly as to sensitive discovery materials, there no need on the eve of sentencing to allow Folks uncontrolled access to them.  In addition, such access would risk further exploitation, intimidation, and retaliation as to his victims.

Folks' steadfast efforts, over several years, to regain possession of his images of the women and investigative materials, and the Court's efforts to regulate his access, has a lengthy and unfortunate history, summarized below.

A.   PROCEDURAL HISTORY

(1) *February 2018: Defense Counsel Violates the 2017 Protective Agreement and Provides to Folks the Full Names of Civilian Witnesses; Folks Forwards the Names to His Spouse and They are Posted on Facebook.  Presiding Judge Geoffrey W. Crawford Expresses Dismay and Enters the First Discovery Order*

In early 2017 attorney William Kraham, then representing Folks, entered into a discovery agreement with the government, barring dissemination of victim and witness names, providing that Folks could only review discovery in the presence of counsel or counsel's agents, and barring Folks from retaining the materials.  *See* Exhibit A (May 31, 2017 letter).

In December 2017, Judge Crawford scheduled trial to begin April 16, 2018.  Doc #118. He subsequently reset the trial date to April 30, 2018.  Doc # 175.

In February 2018, Mr. Kraham violated the discovery agreement by providing to Folks, in pretrial detention, the government's witness list, containing the full names of witnesses.  Folks

2

mailed a copy of the witness list to his wife Cassandra Harris.  In a recorded prison phone call, he directed her to post the names on Facebook ("I want you to post every fucking page.  You hear me?").  Two days later Folks told her, "I put them in the mail today," but "I don't know if I want you to post them yet. . . . .  I don't know if you could get in trouble for that or not. . . .  But you can have them, and people [who] want can see them. . . ."  Shortly thereafter, the witness list was posted on Facebook.

Distressed witnesses brought the disclosure of their names to the attention of the government.  As the Court is aware, the witnesses included drug addicted young women from extraordinarily challenging backgrounds, coerced into prostitution by Folks, using, *inter alia*, drugs, intimidation and violence.  Trial evidence established that Folks threatened to retaliate against (or "violate") his human trafficking victims by distributing texts and posting on Facebook, compromising images and information about them.

In the wake of the discovery violation, on February 26, 2018, then presiding Judge Geoffrey W. Crawford conducted a hearing.  Mr. Kraham admitted sending the government discovery letter to Folks, and apologized for "my error and my carelessness."  Transcript at 13. Kraham stated that he would move to withdraw.  Co-counsel David Williams assured the Court that the breach would not happen again.  Judge Crawford referred to Kraham's violation of the protective agreement as "an appalling breach of your professional obligation," adding:

> we expect something different from the lawyers that appear here.  And this is as disappointing as anything I've seen in my three and-a-half- years in this court.  I just – it had not occurred to me that a lawyer would do this, but it's live and learn.  And we will have to figure out a way forward.

*Id*. at 20-21.

On February 28, 2018 (the same day as the hearing) Judge Crawford signed the first "Protective Order" memorializing the terms of the parties May 2017 protective agreement.  Doc

#165.

On April 26, 2018, counsel moved to continue the April 30 trial, urging that the protective agreement and protective order "impede the ability of Mr. Folks to assist in his own defense by slowing to a crawl [his] review and evaluation of the evidence against him," and asserting that the government had been late in producing discovery. At a hearing on April 27, 2018, Judge Crawford decided to reschedule trial. In addition, he granted a motion to withdraw by counsel (David Williams and Craig Nolan), who claimed a conflict (prior representation of a belatedly identified government witness).

Also on April 27, 2018, Judge Crawford appointed attorneys Mark Kaplan and Natasha Sen to represent Folks. Doc #234. At a May 4, 2018 status conference, Judge Crawford rescheduled trial for October 1, 2018. Doc # 238; *see also* # 240 (revised scheduling order). In addition, Judge Crawford ordered that Folks be transported from Northwest to the Burlington courthouse twice a week to review discovery materials with counsel. *Id.*

> (2) *June 2018: Folks Protests that the Protective Order Should be Amended to Restrict His Access to "Sensitive" Materials Only; Judge Crawford Adopts the Proposal in the "Amended Protective Order"*

At a June 1, 2018 status conference, new defense counsel informed the Court that Folks sought more access to discovery. Doc # 251. Folks' motion to amend the protective order followed on June 11, 2018. Doc # 255. Folks pointed out that the February 28, 2018 "Protective Order" was a "blanket" protection order prohibiting him from retaining *any* discovery, and requiring the presence of a defense team representative in order for him to review all discovery materials. He proposed a distinction between "sensitive or confidential" materials on the one hand, and non-sensitive or non-confidential materials on the other. The former could remain subject to protections, but the latter he should be able to retain and review on his own. Absent

such a modification, counsel urged, "Mr. Folks will not have time to review all of the materials"
by the October 1 trial. *Id*. at 7.  The "Government's Response to Defendant's Motion to Amend
the Protective Order" (Doc #256) did not object to the proposed amendment, but urged that good
cause continued to exist for the protection of sensitive materials.

