UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 2:16-CR-94 |
| | : | |
| BRIAN FOLKS | : | |

**DEFENDANT'S SUPPLEMENTAL SUBMISSION REGARDING RESTITUTION**
**FOLLOWING THE HEARING ON OBJECTIONS TO THE PSR**

Defendant Brian Folks, through counsel, submits this supplemental memorandum on the issue of restitution. At issue is the proper amount of restitution to be paid by Mr. Folks to his four alleged victims of sex trafficking. The government has asked for restitution against Mr. Folks in the amount of $142,700 under an ill-gotten gains theory. DR 550, at p. 22-26.[1] The government arrives at this total using the same mathematical formula for each named woman. The government, however, uses a methodology that is unreliable and results in an unreasonable estimate.

**I.      The intent of the TVPA is to recoup the victim's losses.**

Title 18 U.S.C. §1593 provides the following:

(a) Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any offense under this chapter.

(b)(1) The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court under paragraph (3) of this subsection.

(2) An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.

---

[1] "DR" refers to the docket report in this case.

>   (3)   As used in this subsection, the term "full amount of the victim's losses" has the same meaning as provided in section 2259(c)(2) and shall in addition include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.).[2]

18 U.S.C. § 1593. The statute further defines losses to include those provided in § 2259(c)(2) (which are not at issue here) and "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et. seq.)—" sometimes referred to as the "ill-gotten gains clause." 18 U.S.C. § 1593(b)(3). Under the ill-gotten gains clause, a victim is made whole by valuing the victim's service or income provided to a defendant.[3]

Any order of restitution under this provision is to be enforced in accordance with procedures set out in 18 U.S.C. § 3664, in the same manner as an order under 18 U.S.C. § 3663A—the Mandatory Victims Restitution Act (the "MVRA"). As such, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government." *Id.* § 3664(e).

---

[2] The undersigned quotes the current version of the statute enacted on December 7, 2018.
[3] "[T]he express terms of 18 U.S.C. § 1593 require that the victims in this case, *i.e.*, persons who engaged in commercial sex acts within the meaning of 18 U.S.C. §1591, receive restitution, notwithstanding that their earnings came from illegal conduct." *United States v. Mammedov*, 304 Fed. App'x 922, 927 (2d Cir. 2008).

Finally, 18 U.S.C. § 3664(f)(3)(B) provides that a restitution order "may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."

## II.     The government's method of determining loss violates the TVPA by giving the victims a windfall.

Under the ill-gotten gains clause, a victim is made whole by valuing the service or income provided to a defendant. 18 U.S.C. § 1593(b)(3). In arriving at its restitution amount based on ill-gotten gains, the government uses the same mathematical formula for each woman. The government first determined what it considered to be the number of days each woman worked with Mr. Folks. It then multiplied that number by an average number of clients it believes the women saw in a day. Then it multiplied that number by an hourly rate it picked from a range of rates charged by some of the women to reach its restitution amount (*i.e.* (number of days) X (average number of clients) X (average hourly rate) = government's restitution amount)).

What the government ignores, however, is that restitution is designed to make victims whole again by reimbursing them for losses related to the crime of conviction—it is not intended to give the victims a windfall. *See* 18 U.S.C. §1593(b)(1); *see also United States v. Maynard*, 743 F.3d 374 (2d Cir. 2014)  (in a bank robbery case, vacating a restitution order under the MVRA because the district court awarded the victim bank the salaries of both the employees that took leave in the wake of the robbery and those that replaced them because "the bank would have paid the regular staff in any event [ ] [t]hus, the bank would enjoy a windfall if it recovered compensation for the full amount of the regular staff and replacement staff wages."). The

3

government's formula does not account for value returned to the women in the form of controlled substances, food, lodging, and other basic living expenses.

According to the government's evidence, each woman entered into a 50/50 relationship with Mr. Folks for their prostitution revenue; *i.e.*, they split the revenue evenly with Mr. Folks. Having earned their 50% take, the women often would spend their money on controlled substances sold by Mr. Folks. Thus, if a woman earned $100 while prostituting, she would pay $50 to Mr. Folks and she would keep $50. She might have then spent that $50 on drugs, but that does not change the fact that she earned the money, had ownership over it, and chose to spend it in a way she personally saw fit. The drugs unquestionably had value to the victims equal to at least the money they spent on them—and probably more. As such, the government's formula for restitution results in a windfall rather than simply making the victim whole. For $100 worth of work, the government proposes that the Court reimburse the women for $100 despite the fact they already were paid $50 for that same work. As such, the restitution amount creates a windfall rather than simply compensating for a loss. In addition, the government does not account for the food and living expenses that Mr. Folks covered. Finally, as set forth below, the government's base numbers are unreliable.

