UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 FEB 25  PM 12: 37

CLERK

BY ⎯⎯⎯⎯⎯⎯
DEPUTY CLERK

| | | |
|---|---|---|
| United States of America,<br>                    Plaintiff, | : | |
| | : | |
| V. | : | Case No. 0210   2:16CR00094-1 |
| | : | |
| Brian Folks,<br>          Defendant. | : | |

---

## EMERGENCY MOTION FOR COMPASSIONATE RELEASE IN LIGHT OF THE 2018 FIRST STEP ACT PURSUANT TO 18 U,S,C, §3582 (c)(1)(A) AND COVID-19 PANDEMIC

---

### INTRODUCTION

**NOW COMES**, Brian Folks, Pro-Se, Defendant, moving this Honorable Court, in light of the First Step Act's amendment to 18 U.S.C. § 3582 (c)(1)(A) under an "Emergency" requesting a reduction in his sentence to "time served" based on extraordinary and compelling reasons set forth in this petition. Specifically, Petitioner's deteriorating serious medical and mental health conditions, and the COVID-19 Beta Virus.

### COMPASSIONATE RELEASE

The Pro-Se Defendant is a 47 year old inmate who, as this court is aware of, has very serious mental health/medical conditions; including (amongst others) Obesity, Hypertension, pre-Diabetes, a sleep disorder, Depression, An Adjustment Disorder, a Heart Murmur, bad Tremors, And he is also partially paralyzed and in his bed or wheelchair bound 100% of the waking day. Defendant is now being evaluated for the need of an inmate companion/pusher.

Defendant should be a strong candidate for Compassionate release due to the above mentioned mental health and medical conditions, that has been deteriorating on a daily basis, along with the BOP's inability and unwillingness to provide Defendant with the necessary mental health/ medical care and treatment, as well as equipment needed for his conditions to improve. Therefore, he suffers on a daily basis. Defendant knows

(1)

that this Honorable Court has already taken his medical conditions into account, but things have changed for the defendant, amongst others, like his need for the assistance of an inmate companion.

I know these are extraordinary times, we are in the midst of an incredibly infectious pandemic, that has a high fatality rate for people with any one of the defendant's serious medical conditions. These conditions would make "COVID-19 DELTA", a death sentence if petitioner were to contract the virus. At this point, "COVID-19 DELTA" has already killed many BOP inmates around the country, and infected many others. When Butner complex was hit with the COVID-19 virus, over 90% of the inmates at FCI Butner Med 2, contracted the virus. Butner's complex had the deadliest fatality rate in all the Federal Bureau of Prisons (which is where the petitioner is housed). The Court could not have anticipated the current situation, and did not mean to impose a death sentence on the petitioner. Hopefully, the Court will take this matter upon itself and remove defendant from the BOP population, by granting his motion for Compassionate Release, before the COVID-19 DELTA pandemic peaks for the second time here in the BOP.

FIRST STEP ACT

Section 3582 (c)(1)(A) allows a court to reduce a person's sentence if "Extraordinary and Compelling Reasons warrant such a reduction." 18 U.S.C. §3582 (c)(1)(A)(i). As part of the reforms passed in the First Step Act of 2018, congress amended §3582 (c)(1)(A) to also allow a defendant to seek a reduction directly from the court. This change came after years of BOP under utilizing compassionate release, which was previously in it's sole discretion to seek. The office of the Inspector General found that the BOP did not properly manage the compassionate release program; And it's lackluster implementation meant that many incarcerated persons died awaiting a final decision by the BOP Director. United States V. Brooker, 976 F3d 228, 231-32 (2d Cir. 2020), Under the revamped §3582 (c)(1), a defendant may submit a motion for reduction in sentence after either exhausting their administrative rights to appeal or "waiting 30 days after [their] first request to the prison." United States V. Alam, 960 F.3d 831, 834 (6th Cir. 2020).