On June 19, 2018 Judge Crawford entered the "Amended Protective Order," in essence
granting the motion to amend.  Doc # 258.  The amended order divided discovery materials into
two groups: "sensitive" and "non-sensitive."  Folks was permitted to retain non-sensitive
materials.  Sensitive materials remained subject to existing protections.  Judge Crawford
loosened the latter protections a bit by allowing Folks to review such materials "under the
supervision of the U.S. Marshals Service" in the Burlington courthouse (in addition to review in
the presence of defense team members).

Judge Crawford's Amended Protective Order defined "sensitive discovery material" to
include: (1) grand jury testimony; (2) Jencks material containing statements of identified civilian
witnesses; (3) Giglio material of civilian witnesses; (4) material identifying the informant
participating in the controlled drug purchases from Folks; and (5) video media, and photographic
images of civilian witnesses or images containing nudity or sexually explicit conduct.  The
Amended Protective Order specified that Folks "shall not copy, share, disseminate, or make
accessible to any other person by any means any discovery material," and that "all discovery
produced shall be returned to the government or destroyed within 30 days of the conclusion of
the trial or appellate proceedings.  This shall include all non-sensitive material that the defense
team may have provided to the defendant . . . ."  *Id.* at 4.

In June 2018, Judge Crawford was scheduled to preside over the Fall 2018 trial in
*United States v. Donald Fell*.  As a result, in mid-2018 this case was reassigned to Judge William

K. Sessions.  Docs #242 and #251.

> *(3) July 2018: Folks Contends that Judge Crawford's June 2018 Amended Protective Order is also Overly Restrictive, and that He Does Not Have Enough Time to Review "Sensitive" Discovery Under Its Conditions*

On July 25, 2018 Folks moved to continue the October 2018 trial, contending that "the highly restrictive protective orders" impeded his review of discovery materials, *id*. at 3, and counsel also required "additional time to review the extensive discovery materials."  *Id*. at 1.  Doc #264.  At an August 27, 2018 status conference, this Court rescheduled the trial to January 22, 2019.  Doc #271.  The Court also ordered that Judge Crawford's order requiring the Marshal's Service to bring him to the Burlington courthouse to review discovery materials twice a week remained in effect.  *Id*.

At the August 27, 2018 status conference, defense counsel stated that "we have sort of continuous discovery concerns" and that "our client for some time now has wanted to address the Court on a discovery issue."  Transcript at 6-7.  Counsel indicated that the parties had not agreed as to whether certain materials were "sensitive."  The Court directed the parties to try and work it out.  The defendant, addressing the Court, denounced "blatant violations" of his rights, and stated that he needed to see all materials himself.  Folks also informed the Court that he had deliberately sent out the witness list in February so people would know that co-defendant Donald McFarlan was cooperating: "I initially set out to set the record straight that Mr. McFarlan in fact was the one testifying against me."  *Id*. at 16.

On September 10, 2018, Folks protested Judge Crawford's "Amended Protective Order" in the "Defendant's Motion to Retain Certain Documents Prohibited Under the Current Protective Order."  Doc #274 (filed under seal).  Folks urged that he should be able to retain various materials deemed "sensitive" by Judge Crawford.  The "Government's Response to

Defense Motion to Allow Folks to Maintain Sensitive Discovery Controlled By Protective Order in Detention Facility" (Doc #275 (sealed)), reviewed the history of Folks' prior discovery violation and his violence, and urged this Court to enforce Judge Crawford's Amended Protective Order.