    **III.    The factual assumptions used by the government in arriving at loss amounts for certain victims are not supported by the record.**

**A. Katelynn C.**

The government offers that Katelynn C. worked with Mr. Folks for 60 days and charged $100, $150, or $250 depending on the duration of the work. The government points to no evidence at trial or undisputed statements in the Presentence Report to support its claim that $200 represents an average rate per client. Indeed, the mid-point between $100 and $250 is $175 and if one assumes that the three rates were employed equally, the average rate would be $166.66. Thus, the

4

government's conservative "average" exceeds the actual average earned by Katelynn C. according to her own testimony. As the government notes, "[t]he amount of restitution can be determined on the basis of evidence heard during trial, undisputed statements in the Presentence Investigation Report, or evidence presented at the sentencing hearing." DR 550 at p. 21 (quoting *United States v. Robert*, 464 Fed. App'x 796, 8802 (11th Cir. 2012)). Absent evidence, the government has not met its burden in providing an accurate framework upon which the court can estimate her actual losses.

### B. Ayla L.

The government estimates Ayla L. worked 130 days. But it does not explain how it arrives at its 130 number. Nor does it point to any evidence in the record or statements in the Presentence Report, ("PSR") to support the rate Ayla charged per client. Instead, it appears to rely on Ayla L's grand jury testimony in which she was not subject to cross-examination to fill its evidentiary gap. DR 550 at p. 23. Absent evidence in the record that was subject to adversarial testing, the government has not met its burden.

### C. Danielle M.

The government begins its analysis by presuming that Danielle charged $200 per client and worked a seven day week. Like Ayla L, however, it points to no evidence from Danielle's testimony at trial or in the PSR about either her rates or the actual number of days she worked. At most, Danielle was present for one week in June 2015 and she left Mr. Folks within that same week. Tr., Trial Day 6, Vol. II at 135-36. Because the government's numbers are based on

supposition, rather than on evidence received at trial or undisputed statements in the PSR, the government has not met its burden.[4]

**D. Keisha W.**

As noted in the defense objections, Keisha testified that in 2015, she was using heroin and prostituting on her own. Tr., Trial Day 5, at 197-98. Notably, Keisha testified that although they had agreed to split the revenue 50-50, she could not remember whether she ever gave Mr. Folks any money. *Id*. at 207. Her recollection was that she prostituted for a couple of weeks and then left. *Id*. at 142-44, 206-07. She also clarified that she never really worked as a prostitute after her move to Lori C.'s house and she would post her own Backpage ads. *Id*. at 144-46, 207, 211-12, 184-88.

In its pleading, the government does not point to any testimony from Keisha (or anyone else) about what Keisha's rates were, how many clients she saw, or how many days she worked with Mr. Folks. This uncertainty coupled with her statement that she could not remember whether she ever gave Mr. Folks any money and never really worked as a prostitute after her move to Lori C's house, demonstrate that the government has not met its burden in providing reliable estimates to the Court.

**IV. Mr. Folks is indigent, faces a long period of incarceration, and should only be ordered to make nominal periodic payments if this Court orders restitution.**

As noted above, 18 U.S.C. § 3664(f)(3)(B) provides that a restitution order "may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution

---

[4] The government also submits that Danielle is entitled to $300 spent on gasoline per section 2259(c)(2). Again, however, it does not cite to the PSR or any record evidence to support the claimed amount and, thus, fails to meet its burden.

6

order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C. § 3664(f)(3)(B). In *Mammedov*, the Second Circuit found that the district court abused its discretion and committed plain error in ordering a defendant, who was convicted of sex trafficking, to pay $325,000 in restitution to three victims by requiring immediate payment despite the court's related finding that the defendant lacked the ability to pay. *Mammedov*, 304 Fed. App'x at 927-28.

As part of the presentence investigation, Mr. Folks submitted a financial affidavit outlining his assets, liabilities, monthly income, and monthly expenditures. PSR at ¶¶ 196-97. Based on its review of his financials, and noting that Mr. Folks has appointed counsel, the PSR recommended that no fine be imposed because Mr. Folks lacked the present or future ability to pay one. *Id*. at ¶ 198. The PSR's conclusion that Mr. Folks is indigent is not disputed by the government. Although restitution may be imposed without regard to the defendant's ability to pay, the Court must take into account Mr. Folks' indigence when it establishes a payment schedule. His economic circumstances suggest that he should only be directed to make nominal periodic payments toward any restitution ordered by the Court.

V.     **Conclusion.**

For all of the foregoing reasons, the government has not met its burden in establishing a reasonably accurate restitution amount.

Dated at Burlington and Brandon, Vermont this 26th day of June, 2020.

By:   /s/ *Mark Kaplan*  
     Mark A. Kaplan, Esq.  
     KAPLAN & KAPLAN  
     95 St. Paul Street, Suite 405  
     Burlington, Vermont 05402  
     (802) 651-0013  
     Counsel for Brian Folks

By:   /s/ *Natasha Sen*  
     Natasha Sen  
     Attorney  
     P.O. Box 193  
     Brandon, Vermont 05733  
     (802) 825-6385  
     Counsel for Brian Folks

By:   /s/ *Michelle Anderson Barth*  
     Law Office of Michelle Anderson Barth  
     P.O. Box 4240  
     Burlington, Vermont  05406  
     Supplemental Counsel for Brian Folks