Congress' goal in revamping §3582 (c)(1)(A) was to "create an avenue for defendant's to seek relief directly from the courts," Thereby, keeping the sentencing power in the judiciary where it belongs. United States V. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The sentencing commission has not issued any applicable policy statements since the enactment of the First Step Act. The only policy statement relating to compassionate release, §1B1.13, was adopted prior to the Act's amendments. The ninth circuit has held that "the current version of V.S.S.G. §1B1.13 is not an applicable policy statement for 18 U.S.C. §3582 (c)(1)(A) motions filed by a defendant." United States V. Aruda, No. 20-1-245, 2021 WL 1307884, at *4 (9th cir. Apr.8, 2021), The ninth circuit explained "the sentencing commission's statements in U.S.S.G. §1B1.13 may inform a district court's discretion for §3582 (c)(1)(A) motions filed by a defendant, but they are not binding." Id. Under the statue, the district court must also consider "the factors set forth in section 3553 (a) to the extent that they are applicable." §3582 (c)(1)(A).

Threshold eligibility for relief under §3582 (c)(1)(A) has two requirements: Did the defendant exhaust his administrative remedies and are there "extraordinary and Compelling reasons" justifying relief. In this case, Defendant has exhausted his administrative remedies through a request to the Warden, and the 30 days lapsed without any response.

Thus, the question for this court is whether his unique circumstances provide an "extraordinary and compelling" basis for relief, and whether a reduction is in line with the § 3553 (a) factors.

The fourth circuit has recently held no applicable policy statement that restricts the authority of district courts to make their own independent assessments of extraordinary and compelling reasons to grant relief pursuant to the First Step Act. United States V. McCoy, 981 F.3d 271 (4th cir. 2020). "District courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 27 (internal citations omitted). Courts do not have to rely on specific statues— "Indeed, the very purpose of §3582 (c)(1)(A) is to provide a safety valve that allows for sentence reductions when there is not a specific— statue that already affords relief, but extraordinary and compelling reasons nevertheless justify a reduction." Id. at 32 (internal citations omitted). Furthermore, §3582 (c)(1)(A)(i) "uses the more open-ended extraordinary and compelling reasons standard to capture the truly exceptional cases that fall within no other statutory category." McCoy 30 (internal citations omitted).

In McCoy, the district courts granted the defendant's motion for compassionate release and reduced the defendant's 35-53 year sentence for robberies and guns to time served. McCoy, 981 F.3d at 2. In addition to the approving of the district court's use of the defendant's disproportionately long staked 924(c) sentences as an extraordinary and compelling reason, the court also looked approvingly upon the court's individualized determinations of each defendant's circumstances— "The court's took seriously the requirement that they conduct individual: inquiries, basing relief not only on the First step Act's change to sentencing law under §924(c), but also on such factors as the defendant's relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served." The court did not require or rely uopn physical infirmities or medical diagnoses to find extraordinary and compelling reasons existed. Defendant asks this court to conduct a similarly individualized determination of his circumstances.

Extraordinary and Compelling Reasons Warranting Relief

Defendant's obesity, hypertension, pre-diabetes, depression, advancing age, heart murmur, and sleep disorder, increases his high

(4)

risk of severe illness from COVID-19 Delta.

Unlike the defendant in McCoy, who had no compelling health reasons, defendant is obese, has hypertension, a heart murmur, and is pre-diabetic. Defendant's obesity increase his risk of severe illness from COVID-19.[14] "severe illness means that a person with COVID-19 may need: hospitalization, intensive care, a ventilator to help them breath, or they may even die." Id. "People of any age with the following conditions are at increased risk of severe illness from COVID-19... obesity (body mass index [BMI] of 30 or higher." Defendant's BMI is 37.1. In this context, the center for disease control (CDC) groups obesity with diseases such as cancer, chronic kidney disease, COPD, immunocompromised state from organ transplants, serious heart conditions, sickle cell disease, and type 2 diabetes.