> ### (4) This Court Allows Folks Access in Pretrial Detention to a Laptop Computer on Which Counsel Load Discovery, Providing that the Laptop Not Be Connected to Any External Device

At an October 29, 2018 "Discovery Conference," this Court held a hearing on Folks' continuing discovery protestations (Doc #274).  Defense counsel informed the Court that although the Marshal's Service had brought Folks to the courthouse 14 times for discovery review, he had reviewed only "about half" of the materials.  The Court inquired whether the Vermont "Department of Corrections [Folks was detained in a State facility] could supervise his review of documents?"  Transcript at 8; *see also* 10 (Court: If there was a "room which is monitored by the Department of Corrections so that they know that the documents are not going to be taken out of that room," that would give appropriate access).  The Court also pressed counsel as to whether the defense team had "an investigator, paralegal, or employee who could . . . go to the jail and supervise his review of material . . . ." *Id*. at 19.  Counsel responded that although the team had "multiple investigators" none "could spend five days a week eight hours a day" at Northwest State Correctional Facility ("NWSCF") with Folks.  *Id*.  At the close of the hearing the Court directed the defense to submit a report "as to whether . . . the Department of Corrections could actually monitor his materials."  *Id*. at 25.

On November 2, 2018 the defense responded to the Court's directive with a filing (Doc # 292) stating the following:

> Defense counsel contacted Greg Hale, the superintendent for the Northwest State Correctional Facility in St. Albans. . . .  Superintendent Hale explained that the facility

7

has very little space where discovery materials can be stored, particularly if these materials are voluminous; he also explained that there is no ability for staff at the facility to monitor Mr. Folks all day while he reviews the material.  Superintendent Hale agreed that it would be easier if Mr. Folks could review the discovery on a laptop computer, which would not take up as much space for storage.  For example, Mr. Folks could be given the computer to review the discovery in a private location within the facility, and then Mr. Folks can return the computer for safekeeping.

*Id*.

On November 26, 2018, the Court entered an "Order" (Doc # 294) granting the relief proposed by defense counsel.  The Order allowed counsel to load discovery materials on a laptop computer, which laptop the NWSCF would provide to Folks for his review.  The Court directed that discovery materials loaded on the laptop would exclude grand jury testimony and sexually explicit images, and that Folks' review was to take place in a private location.  The Court also ordered that the laptop "may not be attached or connected to any external devices," including "electronic storage facilities."

Specifically, the Court directed as follows:

After learning that the Northwest Regional Correctional Facility can establish a system to allow Mr. Folks to privately access and review the discovery materials, the Court orders that Mr. Folks be permitted to access and review the discovery materials in this case using a laptop computer that is stored securely at the facility.  Mr. Folks may use a laptop computer, provided to him by his counsel, in a private location within the facility to access and review discovery materials related to his defense in this case, except for grand jury testimony and any media containing sexually explicit material (audio, video, or still images) . . .

*The laptop computer may not be attached or connected to any other external devices, including but not limited to printers, scanners, or electronic storage facilities*.  The laptop computer may not access the Internet via cable, Wi-Fi, or otherwise.  The laptop computer will be loaded with discovery materials by counsel for Mr. Folks according to the following parameters, to which both parties have agreed . . .

*Id*. (Emphasis added.)

The November 26 Order added that:

Mr. Folks will be able to review documents and audio or video material on the laptop

computer only while alone in a private location within the facility. Mr. Folks may not show any other person any of the discovery materials related to this case. At the conclusion of each review session, Mr. Folks must return the laptop computer to an appropriate member of the prison staff.

*Id.*

> (5) *Late 2018-2019: Counsel Violates the Court's Order by Loading Discovery Materials Not on a Laptop but on a Hard Drive, then Providing the Separate Hard Drive along with a Laptop to NWSCF for Folks.  Shortly After Trial the Hard Drive Disappears*

Despite the Court's explicit directive requiring counsel to load the discovery materials *on a laptop*, and barring the laptop's connection with *any external devices, including any electronic storage facilities*, counsel proceeded to load the discovery not on a laptop, but on a separate hard drive.  Counsel then provided a laptop, along with the external hard drive, to NWSCF for Folks' review.[1]

The NWSCF reports that counsel provided it a black computer bag, which bag correctional officers regularly made available to Folks to access in his cell during the months preceding and during trial.  The NWSCF had a copy of the Court's Order, but was unaware that there was a separate hard drive in the computer bag.  After trial the hard drive went missing; the computer bag contained only the laptop.