Obesity alone has been recognized by many district courts as an extraordinary and compelling reason. United States V. Gonzalez, No. 17-cr-2054-GPC, 2021 WL 37728, at *5 (S.D.cal.Jan. 5, 2021)(granting motion for reduction in sentence because "Gonzalez's obesity puts him at increased risk of severe illness should he contract COVID-19"); United States V. miles, No. 2:17cr127, 2020 WL 7646415, at *2 (E.D. cal. Dec. 23, 2020) (holding that "obesity alone can support a motion for compassionate release"); United States V. Tomlinson, No. cr.1701075003, 2020 WL 7404639 at *2 (D.Ariz. Dec. 17,2020)("Given the increase of COVID-19 infections at FCI-Sheridan and the CDC's warning that obesity is one of the most serious risk factors for severe illness from the virus, the court finds, and the Government now concedes (Doc. 219 at 1), that defendant has shown extraordinary and compelling reasons for compassionate release."); United States V. Gonzales, No. 3:19-cr-90, 2020 WL 7024905, at *5 (D. Conn. Nov. 30, 2020)("Because Mr. Gonzalez has established that his obesity alone may constitute an extraordinary and compelling reason for release, and thet his obesity increases the risk that he will experience severe illness should he contract COVID-19, Mr. Gonzalez has established an extraordinary and compelling reason for release..."); United States V. Pelichet, No. 19-cr-40033, 2020 WL 7053309, at *8 (D.S.D. Nov. 24,2020)

---

[14]   https//www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/
       people-with-medical-conditions.html#obesity (visited June 21,2021)

(granting release after finding that "Pelichet's obesity alone elevates his risk of severe illness from COVID-19"); <u>United States V. Tamasoa,</u> No. 2;15-cr-124, 2020 WL 6700416, at *3 (E.D. cal. Nov. 13,2020)(Granting release: "District courts within the ninth circuit have recognized obesity greatly increase the risk of serious COVID-19 symptoms and cmplications and have granted motions for compassionate release to inmates with a body mass index within the 'obese' range".); <u>United States V. Campanella,</u> No. 18-cr-328-12, 2020 WL 4754041, at *3 (D. Colo. Aug. 17, 2020)(granting reduction in sentence after finding that "the medical evidence is relatively clear that morbid obesity is one of the strongest risk factors for more severe illness from COVID-19"); <u>United States V. Hayes,</u> No. 17-cr-20292, 2020 WL 4001903, at *3 (E.D. Mich. July 15, 2020) (Granting compassionate release motion after finding that "the defendant's obesity alone qualifies as a recognized risk factor"); <u>United States V. Mishler;</u> No. 19-cr-105-2, 2020 WL 3791590, at *2 (N.D.Cal. July 7, 2020)(granting reduction in sentence when only COVID-19 risk factor was severe obesity); <u>United States V. Richardson,</u> No. 2:17-cr-48, 2020 WL 3402410, at *3 (E.D.Cal. June 19, 2020)("This court finds that hypertension or obesity alone- regardless of age- place a defendant at higher risk of COVID-19 complications.")

The CDC states that individuals with obesity are at a greater risk- not only individuals with uncontrolled conditions. It is not the management of the condition but the condition itself that creates the compelling and extraordinary circumstance. Other courts have agreed that it is the condition itself that puts an individual at risk, and that the momentary treatment or control over the condition does not change that fact. See <u>United States V. Hernandez,</u> No. 13-cr-00511 (1) JMS, 2020 WL 3453839, at *6 (D. Haw. June 24, 2020)(Finding that even though an inmate's asthma and hypertension were "well- controlled by medication and treatment, he is amongst those identified by the CDC to have an elevated risk for complications from COVID-19"); <u>United States V. Pompey,</u> No. 2;97-cr-638-RB at *4(Dist. New Mex. July 14, 2020)("The CDC states that individuals with these conditions are at a greater risk; not only individuals with uncontrolled conditions."); <u>United States V. Salvagno,</u> No. 5:02-cr-51 (LEK), 2020 WL 3410601, at *16 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020)(noting one scientific study showed that "hypertensive individuals, medicated or not, face at least a two fold risk of death from COVID-19 compared to non-hypertensive individuals

(although, according to this study, the risk is higher for those who are not taking some form of medication")(siting Gao, et al. Association of hypertension and antihypertensive treatment with COVID-19 morality: a retrospective observational study, European Heart Journal, June 5, 2020).