Officials at NWSCF and the USMS searched for the hard drive but could not find it.  The NWSCF reports that on May 10, 2019 – the day after the jury's verdict – Folks prepared a bag of materials for pick-up by Cassandra Folks.  He filled-out a "Property Disposal Form" listing "legal materials, legal book, pictures, Jay Day Tablet" accompanying the opaque bag of items.  Cassandra Folks picked-up the bag on May 11, 2019.  In a recorded call with Cassandra later that day, she asks "what is this blue thing?"  Folks directs her to put it in the safe.  The next day Folks

---

[1]  The violation is described as an "inadvertent error" in the instant motion.  Motion, p. 3.

called another female associate and directed her to retrieve the little blue box from Cassandra's safe.  He stated that his counsel had been ineffective and he had evidence to prove it.  The USMS interviewed the second woman, who was belligerent and denied any knowledge of a little blue box.  *See* USMS Report, attached as Exhibit B.

It is the government's view that (1) after asking the Court to allow Folks to review discovery on a laptop (which would be hard to lose), and obtaining the Court's careful agreement, counsel loaded discovery on a (much smaller and easier to transfer) hard drive which was provided to Folks, and (2) Folks arranged for the hard drive to be transferred out of NWSCF to an associate.

In sum, twice counsel have violated explicit provisions to protect discovery in this case from Folks, and twice Folks responded by transferring the protected discovery to associates.

B.    LEGAL STANDARD

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." In deciding whether "good cause" exists to implement or continue a protective order, this Court should look to whether "disclosure will result in a clearly defined, specific and serious injury." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013).  While the Second Circuit has not interpreted the meaning of "good cause" in the context of modifying a protective order entered in a criminal case, requests to modify protective orders entered in civil cases happen more frequently.  *See United States v. Calderon*, 2017 WL 6453344, at * 2 (D. Conn. 2017) (citation omitted).  Thus, this Court could look to the "standards developed in the context of civil protective orders for guidance on what constitutes 'good cause' to modify a protective order entered in a criminal case." *Id*. (citations omitted).

"Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order under [Federal] Rule [of Civil Procedure] 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'" *S.E.C. v. TheStreet.com*, 273 F. 3d 222, 229 (2d Cir. 2001) (citation omitted). In assessing whether a party has reasonably relied on a protective order, courts examine: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Calderon*, 2017 WL 6453344, at * 2 (citation omitted). In addition, the Court can consider the "type of discovery materials the party seeks and the party's purpose in seeking a modification." *Id*. Finally, "[t]here is a strong presumption against the modification of protective orders in the Second Circuit." *Id*. at * 3.

### C.   FOLKS HAS NOT MET THE STRONG PRESUMPTION AGAINST MODIFYING PROTECTIVE ORDERS

After weighing and balancing the relevant factors, this Court can be confident that Folks has not overcome the strong presumption against modifying the carefully thought out protective order entered in this case. Application of the relevant considerations demonstrate that the government, and by extension the cooperating witnesses and victims in this case, have reasonably relied upon the Court's protective order. First, Folks' claim that the protective order is "blanket" is incorrect; instead, the protective order carefully delineated between "sensitive" and "non-sensitive" matters.

The second factor also favors the government, as the Court should look at whether the current protective order "limits its application to a stage of a proceeding or contemplates a revision in the future." *Calderon*, 2017 WL 6453344, at *4. Here, the Amended Protective order does not include any language to suggest that its duration would be limited, nor does it

11

contemplate future revision. Thus, the language of the order weighs in favor of not rescinding. *Id.*

The third factor looks to the level of inquiry the court undertook before granting the order, and again favors the government. Typically, "[a] protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause." *In Re Ethylen Propylene Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 321 (D. Conn. 2009). Here, Folks moved to modify the original "blanket" protective order, which the court ultimately granted. There have been numerous hearings and accommodations made since, all weighing in favor of continued reliance. *See Calderon*, 2017 WL 6453344 at * 4 (observing that "[a] protective order that specifies the kind of documents it is intended to protect, or was granted after a hearing to show good cause, is entitled to more weight than one that does not evidence meaningful court review").

The fourth factor—the nature of reliance on the protective order—also tilts in the government's favor. Evidence at trial established that Folks was vindictive, and retaliated against subordinates who crossed him. As he put it, "if you violate me, I will violate you." Evidence also established that he used compromising information about his human trafficking victims to intimidate them and retaliate against them. This reinforces that Folks should not be permitted unrestricted access to sensitive discovery materials, as his victims and those who testified against him have well-grounded fears as to their safety and well-being. Moreover, they also have a privacy interest in not having sensitive discovery material posted on Facebook, as has already happened in this case. *See, e.g., United States v. Mitchell*, 2016 WL 7076991, at *3 (D. Me. 2016) (stating that when statements are handed over to an inmate, there is "no telling where they will end up or what use (or misuse) might be made of them").