The CDC also recognizes heart conditions, such as heart failure and hypertension, as conditions that could make someone more likely to get severely ill from COVID-19. [15] Courts agree these are risks associated with hypertension generally. See United States V. Pinkerton, No. 12-cr-30045-3, 2020 WL 2083968, at *5 (C.D.Ill. Apr. 30, 2020); united States V. Pabon, No. 17-161-1, 2020 WL 2112265, at *8-9 (E.D.Pa. May 4, 2020)(citing a study of 5,700 patients with COVID-19, with 56.6% of those patients also suffering from hypertention). Many courts have found that a defendant's prediabetes and high blood pressure can create extraordinary and compelling circumstances. [16]

## COVID-19 and the BOP

Butner med 2 FCI, where defendant is imprisoned, is currently operating at an operational "Level 3". [17] This is the worst level in a level scheme- it means that the medical isolation rate is more than 7%, the facility vaccination rate is less than 50%, or the community transmission rate is greater than 100 per 100,000 over the last 7 days. [18] Butner 2 admits 355 inmates and 33 staff have been infected with COVID-19. [19] FCI Butner medium 2 only has a population of 1,135 total inmates. [20] This means about 31% of inmates have been infected. Three inmates have died from COVID-19. [21] Nationwide, COVID-19 has infected over 51,000 inmates and staff within the BOP as of November 15, 2021. [22] the BOP reports 273 deaths. [23] Id. one study of state and federal correctional facilities across the country found inmates are 3 times more likely to die and 5.5 times more likely to get coronavirus in general population. [24]

---

[15]    https;//www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/
        people-with-medical-conditions.html

[16]    see order, United States of America V. Alonzo Neil Brown, 2:09-
        cv-295, ECF No. 337 at 4-5 (O.S.C. Oct. 29, 2020)(collecting cases).

[17]    https://www.bop.gov/coronavirus/covid19modifiedoperationsguide.jsp
        (accessed November 18, 2021)

Id. Conditions of imprisonment create the ideal environment for the transmission of contagious diseases. [25] "Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced." [26] The center for disease control (CDC) recognizes the difficulty of preventing the introduction of COVID-19 into prison facilities;

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; Transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; And visit's from family, legal representives, and other community members. Particularly jails and detention centers have high turn over rates, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.

---

[18]    Id.

[19]    https://www.bop.gov/coronavirus/(accessedNovember18,2021)

[20]    htpps://www.bop.gov/locations/institutions/btf/(accessedNovember18, 2021)

[21]    Id.

[22]    Id.

[23]    Id.

[24]    Brendan Saloner, PHD, Kalind Parish, MA, Julie A. Ward, MN, RN; et al, COVID-19 cases and deaths in Federal & state prisons, Journal of the american medical association (July 8, 2020) https://jamanetwo rk.com/journals/jama/article-abstract/2768249
        Justin Carissimo, Inmates are 5 times more likely to get coronavirus than the general population, study says, CBS News (July 11, 2020) https://www.cbsnews.com/news/coronavirus-prison-inmates-more-likely-to-get-infected-study-says/

[25]    Joseph A. Bick, Infection control in jails & prisons, 45 clinical Infectious Diseases 1047 (2007), https://doi.org/10.1086/521910.

[26]    Centers for disease control & prevention (CDC), Interim guidance on management of coronavirus disease 2019 (COVID-19) in correctional & detention facilities (Mar.23, 2020). https://www.cdc.gov/corona virus/2019-ncov/community/correction-detention/guidance-correctional -detention.html

crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease in jail and prisons. [27] Medical care of prisoners is limited at the best of times. [28]

---

[27]   Martin Kaste, prisons and jails worry about becoming corona virus 'Incubators', NPR (Mar. 13, 2020), https://www.Apr.org/2020/03/13/81 5002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.