12

Lastly, the final factor—Folks' purpose in seeking modification of the protective order—again cuts in the government's favor.  Folks asserts that he needs unfettered access and retention of his discovery materials "so that he can adequately assist in preparing his sentencing and later, post-sentencing challenges to his conviction and sentence."  It is unclear how access to sensitive discovery materials will assist Folks in preparing for his sentencing proceeding, let alone post-sentencing challenges to his conviction and sentence.  Presumably, Folks will have access to the trial transcript, which reflects what occurred in open court.  Having access to the trial transcript will assist Folks in challenging his conviction while access to sensitive discovery materials will not.

In this regard, *United States v. Corley*, 2016 WL 9022508 (S.D.N.Y. 2016), is instructive. In *Corley*, the court modified a protective order post-trial to prohibit the defendant from learning the names of his minor sex trafficking victims given their significant privacy and safety interests at stake.  *Id*. at * 4.   The defendant asserted that he needed to know the names and identities of the sex trafficking victims who testified against him at trial in order to conduct his own "out-of-court investigation" to verify their ages and the authenticity of the birth certifications presented at trial.  *Id*.  The court refused the defendant's request, and noted he would "not be prejudiced by any inability to perform further investigations, because he will not be permitted to supplement the record with what he finds."  *Id*.  Thus, *Corley* is more useful to this Court than the cases Folks relies upon, which all involved pre-trial disputes over discovery and occurred in districts outside the Second Circuit.  None of the cases Folks cited also involved defendants who violated previous protective orders by mailing discovery material to others or communicating its contents to others outside his detention facility.

In sum, Folks has not shown that the protective order was improvidently granted or that

compelling reasons necessitate change at this stage.  *See United States v. Morales*, 807 F.3d 717,

723-24 (5th Cir. 2015) (identifying "changed circumstances or new situations" and "the need to

make information available for use in subsequent proceedings" as reasons to modify existing

protective orders).  The Court carefully drafted it after a contested hearing and specified sensitive

from non-sensitive material, and the rationale for the protective order remains as relevant today

as it did the day it was ordered.  The victims and witnesses who testified against Folks still

deserve privacy and protection, especially since he has violated the Court's clear orders in the

past.  There is no compelling reason to trust Folks with sensitive material at this stage given his

vindictive nature, as he could use the sensitive material to cause the victims and witnesses who

testified against him embarrassment for untold years in the future.  *See United States v.*

*Thompson*, 2016 WL 1584382, at *7 (W.D.N.Y. 2016) (unpub.) (finding that the government

had a compelling interest in limiting identification of sex trafficking victims given the explicit

and sensitive nature of the evidence in the case); *United States v. Paris*, 2007 WL 1484974, at *2

(D. Conn. 2007) (finding that the government interest in protecting witnesses "from the likely

adverse personal, professional and psychological consequences of publicly linking their

identities to their past lives as sex workers is legitimate and substantial").  The significant

privacy rights of the victims and witnesses in this case outweigh any need Folks may have to

possess this sensitive material, especially since the vast bulk of sensitive material was not even

mentioned or admitted into evidence at his trial (i.e., sexually explicit photographs and videos of

hundreds of women).  Thus, the relevant considerations demonstrate that Folks has not shown

"good cause" to overcome the strong presumption against modifying carefully thought out and

construed protective orders.

D.      CONCLUSION

For the reasons set forth above, Folks' motion should be denied.


Dated at Burlington, in the District of Vermont, March 23, 2020.


| | |
|---|---|
| CHRISTINA E. NOLAN | ERIC DREIBAND |
| United States Attorney | Assistant Attorney General |
| | Civil Rights Division |

By: */s/ William B. Darrow*          By: /s/ *Matthew T. Grady*

| | |
|---|---|
| WILLIAM B. DARROW | MATTHEW T. GRADY |
| Assistant U.S. Attorney | Special Litigation Counsel |
| P.O. Box 570 | Civil Rights Division, |
| Burlington, VT 05402-0570 | Criminal Section |
| | U.S. Department of Justice |
| | 150 M Street NE, Room 7.1132 |
| | Washington, DC 20530 |
| | (202) 514-3204 |
| | Matthew.Grady@usdoj.gov |