[28]   see U.S. Dep't of Justice office of the Inspector General, review of the Federal Bureau of Prisons' medical staffing challenges (Mar. 2016), https://oig.justice.gov/reports/2016/e1602.pdf(finding that the BOP experienced chronic medical staff shortages and fails to take adequate measures to address them, leading to problems meeting the medical needs of prisoners, requiring the use of outside hospitals, and endangering the safety and security of the institutions); U.S. Dep't of Justice office of the Inspector General, The impact of an aging inmate population on the Federal Bureau of Prisons (REv. Feb. 20160, https://oig.justice.gov/reports/2015/e1505.pdf(findingthatbop fcailities and services, including medical services, were inadequate to meet the needs of an aging prison population, leading to delays in medical treatment for prisoners with acute and chronic heart and neurological conditions, who wait an average of 114 days to see medical specialists); David Patton, statement from Federal Defenders of New York, Federal Defenders of New York (Mar. 8, 2020), https://fe deraldefendersny.org/about-us/news/statement-from-federal-defenders-of-new-york.html.

VACCINATION

Defendant's Vaccination doesn't mean the danger COVID-19 poses to him is gone. Data suggests the Pfizer vaccine specifically may be less eeffective in people with obesity. **[29]** Another study states the Pfizer vaccine protects less against the Delta variant of COVID-19, known as B.1. 617.2, discovered in India. **[30]**

Many courts, including this one, have granted Compassionate Release to vaccinated prisoners. See United States V. Gadsden, No. 2:02-846, ECF No.___ (D.S.C. June 8, 2021); United States V. Darby, No. 1:10-cr-00432, 2021 WL 2463841, at *2 (N.D. Ohio June 17, 2021)("The court acknowledges that Mr. Darby is vaccinated so he is at a reduced risk of contracting a serious form of COVID-19 but being vaccinated does not automatically preclude a defendant from demonstrating "extraordinary and compelling reasons' justifying a sentence modification."); United States V. Reyes, 2021 U.S. Dist. LEXIS 99864, *6(D. Conn. May 26, 2021)(granting compassionate release of defendant who received both doses of the vaccine; "newly available data describe breakthrough in infections caused by COVID variants in vaccinated populations"); United States V. Spriggs, 1:10-cr-00364-WDQ, ECF No. 48 (D.Md.May 10, 2021)(granting CR to individual who received one dose of COVID-19 vaccine because his "vaccination status does not greatly decrease the court's concern that his medical conditions increase his risk of severe illness due to COVID-19"); United States V. Sweet, No. 07-20369, 2021 WL 1339574, at *3 (E.D. Mich. Apr. 9, 2021), order amended and superseded, No. 07-20369, 2021 WL 1430836 (E.D.Mich.Apr. 15, 2021)(granting CR despite Mr. Sweet receiving vaccine and recovering from COVID-19, noting breakthrough infections in Michigan and risk from COVID-19 reinfection); United States V. Bozon Pappa, Defendant, No. 95-cr-00084, 2021 WL 1439714, at *4(S.D.Fla.Apr. 1, 2021)(granting CR even though she "has received a COVID-19 vaccine. [Ms. Bozon Pappa] submitted evidence that the vaccine may not be completley effective in persons with obesity"); United states V. Parish, 2:07-cr-578-RMG,D.E. 158 at 4-5 (D.S.C.Mar. 17, 2021)(granting compassionate release

---

**[29]**   https://www.theguardian.com/world/2021/feb/28/pfizer-vaccine-less-effective-obesity-study (visited June 21, 2021)

**[30]**   https://www.webmd.com/vaccines/covid-19-vaccine/news/20210604/pfizer-vaccine-india-variant (visited June 21, 2021)

based on COVID-19 risk factors, notwithstanding receipt of first vaccine dose); United States V. Manglona, 3:14-cr-05393-RJB (W.D.Wash.Mar. 3, 2021), D.E. 205 775 at 3 (granting reduction in sentence after vaccination); United States V. Moynihan, 1:10-cr-10288-MLW, ECF No. 239 (D.Mass.April 20, 2021) (granting Cr to defendant with leukemia in oral ruling); United States 'V. Mclean, 1:97-cr-00163-LMB (E.D.Va.Mar. 11,2021)(granting CR to defendant with heart disease who recovered from COVID-19 and received one dose of vaccine); United States V. Hernandez Sandoval, 14-cr-5105 (W.D.Wa.Feb. 22, 2021)(granting CR to defendant with Kidney disease, transplant, and diabetes who received one dose of vaccine and recovered from COVID-19); United States V. Murakami, No. 1:17-cr-10346-DPW, D.E. 80 (D.Mass.Feb. 25, 2021)(granting CR to hypertensive defendant who had received one dose of the vaccine, and would receive second dose prior to release); United States V. Bradshaw, No. 1:96-cr-10032-DPW (D.Mass.Mar. 4, 2020)(granting CR to defendant who had received both Moderna vaccine doses); United States V. Ricks, 1:17-cr-00134-JMS-TAB(S.D.Ind.Apr. 22, 2021)(granting CR to defendant with chronic kidney disease, hypertension, and anemia who had received one dose of vaccine whose health declined after recovering from COVID-19). See also United States V. White, No.3:17-cr-00104-2, 2021 WL 268719, at *4(M.D.Tenn.Jan. 27, 2021)(granting CR despite vaccinations underway and noting that "just this month variants to the SARS-COV-2 strain were identified that may (or may not) allow the virus to spread more quickly, lead to 'more severe or less severe illness', and evade vaccine- induced immunity"); United States V. Hatcher, No. 18-cr-454-10 (KPF), 2021 WL 1535310, at *3(S.D.N.Y.Apr. 19, 2021)(granting compassionate release to fully vaccinated woman, based on the extreme conditions of confinement during the pandemic).

EXHAUSTION OF PETITIONER'S ADMINISTRATVE RIGHTS

Petitioner has exhausted all of his administrative rights before bringing his motion to court:

1.) Petitioner's original request for compassionate release to the Warden of his institution was sent on or about October I3, 2021.

2.) Petitioner appealed Warden's decision on November 9, 2021.

A REDUCTION IS CONSISTENT WITH APPLICABLE POLICY
STATEMENT ISSUED BY THE SENTENCING COMMISSION

1.) Petitioner has been in custody since Petitioner's arrest on July 19, 2016.

2.) There is not a substantial risk that Petitioner will engage in criminal conduct or endanger any person or the community.

This court should grant the modification because "extraordinary and compelling reasons warrant such a reduction" in defendant's case, in accordance with U.S.S.G. §1B1.13 comment (A)(ii).

Congress changed the sentencing commission with defining "extraordinary and compelling reasons" for a sentencing reduction, 28 U.S.C. §994 (t), and the sentencing commission set out for categories of such circumstances in the alternative, such that "extraordinary and compelling reasons exist under any of the circumstances" set out in application note 1, U.S.G. §1B1.13, comment(D.1). In this case, defendant satisfies application note 1(A)(ii),which states:

(1) Suffering from a serious physical or medical condition,

(2) Suffering from a serious functional or cognitive impairment, or

(3) Experiencing deterioration of physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility, from which he is not expected to recover.

(12)

EXTRAORDINARY AND COMPELLING REASONS

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. §3582 (c). An exception to this rule exists whereby a court "may reduce the term of imprisonment" if the court "finds that extraordinary and compelling reasons warrant such a reduction." Id. upon a finding of extraordinary and compelling circumstances, courts must then look to "the factors set forth in section 3553 (a) to the extent that they are applicable." Id.

Section 3582(c)(1)(A) states that sentence reduction be consistent with "applicable policy statements." Relevent to the court's inquiry then, is the applicability of U.S.S.G. §1B1.13, comment 1(A)("policy statement"), that statement limits compelling circumstances to three categories- application notes 1(A) through (c), covering a defendant's health, age, and family circumstances- as well as a catch-all category, application note 1 (D), allowing the BOP to identify "other reasons" that may qualify.

Recently, the fourth circuit took this issue on appeal, United States V. McCoy, __F.3d__, 2020 U.S.Dist. LEXIS 193993, 2020 WL 7050097 (4th cir. 2020). The court held that there "is as of now no 'applicable' policy statement governing compassionate release motion filed by defendants under the recently amended §3582 (c)(1)(A), and as a result, district courts are 'empowered' to consider any extraordinary and compelling reason for release that a defendant might raise." 2020 U.S.Dist. LEXIS 193993, [WL] at *9 (citing Unites States V. Brooker, 976 F.3d 228, 230 [2nd cir. 2020]) thus, in this circuit, district courts may consider reasons beyond those indicated in the sentencing guidelines policy statement in making determinations about extraordinary and compelling circumstances for compassionate release motions under section 3582 (c)(1)(A).

The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary, "or", exceptional to a very marked extent." Extraordinary, merriam-webster dictionary (2020); see also extraordinary, Blacks law dictionary (11th ed. 2019)("beyond what is usual, customary, regular, or common.").

The word "compelling" means "forceful", demanding attention, or "convincing". Compelling, merriam-webster dictionary (2020); see also compelling need, Black's law dictionary (11th ed. 2019)("A need so great that irreparable harm or injustice would result if it is not met.")

Thus, at a minimum, §3582(c)(1)(A)(i) requires a justification for

release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate). Somerville, 463 F.SUPP. 3d 585, 2020 WL 2781585, at *7.

As to include under "extraordinary and compelling," COVID-19, "pandemic", and to include defendant's serious medical conditions.

There is no dispute that defendant's chronic medical conditions might, and do, place him at increased risk for severe illness from COVID-19, particularly combined with his age, and the BOP's inability and unwillingness to provide defendant the necessary medical and mental health care and treatment that is needed to care and treat defendant's serious medical conditions, which are daily getting worse.

Since defendant's incarceration, due to the above mentioned health problems, issues, and ailments, defendant's health and well-being has deteriorated significantly. From sitting in his wheelchair to laying in his bed 100% of the day, defendant has constant and severe muscle spasms and shooting pain all down his back, and torso. Defendant's obesity and medical conditions confines him to his wheelchair and bed 100% of the day and night, and defendant has now developed a need for an inmate companion to assist him throughout the day. Defendant only receives three cold meals in styrofoam trays and not having the ability to warm them up. Defendant doesn't receive the nutritional value that he needs for a healthy digestive flow due to the cold meals.

Due to the above-mentioned health issues and ailments, defendant's diminishing physical health doesn't mesh well with being in a correctional institution atmosphere where a possible attack by another inmate and then having the inability to defend and protect himself is one scenario that could possibly occur. Not receiving all the necessary medical, mental health care/ treatment and equipment that defendant needs only makes his well being worsen daily in the current environment that defendant is housed in.

## DEFENDANT HAS A SOLID RELEASE PLAN

Thankfully, the defendant has a safe home with his wife, Cassandra Folks 6 Forest street, South Burlington Vermont 05403, (802)825-8839, and their six children. The defendant will be capable of isolating himself for the duration of the pandemic. The defendant has the support of his entire

(14)

family in meeting his rehabilitative goals. Especially his wife and children, whom he will reside with. The defendant remains committed to his desire to rebuild his relationships with his family and community. The defendant remains resolute in his decision to abandon his former lifestyle and is further deterred by his inability to move and function without assistance.

The defendant will be on ten years of supervised release during which time this Honorable court can recommit his custody status back to the Bureau of Prisons. The defendant is committed to abiding by any and all further conditions and modifications that this court deems appropriate to assure that he will no longer engage in any criminal activity. The defendant is well aware that the court's modifications to his sentence could include increasing the period of supervised release or serving his supervised release on home confinement, (see 18 U.S.C. 3553(a)(3) instructing the courts to consider "the kinds of sentences available")

Therefore, the section 3553(a) factors support reducing the defendant's sentence to "time served" so that he may begin serving his term of supervised release.

CONCLUSION

Based on the foregoing, the defendant respectfully requests that this court grant his motion, reduce his custodial sentence to "time served" and order his relese so that he may begin serving his ten year term of supervision.

RESPECTFULLY SUBMITTED,

*Brian Folks Sr.*

Date: _Feb. 14,_ 2022

S/

Brian Folks #11701-082

FEDERAL CORRECTIONAL INSTITUTION

P.O.BOX _1500_

_Botner, N.C ___ 27509_